# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

AUTOCONNECT HOLDINGS LLC,

     Plaintiff,

v.

FORD MOTOR COMPANY,

     Defendant.

CASE NO.: _____

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff AutoConnect Holdings LLC ("AutoConnect") files this Complaint and demand for a jury trial seeking relief for patent infringement by Defendants Ford Motor Company ("Ford").  Plaintiff states and alleges the following:

## THE PARTIES

1.     This case is brought by AutoConnect, a limited liability company organized and existing under the laws of Delaware with a registered address at 131 Continental Drive, Suite 305, Newark, DE, 19713.  AutoConnect was created in 2015 for the purpose of researching, developing, collaborating, and commercializing several automotive and other technologies, and for the protection of inventions and intellectual property that the company's principals developed over the years.

2.     The asserted patents are part of a broader portfolio of technologies owned by AutoConnect that includes nearly 100 issued United States patents and pending applications related to new and improved vehicle technologies.  The technologies described and claimed in AutoConnect's patents have revolutionized the automotive industry.

3.     AutoConnect is owned by Peter Suorsa, Gregg Hershenson, and Christopher Ricci.

1

4.      Mr. Ricci is a leading technologist and innovator behind several technologies, including advancements in automotive technologies, computer control systems, passive RFID, robotics, SaaS, and IoT.  Mr. Ricci is the primary inventor of the AutoConnect patents, including the Asserted Patents (as defined below).  Before his work with the Asserted Patents, Mr. Ricci developed a wide range of technologies at companies like The Foxboro Company, where he worked as an engineer designing computer control systems; Polaroid, where he developed patents related to printer harmonics; and NCR Corporation, where he collaborated with global technology firms on under-utilized technologies, such as ones relevant to telecom and public-sector businesses.

5.      Mr. Ricci began collaborating with Peter Suorsa, a serial entrepreneur, in the late 1990s.  Mr. Suorsa's ability to identify, develop, and commercialize innovative technology is well-documented throughout his career, with successful projects spanning several different industries.  For example, Mr. Suorsa formed EMC Corporation in the 1970s, a company that designed and built printed circuit boards.  After selling that company in the early 1990s, Mr. Suorsa went on to found several other companies focused on new and emerging technologies.

6.      During their first collaboration, Mr. Ricci presented Mr. Suorsa with his ideas for passive RFID technology.  Together they developed and patented several innovations in this area, eventually securing a deal with the U.S. government.  This collaboration marked the beginning of a long-standing partnership between Mr. Ricci and Mr. Suorsa, which would later extend into automotive and other technology sectors.

7.      For example, in 2001, Mr. Ricci worked at NCR Corporation, where he played a pivotal role in developing and managing the company's IP portfolio.  He discovered

underutilized technologies and eventually collaborated with Mr. Suorsa to further develop them. Their efforts led to significant success. Mr. Ricci eventually left NCR, and Mr. Suorsa took over the CEO position of Prime Technologies, a subsidiary of NCR where he developed anti-counterfeiting technology for use in multiple industries.

8.      In 2011, Mr. Ricci joined Flextronics, the second largest manufacturing services company in the world, where he applied his expertise in bringing innovative projects to fruition. At Flextronics, Mr. Ricci led a team that developed a next-generation automotive interface, which was showcased at the 2013 Detroit Auto Show. Once again, Mr. Ricci collaborated with Mr. Suorsa to further develop this technology. The project was ahead of its time, generated significant industry interest, and helped bolster Flextronics' reputation for innovation.

9.      After his work at Flextronics, in 2015, Mr. Ricci went on to design and develop a wide range of vehicle technologies while at NIO, a company that specializes in the manufacturing of high-performance electric vehicles. Mr. Ricci was ultimately awarded almost fifty United States patents and pending applications resulting from his work on electric vehicles.

10.     Mr. Suorsa saw great potential in the technology that Mr. Ricci had developed at Flextronics, Mr. Suorsa and Gregg Hershenson, a business expert with a background in technology and venture capital, secured a deal to continue its development independently.

11.     Mr. Hershenson has been instrumental over the years in founding several different high-tech companies. For example, Mr. Hershenson is the founding Chief Marketing Officer and first investor of DocBox Inc., a medical device company with innovative technology that brings hospitals into the 21st century. DocBox is currently working in partnership with the DoD, CIMIT (Harvard Teaching Hospitals, MIT, Draper Labs), the VA and Lockheed Martin to implement its new vision for healthcare. Mr. Hershenson is also a co-founder of Waveguide, a

company that brought technology out of Harvard University that revolutionizes the speed and ease with which people can run complex lab tests.

12.    On information and belief, Ford is a corporation existing and organized under the laws of the State of Delaware.

13.    On information and belief, Ford is the legal entity responsible for research and development, manufacturing, sales, offers for sale, marketing, importation, and distribution of automotive vehicles under the Ford and Lincoln brands.

## THE ASSERTED PATENTS

14.    This is a civil action for infringement of U.S. Patent No. 9,020,491 ("the '491 patent"), U.S. Patent No. 9,020,697 ("the '697 patent"), U.S. Patent No. 9,082,239 ("the '239 patent"), U.S. Patent No. 9,098,367 ("the '367 patent"), U.S. Patent No. 9,116,786 ("the '786 patent"), U.S. Patent No. 9,123,186 ("the '186 patent"), U.S. Patent No. 9,140,560 ("the '560 patent"), U.S. Patent No. 9,147,296 ("the '296 patent"), U.S. Patent No. 9,147,297 ("the '297 patent"), U.S. Patent No. 9,173,100 ("the '100 patent"), U.S. Patent No. 9,290,153 ("the '153 patent"), U.S. Patent No. 10,862,764 ("the '764 patent"), and U.S. Patent No. 11,163,931 ("the '931 patent").

15.    The '491 patent is entitled "Sharing Applications/Media Between Car and Phone (Hydroid)" and was duly and legally issued by the United States Patent and Trademark Office on April 28, 2015.  The '491 patent stems from Application No. 13/679,857, filed on November 16, 2012.  AutoConnect owns the entire right, title, and interest in and to the '491 patent, including the right to sue for and collect past damages.  A true and correct copy of the '491 patent is attached to this Complaint as Exhibit A1.

16.    The '697 patent is entitled "Vehicle-Based Multimode Discovery" and was duly and legally issued by the United States Patent and Trademark Office on April 28, 2015. The '697 patent stems from Application No. 14/253,312, filed on April 15, 2014. AutoConnect owns the entire right, title, and interest in and to the '697 patent, including the right to sue for and collect past damages. A true and correct copy of the '697 patent is attached to this Complaint as Exhibit B1.

17.    The '239 patent is entitled "Intelligent Vehicle for Assisting Vehicle Occupants" and was duly and legally issued by the United States Patent and Trademark Office on July 14, 2015. The '239 patent stems from Application No. 14/253,506, filed on April 15, 2014. AutoConnect owns the entire right, title, and interest in and to the '239 patent, including the right to sue for and collect past damages. A true and correct copy of the '239 patent is attached to this Complaint as Exhibit C1.

18.    The '367 patent is entitled "Self-configuring Vehicle Console Application Store" and was duly and legally issued by the United States Patent and Trademark Office on August 4, 2015. The '367 patent stems from Application No. 13/963,728, filed on August 9, 2013. AutoConnect owns the entire right, title, and interest in and to the '367 patent, including the right to sue for and collect past damages. A true and correct copy of the '367 patent is attached to this Complaint as Exhibit D1.

19.    The '786 patent is entitled "On Board Vehicle Networking Module" and was duly and legally issued by the United States Patent and Trademark Office on August 25, 2015. The '786 patent stems from Application No. 13/828,513, filed on March 14, 2013. AutoConnect owns the entire right, title, and interest in and to the '786 patent, including the right to sue for

and collect past damages.  A true and correct copy of the '786 patent is attached to this Complaint as Exhibit E1.

20.     The '186 patent is entitled "Remote Control of Associated Vehicle Devices" and was duly and legally issued by the United States Patent and Trademark Office on September 1, 2015.  The '186 patent stems from Application No. 14/253,371, filed on April 15, 2014. AutoConnect owns the entire right, title, and interest in and to the '186 patent, including the right to sue for and collect past damages.  A true and correct copy of the '186 patent is attached to this Complaint as Exhibit F1.

21.     The '560 patent is entitled "In-Cloud Connection for Car Multimedia" and was duly and legally issued by the United States Patent and Trademark Office on September 22, 2015.  The '560 patent stems from Application No. 13/679,878, filed on November 16, 2012. AutoConnect owns the entire right, title, and interest in and to the '560 patent, including the right to sue for and collect past damages.  A true and correct copy of the '560 patent is attached to this Complaint as Exhibit G1.

22.     The '296 patent is entitled "Customization of Vehicle Controls and Settings Based on User Profile Data" and was duly and legally issued by the United States Patent and Trademark Office on September 29, 2015.  The '296 patent stems from Application No. 14/253,204, filed on April 15, 2014.  AutoConnect owns the entire right, title, and interest in and to the '296 patent, including the right to sue for and collect past damages.  A true and correct copy of the '296 patent is attached to this Complaint as Exhibit H1.

23.     The '297 patent is entitled "Infotainment System Based on User Profile" and was duly and legally issued by the United States Patent and Trademark Office on September 29, 2015.  The '297 patent stems from Application No. 14/253,251, filed on April 15, 2014.

AutoConnect owns the entire right, title, and interest in and to the '297 patent, including the right to sue for and collect past damages. A true and correct copy of the '297 patent is attached to this Complaint as Exhibit I1.

24.    The '100 patent is entitled "On board Vehicle Network Security" and was duly and legally issued by the United States Patent and Trademark Office on October 27, 2015. The '100 patent stems from Application No. 13/828,960, filed on March 14, 2013. AutoConnect owns the entire right, title, and interest in and to the '100 patent, including the right to sue for and collect past damages. A true and correct copy of the '100 patent is attached to this Complaint as Exhibit J1.

25.    The '153 patent is entitled "Vehicle-Based Multimode Discovery" and was duly and legally issued by the United States Patent and Trademark Office on March 22, 2016. The '153 patent stems from Application No. 14/684,856, filed on April 13, 2015. AutoConnect owns the entire right, title, and interest in and to the '153 patent, including the right to sue for and collect past damages. A true and correct copy of the '153 patent is attached to this Complaint as Exhibit K1.

26.    The '764 patent is entitled "Universal Console Chassis for the Car" and was duly and legally issued by the United States Patent and Trademark Office on December 8, 2020. The '764 patent stems from Application No. 16/243,051, filed on January 8, 2019. AutoConnect owns the entire right, title, and interest in and to the '764 patent, including the right to sue for and collect past damages. A true and correct copy of the '764 patent is attached to this Complaint as Exhibit L1.

27.    The '931 patent is entitled "Access and Portability of User Profiles Stored as Templates" and was duly and legally issued by the United States Patent and Trademark Office

on November 2, 2021.  The '931 patent stems from Application No. 17/233,412, filed on April 16, 2021.  AutoConnect owns the entire right, title, and interest in and to the '931 patent, including the right to sue for and collect past damages.  A true and correct copy of the '931 patent is attached to this Complaint as Exhibit M1.

28.     To the extent applicable, AutoConnect has complied with 35 U.S.C. § 287 for each of the Asserted Patents.

## JURISDICTION AND VENUE

29.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq*.  This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

30.     This Court has personal jurisdiction over Ford consistent with the requirements of the Due Process Clause of the United States Constitution because Ford is incorporated in the State of Delaware and therefore resides in this State, and the claims asserted herein arise out of or relate to Ford's business activities in this State, including: (i) actions giving rise to this Complaint; (ii) recruiting Delaware residents, directly or through an intermediary located in this State, for employment inside or outside this State; and (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Instrumentalities.

31.     Ford has committed acts within this Judicial District giving rise to this action.  On information and belief, Ford, including its agents and/or intermediaries, has committed and continues to commit acts of infringement in this Judicial District where it conducts business extensively by shipping, distributing, offering for sale, selling, and advertising automotive vehicles (and components thereof) and services.

32.     Ford offers its products and/or services, including the Accused Instrumentalities (as defined herein), to customers and potential customers located in Delaware.

33.     Venue is proper in this District pursuant to at least 28 U.S.C. § 1400.  As noted above, Ford is incorporated in the State of Delaware and therefore resides in this State under §1400(b).

## PRE-SUIT DISCUSSIONS

34.     In December 2023, AutoConnect contacted Ford about the inventions described and claimed in AutoConnect's patent portfolio.  AutoConnect sent a letter to Ford's Chief Policy Officer and General Counsel, identifying all the Asserted Patents, as well as other patents in its portfolio, thereby providing Ford with notice.  The letter included infringement claim charts comparing AutoConnect's understanding of Ford's Accused Instrumentalities, based on publicly available information, to representative claims from 18 AutoConnect patents.

35.     AutoConnect's December 2023 letter requested a telephone conference with a Ford representative to confirm AutoConnect's understanding of the features of Ford's Accused Instrumentalities identified in the claim charts.  The letter also invited licensing discussions.

36.     In January 2024, a Ford representative confirmed receipt of AutoConnect's letter. Over the next several months, counsel for AutoConnect and Ford exchanged several written communications and had one telephone conference.

37.     In May 2024, Ford provided a formal response to AutoConnect's December 2023 letter.  In its May 2024 letter, Ford alleged, without explanation, that Ford vehicles do not meet certain claim limitations in the asserted claims of 11 of the 18 patents.  For the other 7 patents, Ford asserted in conclusory fashion that it does not infringe them.  Ford refused to provide a

representative to discuss the operation of the Accused Instrumentalities as requested by AutoConnect's December 2023 letter.

