# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| AUTOCONNECT HOLDINGS LLC,<br><br>  Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION, et al.<br><br>  Defendants.<br><br>GENERAL MOTORS LLC,<br><br>  Defendant/Counterclaim Plaintiff. | CASE NO.: 2:24-cv-00802-JRG-SRP<br>(Lead Case)<br><br>▮▮▮▮▮▮▮▮▮▮▮▮<br><br><br>CASE NO.: 2:24-cv-00877-JRG-RSP<br>(Member Case) |

**DEFENDANTS' MOTION TO DISMISS**

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Introduction .................................................................................................................1 | |
| II. | Factual Background ....................................................................................................2 | |
| III. | Legal Standard ............................................................................................................6 | |
| | A. | A Plaintiff Must Demonstrate Constitutional and Prudential Standing ...................6 |
| | B. | Patent Ownership ......................................................................................................8 |
| IV. | Argument ....................................................................................................................8 | |
| | A. | AutoConnect Lacks Constitutional Standing ............................................................8 |
| | B. | AutoConnect's Lack of Prudential Standing Compels Dismissal or Joinder of Flex as a Necessary Party ..................................................................................11 |
| V. | Conclusion ................................................................................................................13 | |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
  434 F.3d 1336 (Fed. Cir. 2006)......................................................................................7

*Evident Corp. v. Church & Dwight Co.*,
  399 F.3d 1310 (Fed. Cir. 2005)......................................................................................6

*Hein v. Freedom Religion Found., Inc.*,
  551 U.S. 587 (2007).......................................................................................................7

*Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
  248 F.3d 1333 (Fed. Cir. 2001)..................................................................................7, 11

*Lewis v. Cont'l Bank Corp.*,
  494 U.S. 472 (1990)....................................................................................................7, 8

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
  925 F.3d 1225 (Fed. Cir. 2019)..................................................................................7, 11

*Media Techs. Licensing, LLC. v. Upper Deck Co.*,
  334 F.3d 1366 (Fed. Cir. 2003)......................................................................................6

*Morrow v. Microsoft Corp.*,
  499 F.3d 1332 (Fed. Cir. 2007)..............................................................................7, 8, 11

*Propat Int'l Corp. v. Rpost, Inc.*,
  473 F.3d 1187 (Fed. Cir. 2007)..................................................................................7, 11

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
  402 F.3d 1198 (Fed. Cir. 2005)......................................................................................7

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
  427 F.3d 971 (Fed. Cir. 2005)...................................................................................11, 12

*Sky Techs. LLC v. SAP AG*,
  576 F.3d 1374 (Fed. Cir. 2009)....................................................................................7, 8

**Statutes**

35 U.S.C. § 281................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)....................................................................................................2

Fed. R. Civ. P. 12(c) ............................................................................................................................2

Fed. R. Civ. P. 12(h)(3)........................................................................................................................2

https://www.prnewswire.com/news-releases/flextronics-officially-changes-name-
to-flex-300118268.html ..........................................................................................................1

I.      INTRODUCTION

Defendants Toyota Motor Corp., Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A, Inc. (collectively "Toyota") and General Motors LLC ("GM") move to dismiss this case pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) and 12(h)(3) or alternatively Rule 12(c) for lack of subject matter jurisdiction. Because Plaintiff AutoConnect Holdings LLC ("AutoConnect") does not own the patents in suit, it lacks standing to maintain this suit, thus depriving this Court of subject matter jurisdiction.