38.     AutoConnect responded to Ford's May 2024 letter in June 2024, refuting Ford's noninfringement allegations.  In its June 2024 letter, AutoConnect explained how the Accused Instrumentalities met the claim limitations that Ford alleged were absent in its vehicles. AutoConnect noted that Ford failed to address the evidence presented in AutoConnect's claim charts and did not offer any explanation to support its noninfringement positions.  AutoConnect also noted that Ford did not provide any materials to demonstrate that its vehicles operated differently from the descriptions in the evidence cited by AutoConnect.  Accordingly, AutoConnect maintained that its claim charts were accurate, and that Ford infringed the asserted patents.  AutoConnect also stated its understanding that Ford had refused to arrange a telephone conference with a Ford representative to discuss the matter.  AutoConnect concluded its letter by reiterating its willingness to discuss any issues raised.

39.     In July 2024, Ford provided a formal response to AutoConnect's June 2024 letter. In its response, Ford again alleged, without explanation, that it does not infringe AutoConnect's patents.  Ford further stated that it considered the matter closed.

40.     Ford does not have a license to any of the Asserted Patents, either express or implied.

41.     On information and belief, Ford has taken no affirmative steps to avoid infringing any of the Asserted Patents after learning of them.

## COUNT I

### (Infringement of the '491 Patent)

42.     AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

43.    On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '491 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing vehicles, vehicle communication systems, in-vehicle multimedia systems, and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software that enable Apple CarPlay and/or Android Auto in Ford vehicles, in certain makes and models from the 2017 model year to the present, including those listed in Exhibit A2 ("the '491 Accused Instrumentalities").  Ford has also directly infringed and continues to directly infringe one or more claims of the '491 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Ford operates and controls the '491 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '491 Accused Instrumentalities to perform one or more method claims of the '491 patent.

44.    Attached to this Complaint as Exhibit A3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claims 11 and 16 of the '491 patent are met by the '491 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also confirm that Ford's '491 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '491 patent, as discussed herein and in Exhibit A3.

45.    Ford's infringement of the '491 patent has also been indirect.

46.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '491 patent under 35 U.S.C. § 271(b) because it has

induced, and continues to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '491 Accused Instrumentalities. Such making and/or using by third parties constitutes direct infringement of one or more claims of the '491 patent.

47.     For example, Ford has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '491 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 11 and 16 of the '491 patent, or with willful blindness to that fact.[1] On information and belief, Ford will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '491 Accused Instrumentalities in ways that directly infringe the '491 patent, and Ford has and will continue to encourage these acts with the specific intent to infringe the '491 patent. Further, Ford provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Ford's '491 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '491 patent.[2] Alternatively, Ford has acted with willful blindness to these facts. On information and belief,

---

[1] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/; https://www.ford.com/technology/sync/?gnav=footer-aboutford; https://www.lincoln.com/technology/sync/?gnav=footer-owner; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

[2] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/; https://www.ford.com/technology/sync/?gnav=footer-aboutford; https://www.lincoln.com/technology/sync/?gnav=footer-owner; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

Ford knows that there is a high probability that the use of Ford's '491 Accused Instrumentalities constitutes direct infringement of the '491 patent but took deliberate actions to avoid learning of these facts.

48.    On information and belief, Ford has been aware of the inventions described and claimed in the '491 patent since at least shortly after the issuance of the '491 patent in April 2015, or was willfully blind to the existence of the patent.

49.    On information and belief, Ford Global Technologies, LLC ("FGT") is a wholly owned subsidiary of Ford, responsible for managing Ford's intellectual property and technology commercialization worldwide.

50.    On information and belief, Ford and FGT share a principal-agent relationship, with FGT acting as Ford's authorized agent in managing intellectual property matters in the United States. FGT, as a wholly owned subsidiary of Ford, undertakes critical responsibilities on Ford's behalf, including the filing, prosecution, and maintenance of patents and patent applications in the United States, including the State of Delaware. In this capacity, FGT's knowledge of third-party patents, including those held by AutoConnect, is imputed to Ford.

51.    On information and belief, during the course of FGT's prosecution of patent applications on behalf of Ford, FGT became aware of the asserted '491 patent, through USPTO correspondence, office actions, and related patent prosecution activities starting in April 2020. Moreover, in the 2015-2023 time frame, FGT encountered numerous AutoConnect patents and patent applications related to the '491 patent during prosecution of its own patents. These related patents and applications share the same priority documents, specifications, named inventor (Chris Ricci), and initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '491 patent. The knowledge of these patents by FGT, acting within the scope of its agency

relationship with Ford, constitutes knowledge by Ford.  By virtue of the agency relationship

between Ford and FGT, knowledge of AutoConnect's patents obtained during FGT's prosecution

of Ford's patent applications, including the '491 patent, is imputed to Ford.

52.     On information and belief, Ford has known that the making and/or using of their

'491 Accused Instrumentalities constitutes an act of direct infringement of the '491 patent.  On

information and belief, Ford obtained this knowledge at least since October 2015.  Moreover,

Ford has had such knowledge upon service of AutoConnect's December 2023 letter, which

provided Ford with such knowledge, as demonstrated by the claim charts attached to the letter,

and upon the filing and service of this Complaint, as demonstrated by the claim charts attached

hereto.  To the extent Ford did not have actual knowledge of its infringement, Ford's lack of

actual knowledge is due to their deliberate decision to avoid learning of these facts.  Ford,

therefore, had knowledge that the making and/or using of Ford's '491 Accused Instrumentalities

by their dealerships, customers, and/or other end users infringes the '491 patent or Ford was

otherwise willfully blind to that fact.

53.     On information and belief, Ford has indirectly infringed and continues to

indirectly infringe the '491 patent under 35 U.S.C. § 271(c) because it has contributed to direct

infringement, and continues to contribute to direct infringement, by third parties (including

dealerships, customer, and other end users), of at least claim 11 of the '491 patent.  For example,

Ford has sold, offered for sale, and/or imported into the United States and is currently selling,

offering for sale, and/or importing into the United States components of the '491 Accused

Instrumentalities (including vehicle software components associated with Apple CarPlay and/or

Android Auto) to these third parties with full knowledge of the '491 patent.  These third parties

have assembled the components to make and use the '491 Accused Instrumentalities according

to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '491 Accused Instrumentalities in ways that infringed/infringe the '491 patent.[3]  Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Ford's components constituted/constitute a material part of the inventions claimed in the '491 patent. Ford supplied/supplies these components with knowledge of the '491 patent and knowledge that the components were/are especially made for use in an infringing manner.

54.     On information and belief, Ford has also indirectly infringed and continues to indirectly infringe the '491 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '491 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 11 and 16 of the '491 patent if such combination occurred within the United States.  For example, Ford has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '491 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto) with full knowledge of the '491 patent.  These third parties have made or used the '491 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them

---

[3] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/;
https://www.ford.com/technology/sync/?gnav=footer-aboutford;
https://www.lincoln.com/technology/sync/?gnav=footer-owner;
https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

how to combine the components of the '491 Accused Instrumentalities and use them in ways that would infringe the '491 patent if such combination occurred within the United States. Ford provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '491 patent if such assembly and usage took place in the United States. Additionally, Ford's components are especially made and/or especially adapted for use in an infringing manner and Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

55.     On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that Ford caused these acts with the specific intent to infringe the '491 patent. At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '491 patent (or would have infringed if those acts occurred within the United States).

56.     Moreover, on information and belief, Ford's infringement of the '491 patent has been and continues to be willful and merits enhanced damages.

57.     For example, Ford has known of the '491 patent and its infringement of the '491 patent as described herein.

58.     On information and belief, since knowing of the '491 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '491 patent.

59.     On information and belief, Ford has made no attempt to design around the claims of the '491 patent.

60.     On information and belief, Ford has no reasonable basis for believing that the claims of the '491 patent are either invalid or not infringed by the '491 Accused Instrumentalities and/or or its activities concerning the '491 Accused Instrumentalities.

61.     AutoConnect has been damaged as the result of Ford's willful infringement.

62.     On information and belief, Ford will continue to infringe one or more claims of the '491 patent unless and until it is enjoined by this Court.

63.     On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '491 patent. AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '491 patent.

<u>**COUNT II**</u>

**(Infringement of the '697 Patent)**

64.     AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

65.     On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '697 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle systems (including in-vehicle multimedia systems), mobile applications (including the Ford App), and hardware and software components thereof, including non-transitory computer readable media that stores microprocessor-executable instructions and hardware and software components that enable Ford's Phone As A Key feature, in all makes and models from the 2020 model year to the present, including those listed in Exhibit B2 ("the '697 Accused Instrumentalities"). Ford has also directly infringed and continues to directly infringe one or

more claims of the '697 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Ford operates and controls the '697 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '697 Accused Instrumentalities to perform one or more method claims of the '697 patent.

66.     Attached to this Complaint as Exhibit B3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claims 1, 8, and 15 of the '697 patent are met by the '697 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also confirm that Ford's '697 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '697 patent, as discussed herein and in Exhibit B3.

67.     Ford's infringement of the '697 patent has also been indirect.

68.     On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '697 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '697 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '697 patent.

69.     For example, Ford has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '697 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 8 and 15 of the '697 patent, or with willful blindness to that fact.[4]  On information and belief, Ford will continue to encourage, aid,

---

[4] *E.g.*, https://www.ford.com/support/vehicle/mustang-mach-e/2021/how-to-videos/video-
(continued …)

or otherwise cause these third parties to, for example, use their '697 Accused Instrumentalities in ways that directly infringe the '697 patent, and Ford has and will continue to encourage these acts with the specific intent to infringe the '697 patent.  Further, Ford provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Ford's '697 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '697 patent.[5] Alternatively, Ford has acted with willful blindness to these facts.  On information and belief, Ford knows that there is a high probability that the use of Ford's '697 Accused Instrumentalities constitutes direct infringement of the '697 patent but took deliberate actions to avoid learning of these facts.

70.     On information and belief, Ford has been aware of the inventions described and claimed in the '697 patent since at least shortly after the issuance of the '697 patent in April 2015, or was willfully blind to the existence of the patent.  For example, in the 2019-2023 time frame, Ford encountered patents related to the '697 patent during prosecution of its own patents at least 3 times, and those patents share the same priority documents and specifications, had the

---

library/fordpass/6236995152001?name=phone-as-a-key-with-walk-away-locking/;
https://www.fordservicecontent.com/Ford_Content/vdirsnet/OwnerManual/Home/Content?varia
ntid=7430&languageCode=en&countryCode=USA&Uid=G2103918&ProcUid=G2149426&use
rMarket=usa&div=f&vFilteringEnabled=False&buildtype=web;
https://www.lincoln.com/support/how-tos/lincoln-way-app/phone-as-a-key/what-are-some-basic-
troubleshooting-tips-for-using-phone-as-a-key-with-my-lincoln-vehicle/
[5] *E.g.*, https://www.ford.com/support/vehicle/mustang-mach-e/2021/how-to-videos/video-
library/fordpass/6236995152001?name=phone-as-a-key-with-walk-away-locking/;
https://www.fordservicecontent.com/Ford_Content/vdirsnet/OwnerManual/Home/Content?varia
ntid=7430&languageCode=en&countryCode=USA&Uid=G2103918&ProcUid=G2149426&use
rMarket=usa&div=f&vFilteringEnabled=False&buildtype=web;
https://www.lincoln.com/support/how-tos/lincoln-way-app/phone-as-a-key/what-are-some-basic-
troubleshooting-tips-for-using-phone-as-a-key-with-my-lincoln-vehicle/

same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '697 patent.

71.    Moreover, on information and belief, Ford Global Technologies, LLC ("FGT") is a wholly owned subsidiary of Ford, responsible for managing Ford's intellectual property and technology commercialization worldwide.

72.    On information and belief, Ford and FGT share a principal-agent relationship, with FGT acting as Ford's authorized agent in managing intellectual property matters in the United States. FGT, as a wholly owned subsidiary of Ford, undertakes critical responsibilities on Ford's behalf, including the filing, prosecution, and maintenance of patents and patent applications in the United States, including the State of Delaware. In this capacity, FGT's knowledge of third-party patents, including those held by AutoConnect, is imputed to Ford.

73.    On information and belief, during the course of FGT's prosecution of patent applications on behalf of Ford, FGT became aware of the asserted '697 patent, through USPTO correspondence, office actions, and related patent prosecution activities starting in January 2016. Additionally, in the 2015-2023 time frame, FGT encountered numerous AutoConnect patents and patent applications related to the '697 patent during prosecution of its own patents.  These related patents and applications share the same priority documents, specifications, named inventor (Chris Ricci), and initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '697 patent.  The knowledge of these patents by FGT, acting within the scope of its agency relationship with Ford, constitutes knowledge by Ford.  By virtue of the agency relationship between Ford and FGT, knowledge of AutoConnect's patents obtained during FGT's prosecution of Ford's patent applications, including the '697 patent, is imputed to Ford.

74.     On information and belief, Ford has known that the making and/or using of their '697 Accused Instrumentalities constitutes an act of direct infringement of the '697 patent. On information and belief, Ford obtained this knowledge at least since June 2015. Moreover, Ford has had such knowledge upon service of AutoConnect's December 2023 letter provided Ford with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint as demonstrated by the claim charts attached hereto. To the extent Ford did not have actual knowledge of its infringement, Ford's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Ford, therefore, had knowledge that the making and/or using of Ford's '697 Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '697 patent or Ford was otherwise willfully blind to that fact.