AutoConnect filed its complaints against Toyota and GM in October 2024, alleging infringement of a combined 15 patents ("Asserted Patents"). All Asserted Patents originated with Flextronics AP, LLC,[1] a large automotive electronics supplier, and all list Christopher Ricci, Flex's former in-house IP counsel, as a named inventor. In 2015, Flex, at Ricci's direction, assigned the Asserted Patents to AutoConnect, which Ricci now co-owns. Dkt. 1 at ¶3. As compensation, AutoConnect executed a collateralized promissory note (the "Promissory Note"), wherein it promised to pay $500,000 to Flex within a specified period, with the Asserted Patents and other IP assets as collateral. Under this agreement, Flex retained the right to demand payment on the Promissory Note upon written notice, and if AutoConnect refused to make payment within 10 days of that notice, Flex was entitled to take ownership of the collateral, including the Asserted Patents. This agreement was subsequently amended, again at Ricci's direction, to require Flex to reimburse AutoConnect's patent prosecution fees if AutoConnect failed to pay and Flex opted to foreclose on the collateral.

---

[1] In 2015, Flextronics renamed itself to Flex. *See* https://www.prnewswire.com/news-releases/flextronics-officially-changes-name-to-flex-300118268.html. This motion refers to this entity as "Flex" unless directly quoting material using the earlier name.

1

Despite the Promissory Note, AutoConnect never paid Flex for the patents it acquired from Flex, including the Asserted Patents. ▌

Although AutoConnect refuses to execute the assignment paperwork that would officially recognize the transfer of title of the Asserted Patents to Flex, the legal effect of the Promissory Note and AutoConnect's default is that AutoConnect is not the owner of the Asserted Patents. By law, Flex now owns those patents despite AutoConnect's improper refusal to formally assign them. AutoConnect therefore lacks constitutional standing to maintain this lawsuit. This lawsuit should therefore be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), 12(c), 12(h)(3). Or, at the very least, Flex is a necessary party that must be joined as a plaintiff under Rule 19.

## II.     FACTUAL BACKGROUND

### The Asserted Patents

Twelve of the fifteen Asserted Patents were originally filed by Flex, an electronics manufacturer and supplier of automotive components. The remaining three are continuations of those patents. All Asserted Patents identify Christopher P. Ricci as an inventor. At the time of the original twelve patents' applications, Mr. Ricci was Flex's deputy counsel for intellectual property, with responsibility for patent applications and assignments. In 2015, Mr. Ricci left Flex and later joined AutoConnect. He is currently AutoConnect's co-owner.

### The 2015 Assignment from Flex to AutoConnect

In February 2015, while still serving as Flex's deputy counsel for intellectual property, Mr. Ricci advised Gregg Hershenson, another of AutoConnect's owners, to obtain certain Flex patent assets. Ex. A (FLEX-3PSUBP-00000039[2]). AutoConnect was then created for the purpose of acquiring Ricci's patents. Next, Ricci introduced Hershenson to Rob Cronan, another Flex in-house attorney and Ricci's subordinate, to "work[] with [Hershenson] on the paperwork to sell the connected car assets to AutoConnect." Ex. B (FLEX-3PSUBP-00000074).

On May 20, 2015, at Ricci's direction, Flex agreed to transfer many of Ricci's patents to AutoConnect. In so doing, Flex and AutoConnect executed associated agreements, including an Assignment (Ex. C, AC00152675), Asset Purchase Agreement (Ex. D, AC00152705), Bill of Sale (Ex. E, AC00152664), Letter Agreement (Ex. F, AC00152667), and a Promissory Note (Ex. G, AC00152695).

### The Terms of the Promissory Note

Under the Promissory Note, AutoConnect agreed to pay $500,000 plus interest to Flex by the maturity date of October 20, 2016. Ex G, AC00152695, at 1. The Promissory Note identifies failure to pay after receiving written notice as one of several "Events of Default":

> (i) when due any principal payment on the due date hereunder or (ii) any interest payment or other payment required under the terms of this Note or any other Transaction Document on the date due and such payment shall not have been made within ten (10) days of [AutoConnect's] receipt of written notice to [AutoConnect] of such failure to pay . . . .

Ex G (Promissory Note) at 2.

---

[2] Exhibits with a FLEX-3PSUBP Bates number were produced by Flex in response to a third-party subpoena issued in this case. Exhibits with an AC Bates number were produced by AutoConnect.