75.     On information and belief, Ford has indirectly infringed and continues to indirectly infringe the '697 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including dealerships, customer and end users), of at least claim 8 of the '697 patent. For example, Ford has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '697 Accused Instrumentalities (including vehicle software components associated with Ford's Phone As A Key Technology) to these third parties with full knowledge of the '697 patent. These third parties have assembled the components to make and use the '697 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '697 Accused Instrumentalities in ways that

infringed/infringe the '697 patent.[6]  Ford's components were and are not staple articles or

commodities of commerce suitable for substantial noninfringing uses.  Further, Ford's

components constituted/constitute a material part of the inventions claimed in the '697 patent.

Ford supplied/supplies these components with knowledge of the '697 patent and knowledge that

the components were especially made for use in an infringing manner.

76.    On information and belief, Ford has also indirectly infringed and continues to

indirectly infringe the '697 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the

United States, one or more components of the '697 Accused Instrumentalities to third parties

(including their foreign subsidiaries, dealerships, customers, and other end users), and intending

these third parties combine the components in a manner that would directly infringe at least

claims 8 and 15 of the '697 patent if such combination occurred within the United States.  For

example, Ford has supplied, and continues to supply, such third parties outside of the United

States with one or more components of the '697 Accused Instrumentalities (including vehicle

software components associated with Ford's Phone As A Key Technology) with full knowledge

of the '697 patent.  These third parties have made or used the '697 Accused Instrumentalities

according to instructions, manuals, brochures, documentation, tutorials, videos, mobile

applications, website materials, promotional materials and the like that instructed/instruct them

how to combine the components of the '697 Accused Instrumentalities and use them in ways that

would infringe the '697 patent if such combination occurred within the United States.  Ford

provides these instructions to the third parties with the knowledge that assembly and usage in

---

[6] *E.g.*, https://www.ford.com/support/vehicle/mustang-mach-e/2021/how-to-videos/video-library/fordpass/6236995152001?name=phone-as-a-key-with-walk-away-locking/;
https://www.fordservicecontent.com/Ford_Content/vdirsnet/OwnerManual/Home/Content?variantid=7430&languageCode=en&countryCode=USA&Uid=G2103918&ProcUid=G2149426&userMarket=usa&div=f&vFilteringEnabled=False&buildtype=web;
https://www.lincoln.com/support/how-tos/lincoln-way-app/phone-as-a-key/what-are-some-basic-troubleshooting-tips-for-using-phone-as-a-key-with-my-lincoln-vehicle/

accordance with their instructions would infringe the '697 patent if such assembly and usage took place in the United States.  Additionally, Ford's components are especially made and/or especially adapted for use in an infringing manner and Ford's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

77.     On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '697 patent.  At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '697 patent (or would have infringed if those acts occurred within the United States).

78.     Moreover, on information and belief, Ford's infringement of the '697 patent has been and continues to be willful and merits enhanced damages.

79.     For example, Ford has known of the '697 patent and its infringement of the '697 patent as described herein.

80.     On information and belief, since knowing of the '697 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '697 patent.

81.     On information and belief, Ford has made no attempt to design around the claims of the '697 patent.

82.     On information and belief, Ford has no reasonable basis for believing that the claims of the '697 patent are either invalid or not infringed by the '697 Accused Instrumentalities and/or or its activities concerning the '697 Accused Instrumentalities.

83.     AutoConnect has been damaged as the result of Ford's willful infringement.

84.     On information and belief, Ford will continue to infringe one or more claims of the '697 patent unless and until it is enjoined by this Court.

85.     On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '697 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '697 patent.

## COUNT III

### (Infringement of the '239 Patent)

86.     AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

87.     On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '239 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing vehicles, vehicle communication systems, in-vehicle multimedia systems, and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software (1) that enable Ford Intelligent Suggestions in Ford vehicles, in certain makes and models from the 2020 model year to the present, including those listed in Exhibit C2 ("the '239 C3 Accused Instrumentalities") and/or (2) that enable Ford Digital Experience in Ford vehicles, in certain makes and models from the 2024 model year to the present, including those listed in Exhibit C4 ("the '239 C5 Accused Instrumentalities") (the '239 C3 Accused Instrumentalities and '239 C5 Accused Instrumentalities are collectively referred to herein as "the '239 Accused Instrumentalities").  Ford has also directly infringed and continues to directly infringe one or more claims of the '239 patent under 35 U.S.C. § 271(a),

either literally or under the doctrine of equivalents, because Ford operates and controls the '239 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '239 Accused Instrumentalities to perform one or more method claims of the '239 patent.

88.     Attached to this Complaint as Exhibits C3 and C5 are representative charts that, on information and belief, describe how, as a non-limiting example, the elements of exemplary claims 1, 8, and 15 of the '239 patent are met by the '239 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also confirm that Ford's '239 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '239 patent, as discussed herein and in Exhibits C3 and C5.

89.     Ford's infringement of the '239 patent has also been indirect.

90.     On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '239 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '239 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '239 patent.

91.     For example, Ford has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '239 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 8 and 15 of the '239 patent, or with willful blindness to that fact.[7]  On information and belief, Ford will continue to encourage, aid,

---

[7] *E.g.*, https://www.youtube.com/watch?v=h3457G5mWF0;
(continued …)

or otherwise cause these third parties to, for example, use their '239 Accused Instrumentalities in ways that directly infringe the '239 patent, and Ford has and will continue to encourage these acts with the specific intent to infringe the '239 patent. Further, Ford provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Ford's '239 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '239 patent.[8] Alternatively, Ford has acted with willful blindness to these facts. On information and belief, Ford knows that there is a high probability that the use of Ford's '239 Accused Instrumentalities constitutes direct infringement of the '239 patent but took deliberate actions to avoid learning of these facts.

92.    On information and belief, Ford has been aware of the inventions described and claimed in the '239 patent since at least shortly after the issuance of the '239 patent in July 2015, or was willfully blind to the existence of the patent.

93.    On information and belief, Ford Global Technologies, LLC ("FGT") is a wholly owned subsidiary of Ford, responsible for managing Ford's intellectual property and technology commercialization worldwide.

---

https://media.ford.com/content/fordmedia/fna/us/en/news/2019/10/30/ford-sync-4-brings-new-levels-of-connectivity.html; https://www.ford.com/support/how-tos/sync/sync-4a/what-personal-data-does-sync-4a-collect-to-customize-suggestions/;
https://media.ford.com/content/fordmedia/fna/us/en/news/2024/01/22/enhance-your-drive--introducing-the-all-new-ford-and-lincoln-dig.html;
https://www.youtube.com/watch?v=LmO85JUqFz4
[8] *E.g.*, https://www.youtube.com/watch?v=h3457G5mWF0;
https://media.ford.com/content/fordmedia/fna/us/en/news/2019/10/30/ford-sync-4-brings-new-levels-of-connectivity.html; https://www.ford.com/support/how-tos/sync/sync-4a/what-personal-data-does-sync-4a-collect-to-customize-suggestions/;
https://media.ford.com/content/fordmedia/fna/us/en/news/2024/01/22/enhance-your-drive--introducing-the-all-new-ford-and-lincoln-dig.html;
https://www.youtube.com/watch?v=LmO85JUqFz4

94.     On information and belief, Ford and FGT share a principal-agent relationship, with FGT acting as Ford's authorized agent in managing intellectual property matters in the United States. FGT, as a wholly owned subsidiary of Ford, undertakes critical responsibilities on Ford's behalf, including the filing, prosecution, and maintenance of patents and patent applications in the United States, including the State of Delaware. In this capacity, FGT's knowledge of third-party patents, including those held by AutoConnect, is imputed to Ford.

95.     On information and belief, during the course of FGT's prosecution of patent applications on behalf of Ford, FGT became aware of the asserted '239 patent, through USPTO correspondence, office actions, and related patent prosecution activities starting in May 2016. Additionally, in the 2016-2023 time frame, FGT encountered numerous AutoConnect patents and patent applications related to the '239 patent during prosecution of its own patents.  These related patents and applications share the same priority documents, specifications, named inventor (Chris Ricci), and initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '239 patent.  The knowledge of these patents by FGT, acting within the scope of its agency relationship with Ford, constitutes knowledge by Ford.  By virtue of the agency relationship between Ford and FGT, knowledge of AutoConnect's patents obtained during FGT's prosecution of Ford's patent applications, including the '239 patent, is imputed to Ford.

96.     On information and belief, Ford has known that the making and/or using of their '239 Accused Instrumentalities constitutes an act of direct infringement of the '239 patent.  On information and belief, Ford obtained this knowledge at least since May 2016.  Moreover, Ford has had such knowledge upon service of AutoConnect's December 2023 letter, which provided Ford with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint, as demonstrated by the claim charts attached hereto.  To

the extent Ford did not have actual knowledge of its infringement, Ford's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts.  Ford, therefore, had knowledge that the making and/or using of Ford's '239 Accused Instrumentalities by their dealerships, customers, and/or other end users infringes the '239 patent or Ford was otherwise willfully blind to that fact.

97.     On information and belief, Ford has indirectly infringed and continues to indirectly infringe the '239 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including dealerships, customers, and other end users), of at least claim 8 of the '239 patent.  For example, Ford has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '239 Accused Instrumentalities (including vehicle software components associated with enabling Ford Intelligent Suggestions and/or Ford Digital Experience in Ford vehicles) to these third parties with full knowledge of the '239 patent.  These third parties have assembled the components to make and use the '239 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '239 Accused Instrumentalities in ways that infringed/infringe the '239 patent.[9]  Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Ford's components constituted/constitute a material part of the inventions claimed

---

[9] *E.g.*, https://www.youtube.com/watch?v=h3457G5mWF0;
https://media.ford.com/content/fordmedia/fna/us/en/news/2019/10/30/ford-sync-4-brings-new-levels-of-connectivity.html; https://www.ford.com/support/how-tos/sync/sync-4a/what-personal-data-does-sync-4a-collect-to-customize-suggestions/;
https://media.ford.com/content/fordmedia/fna/us/en/news/2024/01/22/enhance-your-drive--introducing-the-all-new-ford-and-lincoln-dig.html;
https://www.youtube.com/watch?v=LmO85JUqFz4

in the '239 patent. Ford supplied/supplies these components with knowledge of the '239 patent and knowledge that the components were/are especially made for use in an infringing manner.

98.    On information and belief, Ford has also indirectly infringed and continues to indirectly infringe the '239 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '239 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 8 and 15 of the '239 patent if such combination occurred within the United States. For example, Ford has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '239 Accused Instrumentalities (including vehicle software components associated with enabling Ford Intelligent Suggestions and/or Ford Digital Experience in Ford vehicles) with full knowledge of the '239 patent. These third parties have made or used the '239 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '239 Accused Instrumentalities and use them in ways that would infringe the '239 patent if such combination occurred within the United States. Ford provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '239 patent if such assembly and usage took place in the United States. Additionally, Ford's components are especially made and/or especially adapted for use in an infringing manner and Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

99.     On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that Ford caused these acts with the specific intent to infringe the '239 patent.  At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '239 patent (or would have infringed if those acts occurred within the United States).

100.    Moreover, on information and belief, Ford's infringement of the '239 patent has been and continues to be willful and merits enhanced damages.

101.    For example, Ford has known of the '239 patent and its infringement of the '239 patent as described herein.

102.    On information and belief, since knowing of the '239 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '239 patent.

103.    On information and belief, Ford has made no attempt to design around the claims of the '239 patent.

104.    On information and belief, Ford has no reasonable basis for believing that the claims of the '239 patent are either invalid or not infringed by the '239 Accused Instrumentalities and/or or its activities concerning the '239 Accused Instrumentalities.

105.    AutoConnect has been damaged as the result of Ford's willful infringement.

106.    On information and belief, Ford will continue to infringe one or more claims of the '239 patent unless and until it is enjoined by this Court.

107.    On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '239 patent.  AutoConnect will

suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '239 patent.

## COUNT IV

### (Infringement of the '367 Patent)

108.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

109.    On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '367 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing vehicles, vehicle communication systems, in-vehicle multimedia systems, and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software that enable Ford Digital Experience in Ford vehicles, in certain makes and models from the 2024 model year to the present, including those listed in Exhibit D2 ("the '367 Accused Instrumentalities").  Ford has also directly infringed and continues to infringe one or more claims of the '367 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Ford operates and controls the '367 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '367 Accused Instrumentalities to perform one or more method claims of the '367 patent.

110.    Attached to this Complaint as Exhibit D3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claims 1, 10, and 17 of the '367 patent are met by the '367 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also

confirm that Ford's '367 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '367 patent, as discussed herein and in Exhibit D3.

111.    Ford's infringement of the '367 patent has also been indirect.

112.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '367 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '367 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '367 patent.

113.    For example, Ford has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '367 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 10 and 17 of the '367 patent, or with willful blindness to that fact.[10]  On information and belief, Ford will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '367 Accused Instrumentalities in ways that directly infringe the '367 patent, and Ford has and will continue to encourage these acts with the specific intent to infringe the '367 patent.  Further, Ford provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Ford's '367 Accused Instrumentalities with

---

[10] *E.g.*, https://media.ford.com/content/fordmedia/fna/us/en/news/2024/01/22/enhance-your-drive--introducing-the-all-new-ford-and-lincoln-dig.html;
https://www.ford.com/technology/ford-digital-experience/

knowledge that such use constitutes an act of direct infringement of the '367 patent.[11] Alternatively, Ford has acted with willful blindness to these facts. On information and belief, Ford knows that there is a high probability that the use of Ford's '367 Accused Instrumentalities constitutes direct infringement of the '367 patent but took deliberate actions to avoid learning of these facts.

114.    On information and belief, Ford has been aware of the inventions described and claimed in the '367 patent since at least shortly after the issuance of the '367 patent in August 2015, or was willfully blind to the existence of the patent.