3

The Promissory Note also identifies the transferred patents as collateral and grants Flex a "first priority security interest and continuing lien on all of [AutoConnect's] right, title, and interest in, to and under the Collateral." *Id.* at 5. The grant of the security interest states that "In case of an Event of Default, [Flex] shall have the right to all of the Collateral." *Id.* at 5.

The Promissory Note also entitles Flex to demand immediate satisfaction of outstanding obligations on "the occurrence of any Event of Default . . . **and at any time thereafter** during the continuance of such default." *Id.* at 2-3 (emphasis added). It specifies "transfer of the Collateral to [Flex]" as the remedy for default and requires AutoConnect to "promptly execute any and all instruments of transfer necessary or desirable in connection with such transfer of the Collateral to [Flex]." *Id.* at 3.

The Promissory Note contains several provisions that remain in effect following the maturity date, including an option for Flex to optionally convert unpaid principal into equity "following the maturity date," *Id.* at 3. Flex's rights under paragraph 7 of the Promissory Note, including restrictions on selling the patent portfolio, also extend after the maturity date. *Id.* at 7 (binding AutoConnect "until the earlier of (i) the conversion of this Note in accordance with the provisions hereof or the repayment of this Note in full, or (ii) the transfer of the Collateral to Holder pursuant to Section 1(c)").

AutoConnect and Flex further agreed that California law would apply to the Promissory Note, and they agreed to ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ in the event of "any dispute, claim or controversy" arising from the agreement, except for claims seeking "injunctive or equitable relief." Ex. G (Promissory Note) at 8.

**Extensions and Addenda to the Promissory Note**

AutoConnect and Flex executed multiple addenda to the Promissory Note from 2015 through 2017. The First Addendum, negotiated prior to Mr. Ricci's departure from Flex and

4

executed shortly after, required that, in the event of default for which Flex sought to execute its security interest in the collateral, Flex would reimburse AutoConnect "for the fair and reasonable prosecution of patents and patent applications" that were assigned to AutoConnect, including continuations. Ex. H, AC00152694 (First Addendum). After this, AutoConnect sought and received extensions on the Promissory Note's maturity date, eventually extending it to September 30, 2017. Ex. I, AC00163171 (Fourth Addendum).

**AutoConnect Defaults and Flex Enforces Its Security Interest**

AutoConnect failed to pay off the Promissory Note by the final September 30, 2017 maturity date and continues to this day to remain delinquent on the Note. From that time until December 2023, AutoConnect did not pursue any infringement allegations against GM or Toyota and did not pursue these litigations until October 2024.

As Flex has a substantial business relationship with GM and Ford, whom AutoConnect sued separately, it sought to regain ownership of its patents. Thus, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[3]. In that written notice, Flex also ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. K (▇▇▇▇▇▇▇▇▇▇▇▇).

---

[3] Exhibit J is dated ▇▇▇▇▇▇▇▇. It was originally sent on that date, but due a typo in the email address, was not delivered. The letter was resent on ▇▇▇▇▇▇▇▇.

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████

████████████████████████████

████████████████████████ Ex. L ████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████ Ex. M ████████

███████████████████████████████████

███████████████████████████████████

████ Ex. S. █████████████████████████████

███████████████████████████████████

████████████ *Id.* ███████████████████

### III. LEGAL STANDARD

#### A. A Plaintiff Must Demonstrate Constitutional and Prudential Standing

"The doctrine of standing limits federal judicial power and has both constitutional and prudential components." *Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310, 1313 (Fed. Cir. 2005) (quoting *Media Techs. Licensing, LLC. v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed. Cir. 2003)).