115.    On information and belief, Ford Global Technologies, LLC ("FGT") is a wholly owned subsidiary of Ford, responsible for managing Ford's intellectual property and technology commercialization worldwide.

116.    On information and belief, Ford and FGT share a principal-agent relationship, with FGT acting as Ford's authorized agent in managing intellectual property matters in the United States. FGT, as a wholly owned subsidiary of Ford, undertakes critical responsibilities on Ford's behalf, including the filing, prosecution, and maintenance of patents and patent applications in the United States, including the State of Delaware. In this capacity, FGT's knowledge of third-party patents, including those held by AutoConnect, is imputed to Ford.

117.    On information and belief, during the course of FGT's prosecution of patent applications on behalf of Ford, FGT became aware of the asserted '367 patent, through USPTO correspondence, office actions, and related patent prosecution activities starting in September 2016. Additionally, in the 2015-2023 time frame, FGT encountered numerous AutoConnect

---

[11] *E.g.*, https://media.ford.com/content/fordmedia/fna/us/en/news/2024/01/22/enhance-your-drive--introducing-the-all-new-ford-and-lincoln-dig.html; https://www.ford.com/technology/ford-digital-experience/

patents and patent applications related to the '367 patent during prosecution of its own patents. These related patents and applications share the same priority documents, specifications, named inventor (Chris Ricci), and initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '367 patent. The knowledge of these patents by FGT, acting within the scope of its agency relationship with Ford, constitutes knowledge by Ford. By virtue of the agency relationship between Ford and FGT, knowledge of AutoConnect's patents obtained during FGT's prosecution of Ford's patent applications, including the '367 patent, is imputed to Ford.

118.    On information and belief, Ford has known that the making and/or using of their '367 Accused Instrumentalities constitutes an act of direct infringement of the '367 patent. On information and belief, Ford obtained this knowledge at least since November 2015. Moreover, Ford has had such knowledge upon service of AutoConnect's December 2023 letter, which provided Ford with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint, as demonstrated by the claim charts attached hereto. To the extent Ford did not have actual knowledge of its infringement, Ford's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Ford, therefore, had knowledge that the making and/or using of Ford's '367 Accused Instrumentalities by their dealerships, customers, and/or other end users infringes the '367 patent or Ford was otherwise willfully blind to that fact.

119.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe the '367 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including dealerships, customers, and other end users), of at least claim 17 of the '367 patent. For example, Ford has sold, offered for sale, and/or imported into the United States and is currently

selling, offering for sale, and/or importing into the United States components of the '367 Accused Instrumentalities (including vehicle software components associated with enabling Ford Digital Experience) to these third parties with full knowledge of the '367 patent. These third parties have assembled the components to make and use the '367 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '367 Accused Instrumentalities in ways that infringed/infringe the '367 patent.[12] Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses. Further, Ford's components constituted/constitute a material part of the inventions claimed in the '367 patent. Ford supplied/supplies these components with knowledge of the '367 patent and knowledge that the components were/are especially made for use in an infringing manner.

120.    On information and belief, Ford has also indirectly infringed and continues to indirectly infringe the '367 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '367 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 10 and 17 of the '367 patent if such combination occurred within the United States. For example, Ford has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '367 Accused Instrumentalities (including vehicle software components associated with enabling Ford Digital Experience) with full knowledge of

---

[12] *E.g.*, https://media.ford.com/content/fordmedia/fna/us/en/news/2024/01/22/enhance-your-drive--introducing-the-all-new-ford-and-lincoln-dig.html; https://www.ford.com/technology/ford-digital-experience/

the '367 patent. These third parties have made or used the '367 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '367 Accused Instrumentalities and use them in ways that would infringe the '367 patent if such combination occurred within the United States. Ford provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '367 patent if such assembly and usage took place in the United States. Additionally, Ford's components are especially made and/or especially adapted for use in an infringing manner and Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

121.    On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that Ford caused these acts with the specific intent to infringe the '367 patent. At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '367 patent (or would have infringed if those acts occurred within the United States).

122.    Moreover, on information and belief, Ford's infringement of the '367 patent has been and continues to be willful and merits enhanced damages.

123.    For example, Ford has known of the '367 patent and its infringement of the '367 patent as described herein.

124.    On information and belief, since knowing of the '367 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '367 patent.

125.    On information and belief, Ford has made no attempt to design around the claims of the '367 patent.

126.    On information and belief, Ford has no reasonable basis for believing that the claims of the '367 patent are either invalid or not infringed by the '367 Accused Instrumentalities and/or or its activities concerning the '367 Accused Instrumentalities.

127.    AutoConnect has been damaged as the result of Ford's willful infringement.

128.    On information and belief, Ford will continue to infringe one or more claims of the '367 patent unless and until it is enjoined by this Court.

129.    On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '367 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '367 patent.

## COUNT V

### (Infringement of the '786 Patent)

130.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

131.    On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '786 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing vehicles, vehicle systems (including in-vehicle multimedia systems) and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software that enable Apple CarPlay and/or Android Auto in Ford vehicles, in certain makes and models from the 2017 model year to the present, including those listed in

Exhibit E2 ("the '786 Accused Instrumentalities").  Ford has also directly infringed and continues to directly infringe one or more claims of the '786 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Ford operates and controls the '786 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '786 Accused Instrumentalities to perform one or more method claims of the '786 patent.

132.    Attached to this Complaint as Exhibits E3 is a representative chart that, on information and belief, describes how, as non-limiting examples, the elements of exemplary claim 23 of the '786 patent are met by the '786 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also confirm that Ford's '786 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '786 patent, as discussed herein and in Exhibits E3.

133.    Ford's infringement of the '786 patent has also been indirect.

134.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '786 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '786 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '786 patent.

135.    For example, Ford has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '786 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claim 23 of the '786 patent, or with willful

blindness to that fact.[13]  On information and belief, Ford will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '786 Accused Instrumentalities in ways that directly infringe the '786 patent, and Ford has and will continue to encourage these acts with the specific intent to infringe the '786 patent.  Further, Ford provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Ford's '786 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '786 patent.[14] Alternatively, Ford has acted with willful blindness to these facts.  On information and belief, Ford knows that there is a high probability that the use of Ford's '786 Accused Instrumentalities constitutes direct infringement of the '786 patent but took deliberate actions to avoid learning of these facts.

136.    On information and belief, Ford has been aware of the inventions described and claimed in the '786 patent since at least shortly after the issuance of the '786 patent in August 2015, or was willfully blind to the existence of the patent.

---

[13] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/; https://www.ford.com/technology/sync/?gnav=footer-aboutford; https://www.lincoln.com/technology/sync/?gnav=footer-owner; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

[14] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/; https://www.ford.com/technology/sync/?gnav=footer-aboutford; https://www.lincoln.com/technology/sync/?gnav=footer-owner; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

137.    On information and belief, Ford Global Technologies, LLC ("FGT") is a wholly owned subsidiary of Ford, responsible for managing Ford's intellectual property and technology commercialization worldwide.

138.    On information and belief, Ford and FGT share a principal-agent relationship, with FGT acting as Ford's authorized agent in managing intellectual property matters in the United States. FGT, as a wholly owned subsidiary of Ford, undertakes critical responsibilities on Ford's behalf, including the filing, prosecution, and maintenance of patents and patent applications in the United States, including the State of Delaware. In this capacity, FGT's knowledge of third-party patents, including those held by AutoConnect, is imputed to Ford.

139.    On information and belief, in the 2016-2023 time frame, FGT encountered numerous AutoConnect patents and patent applications related to the '786 patent during prosecution of its own patents.  These related patents and applications share the same priority documents, specifications, named inventor (Chris Ricci), and initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '786 patent.  The knowledge of these patents by FGT, acting within the scope of its agency relationship with Ford, constitutes knowledge by Ford.  By virtue of the agency relationship between Ford and FGT, knowledge of AutoConnect's patents obtained during FGT's prosecution of Ford's patent applications, including the '786 patent, is imputed to Ford.

140.    On information and belief, Ford has known that the making and/or using of their '786 Accused Instrumentalities constitutes an act of direct infringement of the '786 patent.  On information and belief, Ford obtained this knowledge at least since February 2016.  Moreover, Ford has had such knowledge upon service of AutoConnect's December 2023 letter, which provided Ford with such knowledge, as demonstrated by the claim charts attached to the letter,

and upon the filing and service of this Complaint, as demonstrated by the claim charts attached hereto. To the extent Ford did not have actual knowledge of its infringement, Ford's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Ford, therefore, had knowledge that the making and/or using of Ford's '786 Accused Instrumentalities by their dealerships, customers, and/or other end users infringes the '786 patent or Ford was otherwise willfully blind to that fact.

141.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe the '786 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including dealerships, customers, and other end users), of at least claim 23 of the '786 patent. For example, Ford has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '786 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto in Ford vehicles) to these third parties with full knowledge of the '786 patent. These third parties have assembled the components to make and use the '786 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '786 Accused Instrumentalities in ways that infringed/infringe the '786 patent.[15] Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

---

[15] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/;
https://www.ford.com/technology/sync/?gnav=footer-aboutford;
https://www.lincoln.com/technology/sync/?gnav=footer-owner;
https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

Further, Ford's components constituted/constitute a material part of the inventions claimed in the '786 patent. Ford supplied/supplies these components with knowledge of the '786 patent and knowledge that the components were/are especially made for use in an infringing manner.

142.   On information and belief, Ford has also indirectly infringed and continues to indirectly infringe the '786 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '786 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claim 23 of the '786 patent if such combination occurred within the United States. For example, Ford has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '786 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto in Ford vehicles) with full knowledge of the '786 patent. These third parties have made or used the '786 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '786 Accused Instrumentalities and use them in ways that would infringe the '786 patent if such combination occurred within the United States. Ford provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '786 patent if such assembly and usage took place in the United States. Additionally, Ford's components are especially made and/or especially adapted for use in an infringing manner and Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

143.    On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that Ford caused these acts with the specific intent to infringe the '786 patent.  At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '786 patent (or would have infringed if those acts occurred within the United States).

144.    Moreover, on information and belief, Ford's infringement of the '786 patent has been and continues to be willful and merits enhanced damages.

145.    For example, Ford has known of the '786 patent and its infringement of the '786 patent as described herein.

146.    On information and belief, since knowing of the '786 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '786 patent.

147.    On information and belief, Ford has made no attempt to design around the claims of the '786 patent.

148.    On information and belief, Ford has no reasonable basis for believing that the claims of the '786 patent are either invalid or not infringed by the '786 Accused Instrumentalities and/or or its activities concerning the '786 Accused Instrumentalities.

149.    AutoConnect has been damaged as the result of Ford's willful infringement.

150.    On information and belief, Ford will continue to infringe one or more claims of the '786 patent unless and until it is enjoined by this Court.

151.    On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '786 patent.  AutoConnect will

suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '786 patent.

## COUNT VI

### (Infringement of the '186 Patent)

152.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

153.    On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '186 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle systems (including in-vehicle multimedia systems), mobile applications (including the Ford App), and hardware and software components thereof, including non-transitory computer readable media that stores microprocessor-executable instructions and hardware and software components that enable Ford's Phone As A Key feature, in certain makes and models from the 2020 model year to the present, including those listed in Exhibit F2 ("the '186 Accused Instrumentalities").  Ford has also directly infringed and continues to directly infringe one or more claims of the '186 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Ford operates and controls the '186 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '186 Accused Instrumentalities to perform one or more method claims of the '186 patent.

154.    Attached to this Complaint as Exhibit F3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1, 8, and 15 of the '186 patent are met by the '186 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also

confirm that Ford's '186 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '186 patent, as discussed herein and in Exhibit F3.

155.    Ford's infringement of the '186 patent has also been indirect.

156.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '186 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '186 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '186 patent.

157.    For example, Ford has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '186 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 8 and 15 of the '186 patent, or with willful blindness to that fact.[16]  On information and belief, Ford will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '186 Accused Instrumentalities in ways that directly infringe the '186 patent, and Ford has and will continue to encourage these acts with the specific intent to infringe the '186 patent.  Further, Ford provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Ford's '186 Accused Instrumentalities with

---

[16] *E.g.*, https://www.ford.com/support/how-tos/fordpass/phone-as-a-key/how-do-i-set-up-phone-as-a-key-with-the-fordpass-app/; https://www.ford.com/support/vehicle/mustang-mach-e/2022/how-to-videos/video-library/fordpass/6314812509112?name=fordpass-using-phone-as-a-key;
https://www.fordservicecontent.com/Ford_Content/vdirsnet/OwnerManual/Home/Content?variantid=6999&languageCode=en&countryCode=USA&Uid=G1886145&ProcUid=G1890125&userMarket=usa&div=l&vFilteringEnabled=False&buildtype=web

knowledge that such use constitutes an act of direct infringement of the '186 patent.[17]

Alternatively, Ford has acted with willful blindness to these facts. On information and belief, Ford knows that there is a high probability that the use of Ford's '186 Accused Instrumentalities constitutes direct infringement of the '186 patent but took deliberate actions to avoid learning of these facts.

158. On information and belief, Ford has been aware of the inventions described and claimed in the '186 patent since at least shortly after the issuance of the '186 patent in September 2015, or was willfully blind to the existence of the patent. For example, in the 2019-2023 time frame, Ford encountered patents related to the '186 patent during prosecution of its own patents at least 4 times, and those patents share the same priority documents and specifications, had the same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '186 patent.

159. Moreover, on information and belief, Ford Global Technologies, LLC ("FGT") is a wholly owned subsidiary of Ford, responsible for managing Ford's intellectual property and technology commercialization worldwide.