A plaintiff must establish constitutional standing in a patent infringement suit by alleging "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be

6

redressed by the requested relief." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007) (quoting *Hein v. Freedom Religion Found., Inc.*, 551 U.S. 587, 588 (2007)). Constitutional standing exists only "[w]hen a party holds all rights or all substantial rights" to a patent or where a party has "exclusionary rights and interests created by the patent statutes." *Morrow*, 499 F.3d at 1340; *see* 35 U.S.C. § 281; *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007) ("[A] suit for infringement of patent rights [must] ordinarily be brought by a party holding legal title to the patent.").

Where a plaintiff has fewer than all substantial rights in a patent, the patent owners must generally be joined to satisfy prudential standing considerations. *Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001). Prudential standing aims to prevent "multiple lawsuits on the same patent against the same accused infringer." *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1343 (Fed. Cir. 2006); *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019) ("If a party cannot bring suit in its own name, it may still bring suit *along with the patentee* so long as it possesses 'exclusionary rights.'" (quoting *Morrow*, 499 F.3d at 1340) (emphasis added)). To determine whether a plaintiff obtained all substantial rights to a patent—and, therefore, whether the original patentee must be joined to maintain standing—courts consider "whether the transferor retained reversionary rights in or ongoing control over the patents" *Lone Star*, 925 F.3d at 1229.

The plaintiff must establish standing not only at the inception of the lawsuit but throughout all stages of litigation. *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005). If a plaintiff no longer has a "personal stake" in the outcome of the lawsuit, the case-or-controversy requirement is no longer met, and the court lacks jurisdiction over the dispute. *Lewis v. Cont'l Bank Corp.*, 494 U.S.

7

472, 477–78 (1990). A lack of constitutional standing cannot be cured by later joining a party with substantial rights in the patent. *Morrow*, 499 F.3d at 1340.

### B. Patent Ownership

Federal law governs the validity and terms of a patent assignment, but "state law controls any transfer of patent ownership by operation of law not deemed an assignment." *Sky Techs.*, 576 F.3d at, 1379. Enforcement of a security interest in patent rights as collateral pursuant to state law may transfer patent ownership, even without a written assignment. *Id.*, 1380.

### IV. ARGUMENT

#### A. AutoConnect Lacks Constitutional Standing

This case should be dismissed because AutoConnect does not own the Asserted Patents and, thus, lacks the required "personal stake" in this case's outcome. *See Lewis*, 494 U.S. at 478. AutoConnect does not own the Asserted Patents because it defaulted on the Promissory Note and Flex regained full ownership of the patents. The Promissory Note stated clearly: "[i]n case of an Event of Default, [Flex] shall have the right to all of the Collateral." Ex. G (Promissory Note) at 5.

███████████████████████████████████████████████████████████████ Ex. J (███████████████). AutoConnect has failed to execute assignments formalizing the transfer of its rights back to Flex. But, by law, that formality is irrelevant. The Federal Circuit has held that rights in patents as collateral transfer according to the underlying contract as interpreted under state law, regardless of whether a written assignment is executed or recorded with the USPTO. *Sky Techs.*, 576 F.3d at 1380-81 (holding that foreclosure on patent collateral under state law transferred patent ownership to the secured party without a writing and that the federal requirement of an assignment did not preempt state law).

8

AutoConnect does not dispute that it did not pay Flex under the Promissory Note. It does not dispute that Flex declared an event of default under the Promissory Note based on Flex's failure to pay. It does not dispute that Flex's remedy in the event of default is the "transfer of the Collateral to [Flex]" Ex. N (AutoConnect's Interrogatory Responses to GM), 5-6. These uncontested facts are sufficient to warrant dismissal of AutoConnect's complaint under Rule 12(b)(1) and 12(h)(3), or alternatively 12(c). AutoConnect argues four points in its defense: (1) that Flex did not retain ownership or rights in the Asserted Patents, (2) that Flex waived its security interest, (3) that Flex's claim is time barred, and (4) that security interests have no effect on standing. Ex. O (AutoConnect's June 24, 2025, Letter to Defendants). But AutoConnect is wrong on all four points.