160. On information and belief, Ford and FGT share a principal-agent relationship, with FGT acting as Ford's authorized agent in managing intellectual property matters in the United States. FGT, as a wholly owned subsidiary of Ford, undertakes critical responsibilities on Ford's behalf, including the filing, prosecution, and maintenance of patents and patent

---

[17] *E.g.*, https://www.ford.com/support/how-tos/fordpass/phone-as-a-key/how-do-i-set-up-phone-as-a-key-with-the-fordpass-app/; https://www.ford.com/support/vehicle/mustang-mach-e/2022/how-to-videos/video-library/fordpass/6314812509112?name=fordpass-using-phone-as-a-key; https://www.fordservicecontent.com/Ford_Content/vdirsnet/OwnerManual/Home/Content?variantid=6999&languageCode=en&countryCode=USA&Uid=G1886145&ProcUid=G1890125&userMarket=usa&div=l&vFilteringEnabled=False&buildtype=web

applications in the United States, including the State of Delaware. In this capacity, FGT's

knowledge of third-party patents, including those held by AutoConnect, is imputed to Ford.

161.    On information and belief, in the 2016-2023 time frame, FGT encountered

numerous AutoConnect patents and patent applications related to the '186 patent during

prosecution of its own patents.  These related patents and applications share the same priority

documents, specifications, named inventor (Chris Ricci), and initial assignees (Flextronics AP,

LLC and AutoConnect Holdings LLC) as the '186 patent.  The knowledge of these patents by

FGT, acting within the scope of its agency relationship with Ford, constitutes knowledge by

Ford.  By virtue of the agency relationship between Ford and FGT, knowledge of AutoConnect's

patents obtained during FGT's prosecution of Ford's patent applications, including the '186

patent, is imputed to Ford.

162.    On information and belief, Ford has known that the making and/or using of their

'186 Accused Instrumentalities constitutes an act of direct infringement of the '186 patent.  On

information and belief, Ford obtained this knowledge at least since January 2016.  Moreover,

Ford has had such knowledge upon service of AutoConnect's December 2023 letter provided

Ford with such knowledge, as demonstrated by the claim charts attached to the letter, and upon

the filing and service of this Complaint as demonstrated by the claim charts attached hereto.  To

the extent Ford did not have actual knowledge of its infringement, Ford's lack of actual

knowledge is due to their deliberate decision to avoid learning of these facts.  Ford, therefore,

had knowledge that the making and/or using of Ford's '186 Accused Instrumentalities by their

dealerships, customers and/or other end users infringes the '186 patent or Ford was otherwise

willfully blind to that fact.

163.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe the '186 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including dealerships, customer and end users), of at least claims 8 and 15 of the '186 patent.  For example, Ford has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '186 Accused Instrumentalities (including vehicle software components associated with Ford's Phone As A Key Technology) to these third parties with full knowledge of the '186 patent.  These third parties have assembled the components to make and use the '186 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '186 Accused Instrumentalities in ways that infringed/infringe the '186 patent.[18]  Ford's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Ford's components constituted/constitute a material part of the inventions claimed in the '186 patent. Ford supplied/supplies these components with knowledge of the '186 patent and knowledge that the components were especially made for use in an infringing manner.

164.    On information and belief, Ford has also indirectly infringed and continues to indirectly infringe the '186 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '186 Accused Instrumentalities to third parties

---

[18] *E.g.*, https://www.ford.com/support/how-tos/fordpass/phone-as-a-key/how-do-i-set-up-phone-as-a-key-with-the-fordpass-app/; https://www.ford.com/support/vehicle/mustang-mach-e/2022/how-to-videos/video-library/fordpass/6314812509112?name=fordpass-using-phone-as-a-key; https://www.fordservicecontent.com/Ford_Content/vdirsnet/OwnerManual/Home/Content?variantid=6999&languageCode=en&countryCode=USA&Uid=G1886145&ProcUid=G1890125&userMarket=usa&div=l&vFilteringEnabled=False&buildtype=web

(including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 8 and 15 of the '186 patent if such combination occurred within the United States.  For example, Ford has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '186 Accused Instrumentalities (including vehicle software components associated with Ford's Phone As A Key Technology) with full knowledge of the '186 patent.  These third parties have made or used the '186 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '186 Accused Instrumentalities and use them in ways that would infringe the '186 patent if such combination occurred within the United States.  Ford provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '186 patent if such assembly and usage took place in the United States.  Additionally, Ford's components are especially made and/or especially adapted for use in an infringing manner and Ford's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

165.    On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '186 patent.  At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '186 patent (or would have infringed if those acts occurred within the United States).

166.    Moreover, on information and belief, Ford's infringement of the '186 patent has been and continues to be willful and merits enhanced damages.

167.    For example, Ford has known of the '186 patent and its infringement of the '186 patent as described herein.

168.    On information and belief, since knowing of the '186 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '186 patent.

169.    On information and belief, Ford has made no attempt to design around the claims of the '186 patent.

170.    On information and belief, Ford has no reasonable basis for believing that the claims of the '186 patent are either invalid or not infringed by the '186 Accused Instrumentalities and/or or its activities concerning the '186 Accused Instrumentalities.

171.    AutoConnect has been damaged as the result of Ford's willful infringement.

172.    On information and belief, Ford will continue to infringe one or more claims of the '186 patent unless and until it is enjoined by this Court.

On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '186 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '186 patent.

## <u>COUNT VII</u>

### (Infringement of the '560 Patent)

173.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

174.    On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '560 patent under 35 U.S.C. § 271(a), either literally or under

the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing vehicles, vehicle communication systems (including an in-vehicle multimedia system), and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software that enable Apple CarPlay and/or Android Auto in Ford vehicles, in certain makes and models from the 2017 model year to the present, including those listed in Exhibit G2 ("the '560 Accused Instrumentalities").  Ford has also directly infringed and continues to directly infringe one or more claims of the '560 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Ford operates and controls the '560 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '560 Accused Instrumentalities to perform one or more method claims of the '560 patent.

175.    Attached to this Complaint as Exhibit G3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claims 11 and 16 of the '560 patent are met by the '560 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also confirm that Ford's '560 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '560 patent, as discussed herein and in Exhibit G3.

176.    Ford's infringement of the '560 patent has also been indirect.

177.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '560 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including dealerships, customers, and other end-

users), to make and/or use the '560 Accused Instrumentalities. Such making and/or using by third parties constitutes direct infringement of one or more claims of the '560 patent.

178.    For example, Ford has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '560 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 11 and 16 of the '560 patent, or with willful blindness to that fact.[19] On information and belief, Ford will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '560 Accused Instrumentalities in ways that directly infringe the '560 patent, and Ford has and will continue to encourage these acts with the specific intent to infringe the '560 patent. Further, Ford provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Ford's '560 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '560 patent.[20] Alternatively, Ford has acted with willful blindness to these facts. On information and belief, Ford knows that there is a high probability that the use of Ford's '560 Accused Instrumentalities

---

[19] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/; https://www.ford.com/technology/sync/?gnav=footer-aboutford; https://www.lincoln.com/technology/sync/?gnav=footer-owner; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

[20] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/; https://www.ford.com/technology/sync/?gnav=footer-aboutford; https://www.lincoln.com/technology/sync/?gnav=footer-owner; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

constitutes direct infringement of the '560 patent but took deliberate actions to avoid learning of these facts.

179.    On information and belief, Ford has been aware of the inventions described and claimed in the '560 patent since at least shortly after the issuance of the '560 patent in September 2015, or was willfully blind to the existence of the patent.

180.    On information and belief, Ford Global Technologies, LLC ("FGT") is a wholly owned subsidiary of Ford, responsible for managing Ford's intellectual property and technology commercialization worldwide.

181.    On information and belief, Ford and FGT share a principal-agent relationship, with FGT acting as Ford's authorized agent in managing intellectual property matters in the United States. FGT, as a wholly owned subsidiary of Ford, undertakes critical responsibilities on Ford's behalf, including the filing, prosecution, and maintenance of patents and patent applications in the United States, including the State of Delaware. In this capacity, FGT's knowledge of third-party patents, including those held by AutoConnect, is imputed to Ford.

182.    On information and belief, in the 2015-2023 time frame, FGT encountered numerous AutoConnect patents and patent applications related to the '560 patent during prosecution of its own patents.  These related patents and applications share the same priority documents, specifications, named inventor (Chris Ricci), and initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '560 patent.  The knowledge of these patents by FGT, acting within the scope of its agency relationship with Ford, constitutes knowledge by Ford.  By virtue of the agency relationship between Ford and FGT, knowledge of AutoConnect's patents obtained during FGT's prosecution of Ford's patent applications, including the '560 patent, is imputed to Ford.

183.    On information and belief, Ford has known that the making and/or using of their '560 Accused Instrumentalities constitutes an act of direct infringement of the '560 patent.  On information and belief, Ford obtained this knowledge at least since October 2015.  Moreover, Ford has had such knowledge upon service of AutoConnect's December 2023 letter, which provided Ford with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint, as demonstrated by the claim charts attached hereto.  To the extent Ford did not have actual knowledge of its infringement, Ford's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts.  Ford, therefore, had knowledge that the making and/or using of Ford's '560 Accused Instrumentalities by their dealerships, customers, and/or other end users infringes the '560 patent or Ford was otherwise willfully blind to that fact.

184.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe the '560 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including dealerships, customers, and other end users), of at least claim 11 of the '560 patent.  For example, Ford has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '560 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto in Ford vehicles) to these third parties with full knowledge of the '560 patent.  These third parties have assembled the components to make and use the '560 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '560 Accused

Instrumentalities in ways that infringed/infringe the '560 patent.[21]  Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses. Further, Ford's components constituted/constitute a material part of the inventions claimed in the '560 patent.  Ford supplied/supplies these components with knowledge of the '560 patent and knowledge that the components were/are especially made for use in an infringing manner.

185.    On information and belief, Ford has also indirectly infringed and continues to indirectly infringe the '560 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '560 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 11 and 16 of the '560 patent if such combination occurred within the United States.  For example, Ford has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '560 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto in Ford vehicles) with full knowledge of the '560 patent.  These third parties have made or used the '560 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '560 Accused Instrumentalities and use them in ways that would infringe the '560 patent if such combination occurred within the United States. Ford provides these instructions to the third parties with the knowledge that assembly and usage

---

[21] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/; https://www.ford.com/technology/sync/?gnav=footer-aboutford; https://www.lincoln.com/technology/sync/?gnav=footer-owner; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

in accordance with their instructions would infringe the '560 patent if such assembly and usage took place in the United States.  Additionally, Ford's components are especially made and/or especially adapted for use in an infringing manner and Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

186.    On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that Ford caused these acts with the specific intent to infringe the '560 patent.  At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '560 patent (or would have infringed if those acts occurred within the United States).

187.    Moreover, on information and belief, Ford's infringement of the '560 patent has been and continues to be willful and merits enhanced damages.

188.    For example, Ford has known of the '560 patent and its infringement of the '560 patent as described herein.

189.    On information and belief, since knowing of the '560 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '560 patent.

190.    On information and belief, Ford has made no attempt to design around the claims of the '560 patent.

191.    On information and belief, Ford has no reasonable basis for believing that the claims of the '560 patent are either invalid or not infringed by the '560 Accused Instrumentalities and/or or its activities concerning the '560 Accused Instrumentalities.

192.    AutoConnect has been damaged as the result of Ford's willful infringement.

193.    On information and belief, Ford will continue to infringe one or more claims of the '560 patent unless and until it is enjoined by this Court.

194.    On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '560 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '560 patent.

## COUNT VIII

### (Infringement of the '296 Patent)

195.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

196.    On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '296 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle systems (including in-vehicle multimedia systems), mobile applications (including the Ford App), and hardware and software components thereof, including non-transitory computer-readable media that store computer-executable instructions and hardware and software that enable Personal Profiles in Ford vehicles, in certain makes and models from the 2020 model year to the present, including those listed in Exhibit H2 ("the '296 Accused Instrumentalities").  Ford has also directly infringed and continues to directly infringe one or more claims of the '296 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Ford operates and controls the '296 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '296 Accused Instrumentalities to perform one or more method claims of the '296 patent.

197.    Attached to this Complaint as Exhibit H3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 7, 8, and 14 of the '296 patent are met by the '296 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also confirm that Ford's '296 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '296 patent, as discussed herein and in Exhibit H3.

198.    Ford's infringement of the '296 patent has also been indirect.

199.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '296 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '296 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '296 patent.

200.    For example, Ford has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '296 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 8 and 14 of the '296 patent, or with willful blindness to that fact.[22]  On information and belief, Ford will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '296 Accused Instrumentalities in ways that directly infringe the '296 patent, and Ford has and will continue to encourage these

---

[22] *E.g.*, https://www.ford.com/support/how-tos/fordpass/phone-as-a-key/how-do-i-set-up-phone-as-a-key-with-the-fordpass-app/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-create-a-personal-profile-with-sync/; https://www.ford.com/support/how-tos/sync/sync-4a/how-do-i-personalize-my-sync-4a-settings/;
https://www.ford.com/support/how-tos/fordpass/phone-as-a-key/what-is-phone-as-a-key-in-fordpass/; https://www.ford.com/support/vehicle/mustang-mach-e/2022/how-to-videos/video-library/fordpass/6314812509112?name=fordpass-using-phone-as-a-key

acts with the specific intent to infringe the '296 patent.  Further, Ford provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Ford's '296 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '296 patent.[23] Alternatively, Ford has acted with willful blindness to these facts.  On information and belief, Ford knows that there is a high probability that the use of Ford's '296 Accused Instrumentalities constitutes direct infringement of the '296 patent but took deliberate actions to avoid learning of these facts.