First, Flex retained a reversionary right in the Asserted Patents, which has now been exercised. Ex. G, Ex. J. These patents were collateral for the Promissory Note, which means Flex maintained the right to foreclose on that collateral in the event of a default. When AutoConnect defaulted, Flex exercised those rights and now owns the patents.

Second, Flex did not waive its security interest. AutoConnect has insinuated that Flex refused to pay the prosecution costs but provides no support for this allegation. Contradicting this assertion, Flex has ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* Ex. L, Ex. S. AutoConnect's bald assertion of waiver is not sufficient to defeat this motion.

Third, the claim is not time barred. Flex and AutoConnect agreed that Flex could demand satisfaction of AutoConnect's obligations "upon any Event of Default . . . **and at any time thereafter** during the continuance of such default." Ex. G (Promissory Note) at 2-3 (emphasis added). An event of default did not arise until Flex ████████████████████████. At that time,

9

AutoConnect could have either paid the outstanding amounts due under the Promissory Note or returned the patents. Its refusal to do either is when Flex's claim arose and, thus, any statute of limitations arguments fails.

Fourth, AutoConnect's argument based on Flex's security interest is a strawman. This is not a situation where a bank has a passive security interest in a company's intellectual property. Here, Flex exercised its security interest and now owns the patents, leaving AutoConnect with no standing to sue. AutoConnect disputes whether the patents automatically transfer upon an event of default, claiming that Flex's security interest is not self-executing upon an event of default. Ex. N (AutoConnect's Interrogatory Responses to GM) at 5. The plain language of the Promissory Note, however, contradicts AutoConnect's position, stating, "In case of an Event of Default, [Flex] *shall have* the right to all of the Collateral." Ex. G (Promissory Note) at 5 (emphasis added).[4] The understanding preserved in a second promissory note executed between Ricci and AutoConnect to fund the expansion of its portfolio further contradicts AutoConnect's position. Ex. P, AC00152739. In that note, the parties stated: "It is understood that if the Patents are not Sold by [the then-operative Maturity Date], then ownership of the Patents shall revert back to the original owner, Flextronics." *Id.* at 1.

Even if the patents did not automatically transfer upon AutoConnect's failure to cure the event of default, Flex has now exercised its security interest. Ex. J (███████████). Flex thus has "all rights" in AutoConnect's patent portfolio, including the Asserted Patents. Ex. G (Promissory Note) at 5. AutoConnect cannot be injured by the infringement of patents to which it has surrendered "all rights." *Morrow*, 499 F.3d at 1340. AutoConnect cannot cure this standing

---

[4] Paragraph 3 of the Promissory Note requires Flex's written notice to demand immediate payment upon default of AutoConnect's outstanding debt obligations. It also obligates AutoConnect to cooperate in the transfer of collateral. But nowhere does the Promissory Note require Flex to affirmatively exercise its security interest for the collateral to transfer upon default.

10

deficiency by joining Flex because doing so "cannot sure constitutional standing deficiencies." *Id.* at 1344. AutoConnect thus has no ability to bring this patent infringement suit, and the Court should dismiss it with prejudice.

      **B.    AutoConnect's Lack of Prudential Standing Compels Dismissal or Joinder of Flex as a Necessary Party**

Even if AutoConnect can demonstrate that it has the required constitutional standing, it would still lack prudential standing because Flex never transferred all substantial rights to the asserted patents to AutoConnect. Federal Circuit precedent demands that transferring all substantial rights "depends on the substance of what was granted rather than formalities or magic words." *Lone Star*, 925 F.3d at 1229; *see Intell. Prop. Dev.*, 248 F.3d at 1342 ("To determine whether a patent transfer agreement conveys all substantial rights under a patent to a transferee or fewer than all of those rights, a court must assess the substance of the rights transferred and the intention of the parties involved.").