201.    On information and belief, Ford has been aware of the inventions described and claimed in the '296 patent since at least shortly after the issuance of the '296 patent in September 2015, or was willfully blind to the existence of the patent.  For example, in the 2019-2023 time frame, Ford encountered patents related to the '296 patent during prosecution of its own patents at least 4 times, and those patents share the same priority documents and specifications, had the same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '296 patent.

202.    Moreover, on information and belief, Ford Global Technologies, LLC ("FGT") is a wholly owned subsidiary of Ford, responsible for managing Ford's intellectual property and technology commercialization worldwide.

---

[23] *E.g.*, https://www.ford.com/support/how-tos/fordpass/phone-as-a-key/how-do-i-set-up-phone-as-a-key-with-the-fordpass-app/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-create-a-personal-profile-with-sync/; https://www.ford.com/support/how-tos/sync/sync-4a/how-do-i-personalize-my-sync-4a-settings/;
https://www.ford.com/support/how-tos/fordpass/phone-as-a-key/what-is-phone-as-a-key-in-fordpass/; https://www.ford.com/support/vehicle/mustang-mach-e/2022/how-to-videos/video-library/fordpass/6314812509112?name=fordpass-using-phone-as-a-key

203.   On information and belief, Ford and FGT share a principal-agent relationship, with FGT acting as Ford's authorized agent in managing intellectual property matters in the United States. FGT, as a wholly owned subsidiary of Ford, undertakes critical responsibilities on Ford's behalf, including the filing, prosecution, and maintenance of patents and patent applications in the United States, including the State of Delaware. In this capacity, FGT's knowledge of third-party patents, including those held by AutoConnect, is imputed to Ford.

204.   On information and belief, during the course of FGT's prosecution of patent applications on behalf of Ford, FGT became aware of the asserted '296 patent, through USPTO correspondence, office actions, and related patent prosecution activities starting in August 2016. Additionally, in the 2016-2023 time frame, FGT encountered numerous AutoConnect patents and patent applications related to the '296 patent during prosecution of its own patents.  These related patents and applications share the same priority documents, specifications, named inventor (Chris Ricci), and initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '296 patent.  The knowledge of these patents by FGT, acting within the scope of its agency relationship with Ford, constitutes knowledge by Ford.  By virtue of the agency relationship between Ford and FGT, knowledge of AutoConnect's patents obtained during FGT's prosecution of Ford's patent applications, including the '296 patent, is imputed to Ford.

205.   On information and belief, Ford has known that the making and/or using of their '296 Accused Instrumentalities constitutes an act of direct infringement of the '296 patent.  On information and belief, Ford obtained this knowledge at least since January 2016.  Moreover, Ford has had such knowledge upon service of AutoConnect's December 2023 letter provided Ford with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint as demonstrated by the claim charts attached hereto.  To

the extent Ford did not have actual knowledge of its infringement, Ford's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Ford, therefore, had knowledge that the making and/or using of Ford's '296 Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '296 patent or Ford was otherwise willfully blind to that fact.

206.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe the '296 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including dealerships, customer and end users), of at least claims 8 and 14 of the '296 patent. For example, Ford has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '296 Accused Instrumentalities (including vehicle software components associated with Ford's Personal Profiles Technology) to these third parties with full knowledge of the '296 patent. These third parties have assembled the components to make and use the '296 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '296 Accused Instrumentalities in ways that infringed/infringe the '296 patent.[24] Ford's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses. Further, Ford's components constituted/constitute a material part of the inventions claimed in the '296 patent.

---

[24] *E.g.*, https://www.ford.com/support/how-tos/fordpass/phone-as-a-key/how-do-i-set-up-phone-as-a-key-with-the-fordpass-app/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-create-a-personal-profile-with-sync/; https://www.ford.com/support/how-tos/sync/sync-4a/how-do-i-personalize-my-sync-4a-settings/;
https://www.ford.com/support/how-tos/fordpass/phone-as-a-key/what-is-phone-as-a-key-in-fordpass/; https://www.ford.com/support/vehicle/mustang-mach-e/2022/how-to-videos/video-library/fordpass/6314812509112?name=fordpass-using-phone-as-a-key

Ford supplied/supplies these components with knowledge of the '296 patent and knowledge that the components were especially made for use in an infringing manner.

207.    On information and belief, Ford has also indirectly infringed and continues to indirectly infringe the '296 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '296 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 8 and 14 of the '296 patent if such combination occurred within the United States.  For example, Ford has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '296 Accused Instrumentalities (including vehicle software components associated with Ford's Personal Profiles Technology) with full knowledge of the '296 patent.  These third parties have made or used the '296 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '296 Accused Instrumentalities and use them in ways that would infringe the '296 patent if such combination occurred within the United States.  Ford provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '296 patent if such assembly and usage took place in the United States.  Additionally, Ford's components are especially made and/or especially adapted for use in an infringing manner and Ford's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

208.    On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or

would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '296 patent. At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '296 patent (or would have infringed if those acts occurred within the United States).

209.    Moreover, on information and belief, Ford's infringement of the '296 patent has been and continues to be willful and merits enhanced damages.

210.    For example, Ford has known of the '296 patent and its infringement of the '296 patent as described herein.

211.    On information and belief, since knowing of the '296 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '296 patent.

212.    On information and belief, Ford has made no attempt to design around the claims of the '296 patent.

213.    On information and belief, Ford has no reasonable basis for believing that the claims of the '296 patent are either invalid or not infringed by the '296 Accused Instrumentalities and/or or its activities concerning the '296 Accused Instrumentalities.

214.    AutoConnect has been damaged as the result of Ford's willful infringement.

215.    On information and belief, Ford will continue to infringe one or more claims of the '296 patent unless and until it is enjoined by this Court.

216.    On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '296 patent. AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '296 patent.

## COUNT IX

### (Infringement of the '297 Patent)

217.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

218.    On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '297 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing vehicles, vehicle communication systems, in-vehicle multimedia systems, and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software that enable user device profiles in Ford vehicles, in certain makes and models from the 2020 model year to the present, including those listed in Exhibit I2 ("the '297 Accused Instrumentalities").  Ford has also directly infringed and continues to directly infringe one or more claims of the '297 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Ford operates and controls the '297 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '297 Accused Instrumentalities to perform one or more method claims of the '297 patent.

219.    Attached to this Complaint as Exhibit I3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claims 1, 9, and 15 of the '297 patent are met by the '297 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also

confirm that Ford's '297 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '297 patent, as discussed herein and in Exhibit I3.

220.    Ford's infringement of the '297 patent has also been indirect.

221.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '297 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '297 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '297 patent.

222.    For example, Ford has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '297 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 9 and 15 of the '297 patent, or with willful blindness to that fact.[25]  On information and belief, Ford will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '297 Accused Instrumentalities in ways that directly infringe the '297 patent, and Ford has and will continue to encourage these acts with the specific intent to infringe the '297 patent.  Further, Ford provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Ford's '297 Accused Instrumentalities with

---

[25] *E.g.*,
https://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2024_Ford_Mustang_Mach-E_Owners_Manual_version_1_om_EN-US.pdf;
https://www.youtube.com/watch?v=IosLcvfPcoY;
https://www.youtube.com/watch?v=h3457G5mWF0

knowledge that such use constitutes an act of direct infringement of the '297 patent.[26]
Alternatively, Ford has acted with willful blindness to these facts.  On information and belief,
Ford knows that there is a high probability that the use of Ford's '297 Accused Instrumentalities
constitutes direct infringement of the '297 patent but took deliberate actions to avoid learning of
these facts.

223.    On information and belief, Ford has been aware of the inventions described and
claimed in the '297 patent since at least shortly after the issuance of the '297 patent in
September 2015, or was willfully blind to the existence of the patent.  For example, in the 2019-
2023 time frame, Ford encountered patents related to the '297 patent during prosecution of its
own patents, and those patents share the same priority documents and specifications, had the
same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and
AutoConnect Holdings LLC) as the '297 patent.

224.    Moreover, on information and belief, Ford Global Technologies, LLC ("FGT") is
a wholly owned subsidiary of Ford, responsible for managing Ford's intellectual property and
technology commercialization worldwide.

225.    On information and belief, Ford and FGT share a principal-agent relationship,
with FGT acting as Ford's authorized agent in managing intellectual property matters in the
United States. FGT, as a wholly owned subsidiary of Ford, undertakes critical responsibilities on
Ford's behalf, including the filing, prosecution, and maintenance of patents and patent

---

[26] *E.g.*,
https://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2024_Ford_Mustang_Mach-E_Owners_Manual_version_1_om_EN-US.pdf;
https://www.youtube.com/watch?v=IosLcvfPcoY;
https://www.youtube.com/watch?v=h3457G5mWF0

applications in the United States, including the State of Delaware. In this capacity, FGT's knowledge of third-party patents, including those held by AutoConnect, is imputed to Ford.

226.    On information and belief, in the 2016-2023 time frame, FGT encountered numerous AutoConnect patents and patent applications related to the '297 patent during prosecution of its own patents.  These related patents and applications share the same priority documents, specifications, named inventor (Chris Ricci), and initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '297 patent.  The knowledge of these patents by FGT, acting within the scope of its agency relationship with Ford, constitutes knowledge by Ford.  By virtue of the agency relationship between Ford and FGT, knowledge of AutoConnect's patents obtained during FGT's prosecution of Ford's patent applications, including the '297 patent, is imputed to Ford.

227.    On information and belief, Ford has known that the making and/or using of their '297 Accused Instrumentalities constitutes an act of direct infringement of the '297 patent.  On information and belief, Ford obtained this knowledge at least since January 2016.  Moreover, Ford has had such knowledge upon service of AutoConnect's December 2023 letter, which provided Ford with such knowledge, as well as AutoConnect's October 25, 2024 letter, which further demonstrated Ford's infringement via claim charts attached to the letter, and upon the filing and service of this Complaint, as demonstrated by the claim charts attached hereto.  To the extent Ford did not have actual knowledge of its infringement, Ford's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts.  Ford, therefore, had knowledge that the making and/or using of Ford's '297 Accused Instrumentalities by their dealerships, customers, and/or other end users infringes the '297 patent or Ford was otherwise willfully blind to that fact.

228.     On information and belief, Ford has indirectly infringed and continues to indirectly infringe the '297 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including dealerships, customers, and other end users), of at least claim 15 of the '297 patent.  For example, Ford has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '297 Accused Instrumentalities (including vehicle software components associated with enabling user device profiles in Ford vehicles) to these third parties with full knowledge of the '297 patent. These third parties have assembled the components to make and use the '297 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '297 Accused Instrumentalities in ways that infringed/infringe the '297 patent.[27]  Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Ford's components constituted/constitute a material part of the inventions claimed in the '297 patent. Ford supplied/supplies these components with knowledge of the '297 patent and knowledge that the components were/are especially made for use in an infringing manner.

229.     On information and belief, Ford has also indirectly infringed and continues to indirectly infringe the '297 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '297 Accused Instrumentalities to third parties

---

[27] *E.g.*,
https://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2024_Ford_Mustang_Mach-E_Owners_Manual_version_1_om_EN-US.pdf;
https://www.youtube.com/watch?v=IosLcvfPcoY;
https://www.youtube.com/watch?v=h3457G5mWF0

(including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 9 and 15 of the '297 patent if such combination occurred within the United States. For example, Ford has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '297 Accused Instrumentalities (including vehicle software components associated with enabling user device profiles in Ford vehicles) with full knowledge of the '297 patent. These third parties have made or used the '297 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '297 Accused Instrumentalities and use them in ways that would infringe the '297 patent if such combination occurred within the United States. Ford provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '297 patent if such assembly and usage took place in the United States. Additionally, Ford's components are especially made and/or especially adapted for use in an infringing manner and Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

230. On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that Ford caused these acts with the specific intent to infringe the '297 patent. At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '297 patent (or would have infringed if those acts occurred within the United States).

231.    Moreover, on information and belief, Ford's infringement of the '297 patent has been and continues to be willful and merits enhanced damages.

232.    For example, Ford has known of the '297 patent and its infringement of the '297 patent as described herein.

233.    On information and belief, since knowing of the '297 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '297 patent.

234.    On information and belief, Ford has made no attempt to design around the claims of the '297 patent.

235.    On information and belief, Ford has no reasonable basis for believing that the claims of the '297 patent are either invalid or not infringed by the '297 Accused Instrumentalities and/or or its activities concerning the '297 Accused Instrumentalities.

236.    AutoConnect has been damaged as the result of Ford's willful infringement.

237.    On information and belief, Ford will continue to infringe one or more claims of the '297 patent unless and until it is enjoined by this Court.

238.    On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '297 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '297 patent.

## COUNT X

### (Infringement of the '100 Patent)

239.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

240.    On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '100 patent under 35 U.S.C. § 271(a), either literally or under

the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing vehicles, vehicle communication systems, in-vehicle multimedia systems, and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software that enable security measures in Ford vehicles, in certain makes and models from the 2017 model year to the present, including those listed in Exhibit J2 ("the '100 Accused Instrumentalities"). Ford has also directly infringed and continues to directly infringe one or more claims of the '100 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Ford operates and controls the '100 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '100 Accused Instrumentalities to perform one or more method claims of the '100 patent.

241.    Attached to this Complaint as Exhibit J3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claims 1, 9, and 17 of the '100 patent are met by the '100 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also confirm that Ford's '100 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '100 patent, as discussed herein and in Exhibit J3.

242.    Ford's infringement of the '100 patent has also been indirect.

243.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '100 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including dealerships, customers, and other end-

users), to make and/or use the '100 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '100 patent.