A transferor's retention of the ability for a transferee to sell transferred patents, under controlling Federal Circuit precedent, indicates that the transferee did not receive all substantial rights. *Lone Star*, 925 F.3d at 1233 (finding an agreement that "restrict[ed] [transferee's] ability to transfer the asserted patents" was "fundamentally inconsistent with a transfer of all substantial rights"); *Intell. Prop. Dev.*, 248 F.3d at 1345 ("[L]imits on the assignment of rights are a factor weighing in favor of finding a transfer of fewer than all substantial rights[.]"); *Propat*, 473 F.3d at 1191 ("The right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant [the transferee] all substantial rights under the patent."); *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 979 (Fed. Cir. 2005) (finding that the transferee did not have all substantial rights, because 'the restriction on [transferee's] right to assign' was a 'fatal reservation of rights by [transferor]'").

11

Here, Flex restricted AutoConnect's right to "sell or otherwise dispose of any of the Collateral, except in the ordinary course of business" "without the prior written consent of [Flex]," under Section 7 of the Promissory Note. Ex. G (Promissory Note) at 7. And the parties understood that Section 7 prevented AutoConnect from selling the patents without Flex's permission. For example, AutoConnect suggested adding language to Section 7 permitting it to engage in "the bulk sale of all or substantially all of the assets" without Flex's "prior written consent." Ex. Q (AC00218526; Draft Promissory Note) at 7. But Flex rejected this edit, saying, "[W]e can't have you selling the assets (which secure our loan) without our consent." *Id.* AutoConnect, therefore, never received all substantial rights in the patents from Flex because AutoConnect could not "sell or otherwise dispose of" the patents without Flex's "prior written consent."

In addition to not having the right to sell the patents, other aspects of the Promissory Note demonstrate that AutoConnect never obtained all substantial rights to the patents. For example, the Promissory Note forbids AutoConnect from "grant[ing] a security interest or lien in" the patents or "[e]nter[ing] into any agreement or understanding with respect to" the patents without Flex's "prior written consent." *Id.*

Thus, the substance of the grant shows that Flex retained substantial rights in the Asserted Patents, including the right to control the sale of the patents, and AutoConnect did not receive all substantial rights. AutoConnect, therefore, lacks prudential standing, and this case should be dismissed absent Flex's joinder, which AutoConnect has refused to do. (*See* Ex. R, June 18, 2025 Letter). Further, Flex has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Exs. T and U, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.)

12

## V. CONCLUSION

Because AutoConnect does not own the patents it asserts, AutoConnect lacks constitutional standing to maintain this case, and dismissal is therefore appropriate. Moreover, even if AutoConnect could show it has constitutional standing (which it cannot), AutoConnect lacks prudential standing to maintain this case without joining Flex because Flex retained substantial rights in the Asserted Patents, including the right to control the sale of the patents. Accordingly, for this additional, independent reason, this case should be dismissed absent Flex's joinder.

*/s/ James R. Barney*
James R. Barney (LEAD) (DC Bar No. 473732)
Jonathan J. Fagan (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,**
 **GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Tel. (202) 408-4000

Aidan C. Skoyles (*pro hac vice*)
Robert J. Evans (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,**
 **GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190
Tel (571) 203-2700

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

*Counsel for Defendants Toyota Motor Corp., Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc.*

*/s/ Benjamin J. Bradford*
Peter J. Brennan (*pro hac vice*)
Reginald J. Hill (*pro hac vice*)
Benjamin J. Bradford (*pro hac vice*)
Nicole Keenan (*pro hac vice*)
Mitchell Denti (*pro hac vice*)
**JENNER & BLOCK LLP**
353 North Clark St.
Chicago, IL 60654
Telephone: (312) 840-7224
Facsimile: (312) 840-7324
pbrennan@jenner.com
bbradford@jenner.com
rhill@jenner.com
nkeenan@jenner.com
mdenti@jenner.com

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

*Counsel for Defendant General Motors LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 8th day of October 2025, with a copy of this document via electronic mail per Local Rule CV-5(a)(3).

/s/ Melissa R. Smith
Melissa R. Smith

1