244.    For example, Ford has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '100 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 1 and 17 of the '100 patent, or with willful blindness to that fact.[28]  On information and belief, Ford will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '100 Accused Instrumentalities in ways that directly infringe the '100 patent, and Ford has and will continue to encourage these acts with the specific intent to infringe the '100 patent.  Further, Ford provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Ford's '100 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '100 patent.[29]  Alternatively, Ford has acted with willful blindness to these facts.  On information and belief, Ford knows that there is a high probability that the use of Ford's '100 Accused Instrumentalities constitutes direct infringement of the '100 patent but took deliberate actions to avoid learning of these facts.

---

[28] *E.g.*, https://www.autosar.org/standards/adaptive-platform; https://www.autosar.org/; https://www.autosar.org/about/partners/core-partner
[29] *E.g.*, https://www.autosar.org/standards/adaptive-platform; https://www.autosar.org/; https://www.autosar.org/about/partners/core-partner

245.    On information and belief, Ford has been aware of the inventions described and claimed in the '100 patent since at least shortly after the issuance of the '100 patent in October 2015, or was willfully blind to the existence of the patent.

246.    On information and belief, Ford Global Technologies, LLC ("FGT") is a wholly owned subsidiary of Ford, responsible for managing Ford's intellectual property and technology commercialization worldwide.

247.    On information and belief, Ford and FGT share a principal-agent relationship, with FGT acting as Ford's authorized agent in managing intellectual property matters in the United States. FGT, as a wholly owned subsidiary of Ford, undertakes critical responsibilities on Ford's behalf, including the filing, prosecution, and maintenance of patents and patent applications in the United States, including the State of Delaware. In this capacity, FGT's knowledge of third-party patents, including those held by AutoConnect, is imputed to Ford.

248.    On information and belief, during the course of FGT's prosecution of patent applications on behalf of Ford, FGT became aware of the asserted '100 patent, through USPTO correspondence, office actions, and related patent prosecution activities starting in April 2021. Additionally, in the 2015-2023 time frame, FGT encountered numerous AutoConnect patents and patent applications related to the '100 patent during prosecution of its own patents.  These related patents and applications share the same priority documents, specifications, named inventor (Chris Ricci), and initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '100 patent.  The knowledge of these patents by FGT, acting within the scope of its agency relationship with Ford, constitutes knowledge by Ford.  By virtue of the agency relationship between Ford and FGT, knowledge of AutoConnect's patents obtained during FGT's prosecution of Ford's patent applications, including the '100 patent, is imputed to Ford.

249. On information and belief, Ford has known that the making and/or using of their '100 Accused Instrumentalities constitutes an act of direct infringement of the '100 patent. On information and belief, Ford obtained this knowledge at least since December 2015. Moreover, Ford has had such knowledge upon service of AutoConnect's December 2023 letter, which provided Ford with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint, as demonstrated by the claim charts attached hereto. To the extent Ford did not have actual knowledge of its infringement, Ford's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Ford, therefore, had knowledge that the making and/or using of Ford's '100 Accused Instrumentalities by their dealerships, customers, and/or other end users infringes the '100 patent, or Ford was otherwise willfully blind to that fact.

250. On information and belief, Ford has indirectly infringed and continues to indirectly infringe the '100 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including dealerships, customers, and other end users), of at least claims 1 and 17 of the '100 patent. For example, Ford has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '100 Accused Instrumentalities (including vehicle software components associated with enabling security measures in Ford vehicles) to these third parties with full knowledge of the '100 patent. These third parties have assembled the components to make and use the '100 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '100 Accused Instrumentalities in ways

that infringed/infringe the '100 patent.[30]  Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Ford's components constituted/constitute a material part of the inventions claimed in the '100 patent. Ford supplied/supplies these components with knowledge of the '100 patent and knowledge that the components were/are especially made for use in an infringing manner.

251.    On information and belief, Ford has also indirectly infringed and continues to indirectly infringe the '100 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '100 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 1 and 17 of the '100 patent if such combination occurred within the United States.  For example, Ford has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '100 Accused Instrumentalities (including vehicle software components associated with enabling security measures in Ford vehicles) with full knowledge of the '100 patent.  These third parties have made or used the '100 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '100 Accused Instrumentalities and use them in ways that would infringe the '100 patent if such combination occurred within the United States. Ford provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '100 patent if such assembly and usage took place in the United States.  Additionally, Ford's components are especially made and/or

---

[30] *E.g.*, https://www.autosar.org/standards/adaptive-platform; https://www.autosar.org/; https://www.autosar.org/about/partners/core-partner

especially adapted for use in an infringing manner and Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

252.    On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that Ford caused these acts with the specific intent to infringe the '100 patent.  At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '100 patent (or would have infringed if those acts occurred within the United States).

253.    Moreover, on information and belief, Ford's infringement of the '100 patent has been and continues to be willful and merits enhanced damages.

254.    For example, Ford has known of the '100 patent and its infringement of the '100 patent as described herein.

255.    On information and belief, since knowing of the '100 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '100 patent.

256.    On information and belief, Ford has made no attempt to design around the claims of the '100 patent.

257.    On information and belief, Ford has no reasonable basis for believing that the claims of the '100 patent are either invalid or not infringed by the '100 Accused Instrumentalities and/or or its activities concerning the '100 Accused Instrumentalities.

258.    AutoConnect has been damaged as the result of Ford's willful infringement.

259.    On information and belief, Ford will continue to infringe one or more claims of the '100 patent unless and until it is enjoined by this Court.

260.    On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '100 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '100 patent.

## COUNT XI

### (Infringement of the '153 Patent)

261.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

262.    On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '153 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing vehicles, vehicle communication systems (including an in-vehicle multimedia system), and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software that enable Apple CarPlay and/or Android Auto in Ford vehicles, in certain makes and models from the 2017 model year to the present, including those listed in Exhibit K2 ("the '153 Accused Instrumentalities").  Ford has also directly infringed and continues to directly infringe one or more claims of the '153 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Ford operates and controls the '153 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '153 Accused Instrumentalities to perform one or more method claims of the '153 patent.

263.    Attached to this Complaint as Exhibit K3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary

claims 1, 11, and 12 of the '153 patent are met by the '153 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also confirm that Ford's '153 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '153 patent, as discussed herein and in Exhibit K3.

264.    Ford's infringement of the '153 patent has also been indirect.

265.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '153 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '153 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '153 patent.

266.    For example, Ford has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '153 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claim 12 of the '153 patent, or with willful blindness to that fact.[31]  On information and belief, Ford will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '153 Accused Instrumentalities in ways that directly infringe the '153 patent, and Ford has and will continue to encourage these acts with the specific intent to infringe the '153 patent.  Further, Ford provides information and technical support to their dealerships, customers, and other end-users, including manuals,

---

[31] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/;
https://www.ford.com/technology/sync/?gnav=footer-aboutford;
https://www.lincoln.com/technology/sync/?gnav=footer-owner;
https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Ford's '153 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '153 patent.[32] Alternatively, Ford has acted with willful blindness to these facts. On information and belief, Ford knows that there is a high probability that the use of Ford's '153 Accused Instrumentalities constitutes direct infringement of the '153 patent but took deliberate actions to avoid learning of these facts.

267.    On information and belief, Ford has been aware of the inventions described and claimed in the '153 patent since at least shortly after the issuance of the '153 patent in March 2016, or was willfully blind to the existence of the patent. For example, in the 2019-2023 time frame, Ford encountered patents related to the '153 patent during prosecution of its own patents, and those patents share the same priority documents and specifications, had the same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '153 patent.

268.    Moreover, on information and belief, Ford Global Technologies, LLC ("FGT") is a wholly owned subsidiary of Ford, responsible for managing Ford's intellectual property and technology commercialization worldwide.

269.    On information and belief, Ford and FGT share a principal-agent relationship, with FGT acting as Ford's authorized agent in managing intellectual property matters in the United States. FGT, as a wholly owned subsidiary of Ford, undertakes critical responsibilities on

---

[32] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/; https://www.ford.com/technology/sync/?gnav=footer-aboutford; https://www.lincoln.com/technology/sync/?gnav=footer-owner; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

Ford's behalf, including the filing, prosecution, and maintenance of patents and patent applications in the United States, including the State of Delaware. In this capacity, FGT's knowledge of third-party patents, including those held by AutoConnect, is imputed to Ford.

270.    On information and belief, in the 2016-2023 time frame, FGT encountered numerous AutoConnect patents and patent applications related to the '153 patent during prosecution of its own patents.  These related patents and applications share the same priority documents, specifications, named inventor (Chris Ricci), and initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '153 patent.  The knowledge of these patents by FGT, acting within the scope of its agency relationship with Ford, constitutes knowledge by Ford.  By virtue of the agency relationship between Ford and FGT, knowledge of AutoConnect's patents obtained during FGT's prosecution of Ford's patent applications, including the '153 patent, is imputed to Ford.

271.    On information and belief, Ford has known that the making and/or using of their '153 Accused Instrumentalities constitutes an act of direct infringement of the '153 patent.  On information and belief, Ford obtained this knowledge at least since November 2016.  Moreover, Ford has had such knowledge upon service of AutoConnect's December 2023 letter, which provided Ford with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint, as demonstrated by the claim charts attached hereto.  To the extent Ford did not have actual knowledge of its infringement, Ford's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts.  Ford, therefore, had knowledge that the making and/or using of Ford's '153 Accused Instrumentalities by their dealerships, customers, and/or other end users infringes the '153 patent or Ford was otherwise willfully blind to that fact.

272.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe the '153 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including dealerships, customers, and other end users), of at least claim 12 of the '153 patent.  For example, Ford has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '153 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto in Ford vehicles) to these third parties with full knowledge of the '153 patent.  These third parties have assembled the components to make and use the '153 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '153 Accused Instrumentalities in ways that infringed/infringe the '153 patent.[33]  Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Ford's components constituted/constitute a material part of the inventions claimed in the '153 patent.  Ford supplied/supplies these components with knowledge of the '153 patent and knowledge that the components were/are especially made for use in an infringing manner.

273.    On information and belief, Ford has also indirectly infringed and continues to indirectly infringe the '153 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '153 Accused Instrumentalities to third parties

---

[33] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/;
https://www.ford.com/technology/sync/?gnav=footer-aboutford;
https://www.lincoln.com/technology/sync/?gnav=footer-owner;
https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

(including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claim 12 of the '153 patent if such combination occurred within the United States.  For example, Ford has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '153 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto in Ford vehicles) with full knowledge of the '153 patent.  These third parties have made or used the '153 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '153 Accused Instrumentalities and use them in ways that would infringe the '153 patent if such combination occurred within the United States. Ford provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '153 patent if such assembly and usage took place in the United States.  Additionally, Ford's components are especially made and/or especially adapted for use in an infringing manner and Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

274.    On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that Ford caused these acts with the specific intent to infringe the '153 patent.  At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '153 patent (or would have infringed if those acts occurred within the United States).

275.    Moreover, on information and belief, Ford's infringement of the '153 patent has been and continues to be willful and merits enhanced damages.

276.    For example, Ford has known of the '153 patent and its infringement of the '153 patent as described herein.

277.    On information and belief, since knowing of the '153 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '153 patent.

278.    On information and belief, Ford has made no attempt to design around the claims of the '153 patent.

279.    On information and belief, Ford has no reasonable basis for believing that the claims of the '153 patent are either invalid or not infringed by the '153 Accused Instrumentalities and/or or its activities concerning the '153 Accused Instrumentalities.

280.    AutoConnect has been damaged as the result of Ford's willful infringement.

281.    On information and belief, Ford will continue to infringe one or more claims of the '153 patent unless and until it is enjoined by this Court.

282.    On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '153 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '153 patent.

## COUNT XII

### (Infringement of the '764 Patent)

283.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

284.    On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '764 patent under 35 U.S.C. § 271(a), either literally or under

the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing vehicles, vehicle communication systems (including in-vehicle multimedia systems), and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software that enable Apple CarPlay and/or Android Auto in Ford vehicles, in certain makes and models from the 2017 model year to the present, including those listed in Exhibit L2 ("the '764 Accused Instrumentalities").  Ford has also directly infringed and continues to directly infringe one or more claims of the '764 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Ford operates and controls the '764 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '764 Accused Instrumentalities to perform one or more method claims of the '764 patent.

285.    Attached to this Complaint as Exhibit L3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '764 patent are met by the '764 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also confirm that Ford's '764 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '764 patent, as discussed herein and in Exhibit L3.

286.    Ford's infringement of the '764 patent has also been indirect.

287.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '764 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including dealerships, customers, and other end-

users), to make and/or use the '764 Accused Instrumentalities.  Such making and/or using by

third parties constitutes direct infringement of one or more claims of the '764 patent.

288.    For example, Ford has supplied, and continues to supply, such induced third

parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile

applications, website materials, promotional materials and the like that instructed/instruct them

how to use the '764 Accused Instrumentalities, with knowledge that usage in accordance with

their instructions directly infringed/infringes at least claim 1 of the '764 patent, or with willful

blindness to that fact.[34]  On information and belief, Ford will continue to encourage, aid, or

otherwise cause these third parties to, for example, use their '764 Accused Instrumentalities in

ways that directly infringe the '764 patent, and Ford has and will continue to encourage these

acts with the specific intent to infringe the '764 patent.  Further, Ford provides information and

technical support to their dealerships, customers, and other end-users, including manuals,

brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional

materials encouraging them to purchase and to use Ford's '764 Accused Instrumentalities with

knowledge that such use constitutes an act of direct infringement of the '764 patent.[35]

Alternatively, Ford has acted with willful blindness to these facts.  On information and belief,

Ford knows that there is a high probability that the use of Ford's '764 Accused Instrumentalities

---

[34] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/;
https://www.ford.com/technology/sync/?gnav=footer-aboutford;
https://www.lincoln.com/technology/sync/?gnav=footer-owner;
https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

[35] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/;
https://www.ford.com/technology/sync/?gnav=footer-aboutford;
https://www.lincoln.com/technology/sync/?gnav=footer-owner;
https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

constitutes direct infringement of the '764 patent but took deliberate actions to avoid learning of these facts.

289.    On information and belief, Ford has been aware of the inventions described and claimed in the '764 patent since at least shortly after the issuance of the '764 patent in December 2020, or was willfully blind to the existence of the patent.

290.    On information and belief, Ford has known that the making and/or using of their '764 Accused Instrumentalities constitutes an act of direct infringement of the '764 patent.  On information and belief, Ford obtained this knowledge at least since December 2020.  Moreover, Ford has had such knowledge upon service of AutoConnect's December 2023 letter, which provided Ford with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint, as demonstrated by the claim charts attached hereto.  To the extent Ford did not have actual knowledge of its infringement, Ford's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts.  Ford, therefore, had knowledge that the making and/or using of Ford's '764 Accused Instrumentalities by their dealerships, customers, and/or other end users infringes the '764 patent or Ford was otherwise willfully blind to that fact.

291.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe the '764 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including dealerships, customers, and other end users), of at least claim 1 of the '764 patent.  For example, Ford has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '764 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or

Android Auto in Ford vehicles) to these third parties with full knowledge of the '764 patent. These third parties have assembled the components to make and use the '764 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '764 Accused Instrumentalities in ways that infringed/infringe the '764 patent.[36]  Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Ford's components constituted/constitute a material part of the inventions claimed in the '764 patent. Ford supplied/supplies these components with knowledge of the '764 patent and knowledge that the components were/are especially made for use in an infringing manner.

292.    On information and belief, Ford has also indirectly infringed and continues to indirectly infringe the '764 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '764 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claim 1 of the '764 patent if such combination occurred within the United States.  For example, Ford has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '764 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto in Ford vehicles) with full knowledge of the '764 patent.  These third parties have made or used the '764 Accused

---

[36] *E.g.*, https://www.lincoln.com/support/category/sync-and-technology/sync-4/;
https://www.ford.com/technology/sync/?gnav=footer-aboutford;
https://www.lincoln.com/technology/sync/?gnav=footer-owner;
https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-do-i-connect-apple-carplay-to-sync/; https://www.ford.com/support/how-tos/sync/getting-started-with-sync/how-does-android-auto-work-with-my-vehicle/

Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '764 Accused Instrumentalities and use them in ways that would infringe the '764 patent if such combination occurred within the United States. Ford provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '764 patent if such assembly and usage took place in the United States. Additionally, Ford's components are especially made and/or especially adapted for use in an infringing manner and Ford's components were/are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

293.    On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that Ford caused these acts with the specific intent to infringe the '764 patent. At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '764 patent (or would have infringed if those acts occurred within the United States).

294.    Moreover, on information and belief, Ford's infringement of the '764 patent has been and continues to be willful and merits enhanced damages.

295.    For example, Ford has known of the '764 patent and its infringement of the '764 patent as described herein.

296.    On information and belief, since knowing of the '764 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '764 patent.

297.    On information and belief, Ford has made no attempt to design around the claims of the '764 patent.

298.    On information and belief, Ford has no reasonable basis for believing that the claims of the '764 patent are either invalid or not infringed by the '764 Accused Instrumentalities and/or or its activities concerning the '764 Accused Instrumentalities.

299.    AutoConnect has been damaged as the result of Ford's willful infringement.

300.    On information and belief, Ford will continue to infringe one or more claims of the '764 patent unless and until it is enjoined by this Court.

301.    On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '764 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '764 patent.

## COUNT XIII

### (Infringement of the '931 Patent)

302.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

303.    On information and belief, Ford has directly infringed and continues to directly infringe one or more claims of the '931 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle systems (including in-vehicle multimedia systems), server systems, mobile applications (including the Ford App), computing devices that execute the Ford App, and hardware and software components thereof, including non-tangible computer-readable media that stores microprocessor-executable instructions and Ford's in-vehicle hardware and software components

89

that enable Ford's Phone As A Key feature, in certain makes and models from the 2020 model year to the present, including those listed in Exhibit M2 ("the '931 Accused Instrumentalities"). Ford has also directly infringed and continues to directly infringe one or more claims of the '931 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Ford operates and controls the '931 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '931 Accused Instrumentalities to perform one or more method claims of the '931 patent.

304.    Attached to this Complaint as Exhibit M3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '931 patent are met by the '931 Accused Instrumentalities.  On information and belief, Ford's source code and/or other non-public documentation will also confirm that Ford's '931 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '931 patent, as discussed herein and in Exhibit M3.

305.    Ford's infringement of the '931 patent has also been indirect.

306.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe one or more claims of the '931 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '931 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '931 patent.

307.    For example, Ford has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '931 Accused Instrumentalities, with knowledge that usage in accordance with

90

their instructions directly infringed/infringes at least claim 1 of the '931 patent, or with willful blindness to that fact.[37]  On information and belief, Ford will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '931 Accused Instrumentalities in ways that directly infringe the '931 patent, and Ford has and will continue to encourage these acts with the specific intent to infringe the '931 patent.  Further, Ford provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Ford's '931 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '931 patent.[38] Alternatively, Ford has acted with willful blindness to these facts.  On information and belief, Ford knows that there is a high probability that the use of Ford's '931 Accused Instrumentalities constitutes direct infringement of the '931 patent but took deliberate actions to avoid learning of these facts.

308.    On information and belief, Ford has been aware of the inventions described and claimed in the '931 patent since at least shortly after the issuance of the '931 patent in November 2021, or was willfully blind to the existence of the patent.

---

[37] *E.g.*, https://www.lincoln.com/support/category/lincoln-way-app/keyless-remote-with-phone-as-a-key/; https://www.ford.com/support/vehicle/mustang-mach-e/2022/how-to-videos/video-library/fordpass/6314812509112?name=fordpass-using-phone-as-a-key; https://www.lincoln.com/support/how-tos/lincoln-way-app/phone-as-a-key/how-do-i-set-up-phone-as-a-key-for-my-lincoln/; https://www.ford.com/support/how-tos/fordpass/phone-as-a-key/how-do-i-set-up-phone-as-a-key-with-the-fordpass-app/

[38] *E.g.*, https://www.lincoln.com/support/category/lincoln-way-app/keyless-remote-with-phone-as-a-key/; https://www.ford.com/support/vehicle/mustang-mach-e/2022/how-to-videos/video-library/fordpass/6314812509112?name=fordpass-using-phone-as-a-key; https://www.lincoln.com/support/how-tos/lincoln-way-app/phone-as-a-key/how-do-i-set-up-phone-as-a-key-for-my-lincoln/; https://www.ford.com/support/how-tos/fordpass/phone-as-a-key/how-do-i-set-up-phone-as-a-key-with-the-fordpass-app/

309.    On information and belief, Ford Global Technologies, LLC ("FGT") is a wholly owned subsidiary of Ford, responsible for managing Ford's intellectual property and technology commercialization worldwide.

310.    On information and belief, Ford and FGT share a principal-agent relationship, with FGT acting as Ford's authorized agent in managing intellectual property matters in the United States. FGT, as a wholly owned subsidiary of Ford, undertakes critical responsibilities on Ford's behalf, including the filing, prosecution, and maintenance of patents and patent applications in the United States, including the State of Delaware. In this capacity, FGT's knowledge of third-party patents, including those held by AutoConnect, is imputed to Ford.

311.    On information and belief, in the 2022-2023 time frame, FGT encountered numerous AutoConnect patents and patent applications related to the '931 patent during prosecution of its own patents.  These related patents and applications share the same priority documents, specifications, named inventor (Chris Ricci), and initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '931 patent.  The knowledge of these patents by FGT, acting within the scope of its agency relationship with Ford, constitutes knowledge by Ford.  By virtue of the agency relationship between Ford and FGT, knowledge of AutoConnect's patents obtained during FGT's prosecution of Ford's patent applications, including the '931 patent, is imputed to Ford.

312.    On information and belief, Ford has known that the making and/or using of their '931 Accused Instrumentalities constitutes an act of direct infringement of the '931 patent.  On information and belief, Ford obtained this knowledge at least since July 2022.  Moreover, Ford has had such knowledge upon service of AutoConnect's December 2023 letter provided Ford with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the

filing and service of this Complaint as demonstrated by the claim charts attached hereto. To the extent Ford did not have actual knowledge of its infringement, Ford's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Ford, therefore, had knowledge that the making and/or using of Ford's '931 Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '931 patent or Ford was otherwise willfully blind to that fact.

313.    On information and belief, Ford has indirectly infringed and continues to indirectly infringe the '931 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including dealerships, customer and end users), of at least claim 1 of the '931 patent. For example, Ford has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '931 Accused Instrumentalities (including vehicle software components associated with Ford's Phone As A Key Technology) to these third parties with full knowledge of the '931 patent. These third parties have assembled the components to make and use the '931 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '931 Accused Instrumentalities in ways that infringed/infringe the '931 patent.[39] Ford's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses. Further, Ford's

---

[39] *E.g.*, https://www.lincoln.com/support/category/lincoln-way-app/keyless-remote-with-phone-as-a-key/; https://www.ford.com/support/vehicle/mustang-mach-e/2022/how-to-videos/video-library/fordpass/6314812509112?name=fordpass-using-phone-as-a-key; https://www.lincoln.com/support/how-tos/lincoln-way-app/phone-as-a-key/how-do-i-set-up-phone-as-a-key-for-my-lincoln/; https://www.ford.com/support/how-tos/fordpass/phone-as-a-key/how-do-i-set-up-phone-as-a-key-with-the-fordpass-app/

components constituted/constitute a material part of the inventions claimed in the '931 patent. Ford supplied/supplies these components with knowledge of the '931 patent and knowledge that the components were especially made for use in an infringing manner.

314.    On information and belief, Ford has also indirectly infringed and continues to indirectly infringe the '931 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '931 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claim 1 of the '931 patent if such combination occurred within the United States.  For example, Ford has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '931 Accused Instrumentalities (including vehicle software components associated with Ford's Phone As A Key Technology) with full knowledge of the '931 patent.  These third parties have made or used the '931 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '931 Accused Instrumentalities and use them in ways that would infringe the '931 patent if such combination occurred within the United States.  Ford provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '931 patent if such assembly and usage took place in the United States.  Additionally, Ford's components are especially made and/or especially adapted for use in an infringing manner and Ford's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

315.    On information and belief, Ford's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '931 patent.  At a minimum, Ford's conduct demonstrates that Ford either knew or should have known that the acts of such third parties directly infringed/infringe the '931 patent (or would have infringed if those acts occurred within the United States).

316.    Moreover, on information and belief, Ford's infringement of the '931 patent has been and continues to be willful and merits enhanced damages.

317.    For example, Ford has known of the '931 patent and its infringement of the '931 patent as described herein.

318.    On information and belief, since knowing of the '931 patent and its infringement thereof, Ford has not taken any affirmative steps to avoid infringing the '931 patent.

319.    On information and belief, Ford has made no attempt to design around the claims of the '931 patent.

320.    On information and belief, Ford has no reasonable basis for believing that the claims of the '931 patent are either invalid or not infringed by the '931 Accused Instrumentalities and/or or its activities concerning the '931 Accused Instrumentalities.

321.    AutoConnect has been damaged as the result of Ford's willful infringement.

322.    On information and belief, Ford will continue to infringe one or more claims of the '931 patent unless and until it is enjoined by this Court.

323.    On information and belief, Ford has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '931 patent.  AutoConnect will

suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Ford is enjoined from infringing the claims of the '931 patent.

## JURY DEMAND

324.    AutoConnect requests a jury trial as to all issues that are triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, AutoConnect respectfully requests that this Court:

A.    Enter judgment that Ford has infringed one or more of the claims of each of the Asserted Patents;

B.    Enter an order permanently enjoining Ford and its officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from infringing the Asserted Patents;

C.    Award AutoConnect all appropriate damages for the infringement of the Asserted Patents, including pre-judgment and post-judgment interest, costs, and all other relief permitted under 35 U.S.C. § 284;

D.    Award AutoConnect an accounting for acts of infringement not presented at trial, including an award of additional damages for such acts of infringement;

E.    Enter judgment that Ford's infringement of each of the Asserted Patents has been deliberate and willful;

F.    Treble the damages awarded to AutoConnect under 35 U.S.C. § 284 by reason of Ford's willful infringement of one or more claims of each of the Asserted Patents;

G.    Declare this case to be "exceptional" under 35 U.S.C. § 285 and award AutoConnect its attorneys' fees, expenses, and costs incurred in this action; and

H.    Award AutoConnect such other and further relief at law or in equity as the Court

deems just and proper.

Dated: December 6, 2024                    Respectfully submitted,

Of Counsel:                                FARNAN LLP

William R. Woodford                        /s/ Michael J. Farnan
Todd S. Werner                             Brian E. Farnan (Bar No. 4089)
Jason M. Zucchi                            Michael J. Farnan (Bar No. 5165)
**AVANTECH LAW, LLP**                      919 N. Market St., 12th Floor
80 South 8th Street, Suite 900             Wilmington, DE 19801
Minneapolis, MN 55402                      Tel: (302) 777-0300
Phone: (612) 895-2721                      bfarnan@farnanlaw.com
woodford@avantechlaw.com                   mfarnan@farnanlaw.com
werner@avantechlaw.com
zucchi@avantechlaw.com

*Attorneys for Plaintiff AutoConnect Holdings LLC*