# EXHIBIT O

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/015,463 | 08/21/2025 | 9140560 | 04305.9049-00000 | 6219 |

| 192827 | 7590 | 09/29/2025 |
|---|---|---|

Avantech Law, LLP
80 S 8th St, Suite 900
Minneapolis, MN 55402

| EXAMINER |
|---|
| CARLSON, JEFFREY D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/29/2025 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER
901 NEW YORK AVENUE, NW
WASHINGTON DC 20001-4413

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/015,463* .

PATENT UNDER REEXAMINATION *9140560* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

/JDC/

PTOL-465 (Rev.07-04)

| *Order Granting Request For Ex Parte Reexamination* | Control No.<br>90/015,463 | Patent Under Reexamination<br>9140560 |
|---|---|---|
| | Examiner<br>Jeffrey D Carlson | Art Unit<br>3992 | AIA (FITF) Status<br>No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed 08/21/2025 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:   a)☐   PTO-892,   b)☒   PTO/SB/08,   c)☐   Other: ____

1. ☒   The request for *ex parte* reexamination is GRANTED.

    RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

/JEFFREY D CARLSON/
Primary Examiner, Art Unit 3992

cc:Requester ( if third party requester )

U.S. Patent and Trademark Office
PTOL-471G(Rev. 01-13)                    Office Action in *Ex Parte* Reexamination                    Part of Paper No. 20250909

## **DECISION ON REQUEST FOR *EX PARTE* REEXAMINATION**

The present application is being examined under the pre-AIA first to invent provisions.

Third-party requester Toyota Motor Corp. submitted a request for *ex parte* reexamination with a filing date of 8/21/2025, requesting reexamination of claims 11–13 and 15-20 of US Patent 9,140,560 ("the patent"). At least one substantial new question of patentability affecting claims 11–13 and 15–20 of the patent in effect at the time is raised by the request. Accordingly, claims 11–13 and 15–20 will be reexamined.

### *Publications Asserted as Raising Substantial New Question(s) of Patentability*

The asserted substantial new question(s) of patentability (SNQs) are based on the following publications, each of which qualify as prior art against the patent.

- JP 2010-199717 ("Kitahara")
- US 6,937,732 ("Ohmura")
- US 2013/0059538 ("King")
- US 2011/0296037 ("Westra")

### *Analysis of Substantial New Questions of Patentability (SNQs)*

SUMMARY OF REQUESTED US PATENT 9,140,560

The patent is titled "In Cloud Connection for Car Multimedia" and is summarized as follows:

"Methods and systems for a complete vehicle ecosystem are provided. Specifically, systems that when taken alone, or together, provide an individual or group of individuals with an intuitive and comfortable vehicular environment. The present disclosure includes a system to generate a vehicle communication system.

The vehicle communication system can determine which devices are within the vehicle. From this determination, the vehicle communication system may create a universal bus and hotspot where applications, data, multimedia information, and resources can be shared both with the vehicle and with the other devices in the vehicle." (at Abstract).

    Patented claims 11 and 16 are representative and are reproduced below:

11. A vehicle communication system, comprising:

two or more BLUETOOTH transceivers;

a communication system comprising: two or more communication modules;

a signal processor; wherein the signal processor is operable to:

    determine one or more of available resources, available devices, and available sources;

    determine cloud services connected to the available resources, available devices, and available sources;

    receive input on a user interface of the vehicle, wherein the input requests a cloud service;

    route the input to a device;

    receive, from the device, data from the cloud service; and

    provide the data on a display of the vehicle.

16. A non-transitory computer readable medium having stored thereon computer-executable instructions, the computer executable instructions causing a processor to execute a method for providing a universal bus, the computer-executable instructions comprising:

instructions to determine one or more of available resources, available devices, and available sources;

instructions to determine cloud services connected to the available resources, available devices, and available sources;

Application/Control Number: 90/015,463   Page 4
Art Unit: 3992

instructions to receive input on a user interface of the vehicle, wherein the input requests a cloud service;

instructions to route the input to a device;

instructions to receive, from the device, data from the cloud service; and

instructions to provide the data on a display of the vehicle.

## ORIGINAL PROSECUTION HISTORY

Application 13/679,878 filed 11/16/2012 presented claims 1–20[1].

An office action mailed 9/26/2014:

- Rejected claims 1–20 as a provisional double patenting rejection vs. claims 1–20 of application 13/679,887.
- Rejected claims 1–20 under 35 U.S.C. 101 as representing ineligible subject matter (includes transitory storage medium).

Responses filed 12/19/2014 and 1/21/2015:

- Amended claims 1–3, 11 and 16–20. Claims 1–20 were pending.
- Submitted a terminal disclaimer for US patent application 13/679,887, which was approved.

A Notice of Allowance mailed 2/2/2015:

- Allowed claims 1–20.

A post-allowance response filed 5/4/2015:

- Requested amendment of the specification (approved 8/28/2015).

---

[1] Claims 1, 11 and 16 were the independent claims.

Application/Control Number: 90/015,463 Page 5
Art Unit: 3992

A Supplemental Notice of Allowance mailed 8/18/2015:

- Allowed claims 1–20.

US 9,140,560 issued 9/22/2015 with claims 1–20.

## POST-GRANT HISTORY AT THE PTAB

There were no other reexaminations or AIA trials at the PTAB for this patent.

## PROPOSED SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY

Requester proposes the following SNQs:

| SNQ | Claims | Basis |
|---|---|---|
| SNQ 1 | 11–13 and 15–17 | § 103 – Kitahara and Ohmura |
| SNQ 2 | 11–13, 15 and 17 | § 103 – Kitahara, Ohmura and King |
| SNQ 3 | 11–13 and 15–20 | § 103 – Kitahara, Ohmura and Westra |
| SNQ 4 | 11–13, 15 and 17–20 | § 103 – Kitahara, Ohmura, King and Westra |

None of these asserted references were cited or discussed on the record in the original prosecution. The question(s) of patentability in this reexamination request based upon these combinations were not: (A) decided in a final holding of invalidity by a federal court in a decision on the merits involving the claim, after all appeals; (B) decided in an earlier concluded examination or review of the patent by the Office; or (C) raised to or by the Office in a pending reexamination or supplemental examination of the patent.

Application/Control Number: 90/015,463 Page 6
Art Unit: 3992

SNQ 1 – Kitahara and Ohmura

Examiner's citations to paragraphs and figures of the Kitahara publication represent citations to the paragraph numbers and figure numbers of the certified English translation of JP 2010-199717, provided as part of the request. See Exhibit PA-5.

Kitahara is titled "Onboard Device and Communication System" (Kitahara at Title) and teaches:

"[Problem] To effectively utilize the external wireless communication functionality of multiple mobile terminals introduced into a vehicle cabin so as to efficiently and accurately receive large volumes of data from a server device. [Solution Means] An onboard device 100 commissions GW200 to acquire data such as images and voice stored in a home server 400. GW200 acquires data from home server 400 via a mobile phone terminal device 300a and/or mobile phone terminal device 300b. The home server 400 divides and transmits data to each data request relaying-mobile phone terminal device 300. Each mobile phone terminal device 300 transmits data received from home server 400 to GW200. GW200 confirms whether all data divided and received for each mobile phone terminal device 300 is normally received, and combines the divided data to restore same. The onboard device 100 outputs images or voice from an image display device or speaker, etc. based on the restored data" (Kitahara at Abstract).



[Kitahara FIG. 1]

"the ability to effectively utilize the external communication functionality of multiple mobile terminal devices introduced into a vehicle cabin so that large volumes of data from a server device can be efficiently and rapidly received and output to an output device connected to an onboard device" (Kitahara ¶ 0010).

"The gateway device shown in the embodiment example below (abbreviated to "GW" below) is explained as a separate device from the on board device. However it is not limited thereto, and may also be included in an on board device" (Kitahara ¶ 0012).

"The external server device shown in the embodiment example below is explained using the example of a home server...However it is not limited thereto, and may also be a content server device with which a content distributor stores content and distributes content either free or for a charge" (Kitahara ¶ 0013).

"a mobile phone terminal device 300 is used as a mobile terminal device, but a portable terminal device such as a PDA (Personal Digital Assistant), portable computer, or the like may also be used" (Kitahara ¶ 0014).

"Bluetooth communication as an example of a wireless communication system, but other communication systems such as infrared, Wi-Fi (registered trademark), Wi-MAX (registered trademark), and the like are also acceptable" (Kitahara ¶ 0015).

"On board device 100 commissions GW200 to acquire image and audio data stored in home server 400. Over Bluetooth communication, GW200 commissions mobile phone terminal device 300a and/or mobile phone terminal device 300b, if not in use by a mobile phone owner, or when capable of communicating packets of data, to acquire data from home server 400. GW200 accesses home server 400 through mobile phone terminal device 300a carrier A and/or mobile phone terminal device 300b carrier B to acquire the requested data" (Kitahara ¶ 0017).

"Home server 400 divides and transmits data for each mobile phone terminal device 300 relaying data requests. Data divided and received for each mobile phone terminal device 300 is transmitted by Bluetooth communication from mobile phone terminal device 300 to GW200. GW200 checks that all of the data divided and received for each mobile phone terminal device 300 has been normally received and combines the divided data to restore the data. Based on the restored data, on board device 100 outputs images and audio on an image display device, speaker, or the like" (Kitahara ¶ 0018).

Kitahara thus teaches Bluetooth™ transceivers, communication modules and a signal processor. The system is capable of determining available resources, devices or sources and associated cloud services. A user in the vehicle may input a request for cloud data/service whereby data downloaded from a cloud server via a mobile phone is routed to a device in the vehicle such that the data is displayed on a display of the vehicle.

Ohmura teaches:

"An audio apparatus for a vehicle made up of a car-mounted audio apparatus 100 and portable audio apparatuses 200a and 200b transmits/receives contents data such as music via radio communication. As a communication system for this in-car radio communication, a short-distance data communication system is used, which allows the apparatuses to recognize and authenticate one another and perform data communication with one another in the vehicle. Received music data is reproduced/output in real time" (Ohmura at Abstract).

"The Internet communication function is constructed by a telephone antenna 26 connected to the Internet over a radio telephone network, a cellular telephone 27 to transmit/receive Internet information, the display 24 that allows input operations by the passenger, car-mounted speakers 28 that output the information received on the Internet as voice information (hereinafter referred to as "speakers 28"), etc. and these apparatuses are also each connected to the concentrated control unit 20" (Ohmura 7:39–47).

"The audio function is constructed by an audio control unit 30 that controls the entire system of the relevant audio function…speakers 28 that output music as sound in the vehicle, a car-mounted radio antenna 34 placed in the center of the vehicle to carry out radio communication with a plurality of cellular audio apparatuses 200a and 200b in the vehicle and a radio transmitter/receiver 35 that transmits/receives music data to/from the portable audio apparatuses 200a and 200b, and these apparatuses are each connected to the concentrated control unit 20" (Ohmura ¶ 7:60–8:4).

"the display 24 is connected to the CPU 101 of the audio apparatus 100 and the

display 24 displays the control content of the audio apparatus 100 and music source music title data, etc. Furthermore, a car external music source reception circuit 104 is connected to the CPU 101 and the car external music source reception circuit 104 receives information from the Internet" (Ohmura 8:56–62).

"The Internet communication function of this embodiment is provided with functions such as receiving various kinds of information requested by the passengers by the audio apparatus 100 over the Internet" (Ohmura 7:53–57).

"FIG. 7 is an "AUDIO MENU" screen shown on a display in the first embodiment" (Ohmura 6:9–10).

"FIG. 10 is an "Internet MENU" screen shown on a display in the first embodiment" (Ohmura 6:16–17).

Ohmura thus teaches communication modules and a signal processor. The system is capable of determining/accessing available resources, devices or sources and associated cloud services. A user in the vehicle may input a request for cloud data/service whereby data downloaded from a cloud server via a mobile phone is routed to a device in the vehicle such that the data is displayed on a display of the vehicle.

Because these teachings are relevant to the allowed features of independent claims 11 and 16 of the patent, there is a substantial likelihood that a reasonable examiner would consider the teachings important in evaluating the patentability of claims 11–13 and 15–20.

<u>Kitahara and Ohmura together therefore raise a substantial new question of patentability with respect to claims 11–13 and 15–20.</u>

<u>SNQ 2 – Kitahara, Ohmura and King</u>

<u>King</u> teaches:

"Examples of the present invention include a head unit for a vehicle entertainment system, including a housing, a radio, a first wireless transceiver, and a second

Application/Control Number: 90/015,463 Page 10
Art Unit: 3992

wireless transceiver. The second wireless transceiver may be used to provide a dedicated communications link between the head unit and another electronic device, such as an auxiliary unit. The second wireless transceiver may have a serial port profile (SPP), and may be a Bluetooth transceiver" (King at Abstract)

"A vehicle head unit may communicate with mobile electronics belonging to a vehicle occupant, such as the driver or passenger" (King ¶ 0004).

"the second wireless transceiver may be used to provide Internet access, through establishment of a communications link with an Internet enabled device such as a cell phone within the vehicle, or an auxiliary unit. Data can be streamed through the Internet enabled device, such as a cell phone, and then through the dedicated wireless communications link with the head unit, which may be a Bluetooth link" (King ¶ 0011).

King thus teaches Bluetooth™ and the ability to stream Internet content via the phone to the head unit for rendering to the vehicle occupants.

The teachings of Kitahara and Ohmura are set forth above. Because the combined teachings are relevant to the allowed features of independent claims 11 and 16 of the patent, there is a substantial likelihood that a reasonable examiner would consider the teachings important in evaluating the patentability of claims 11–13 and 15–20.

Kitahara, Ohmura and King together therefore raise a substantial new question of patentability with respect to claims 11–13 and 15–20.

SNQ 3 – Kitahara, Ohmura and Westra

Westra teaches:

"In one or more embodiments, two or more devices may interface with a computing system over multiple communication channels. A connection may be established between a computing system and two or more devices communicating data using different communication protocols. The communication protocol of the two or more devices may be determined and a general transport protocol for communicating data with the two or more devices based on the respective

communication protocols may be imposed on the communication protocol of the two or more devices. Data may be communicated with the two or more devices based on the general transport protocol. An event may be performed at the vehicle computing system or the two or more devices based on the data" (Westra at Abstract).

"A request to connect with a vehicle computing system may be received from the two or more devices which communicate data using different communication protocols. The communication protocols may include, but are not limited to, Internet protocols, BLUETOOTH protocols, proprietary protocols, 802.11 protocols, and mass storage device protocols" (Westra ¶ 0008).

"vehicle-based computing system may contain a visual front end interface **4** located in the vehicle. The user may also be able to interact with the interface if it is provided, for example, with a touch sensitive screen" (Westra ¶ 0033).

Westra thus teaches connections and communications between mobile devices brought into a vehicle and a vehicle computing system which includes a user interface for interaction.

The teachings of Kitahara and Ohmura are set forth above. Because the combined teachings are relevant to the allowed features of independent claims 11 and 16 of the patent, there is a substantial likelihood that a reasonable examiner would consider the teachings important in evaluating the patentability of claims 11–13 and 15–20.

<u>Kitahara, Ohmura and Westra together therefore raise a substantial new question of patentability with respect to claims 11–13 and 15–20.</u>

<u>SNQ 4 – Kitahara, Ohmura, King and Westra</u>

The teachings of Kitahara, Ohmura, King and Westra are set forth above. Because the combined teachings are relevant to the allowed features of independent claims 11 and 16 of the patent, there is a substantial likelihood that a

Application/Control Number: 90/015,463   Page 12
Art Unit: 3992

reasonable examiner would consider the teachings important in evaluating the patentability of claims 11–13 and 15–20.

<u>Kitahara, Ohmura, King and Westra together therefore raise a substantial new question of patentability with respect to claims 11–13 and 15–20.</u>

### *35 USC 325(d)*

A review of the post grant history for US Patent 9,140,560 indicates that there have been no other Office post grant challenges involving the patent (Reexamination Proceedings or *Inter Partes* Review, Post Grant Review or Covered Business Method trials). Accordingly, a determination of whether to exercise discretion to reject the request pursuant to 35 USC 325(d) is not applicable.

### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Submissions*

In order to ensure full consideration of any amendments, affidavits or declarations or other documents as evidence of patentability, such documents must be submitted in response to the first Office action on the merits (which does not result in a close of prosecution). Submissions after the second Office action on the

merits, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33 after appeal, which will be strictly enforced.

### *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the patent requested for reexamination throughout the course of this reexamination proceeding. Likewise, if present, the third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

**All** correspondence relating to this ex parte reexamination proceeding should be directed:

| | |
|---|---|
| By Mail to: | Mail Stop *Ex Parte* Reexam<br>Central Reexamination Unit<br>Commissioner for Patents<br>United States Patent & Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 |
| By FAX to: | (571) 273-9900<br>Central Reexamination Unit |
| By hand: | Customer Service Window<br>Randolph Building<br>401 Dulany Street<br>Alexandria, VA 22314 |

Information regarding the status of reexamination proceedings may be

Application/Control Number: 90/015,463 Page 14
Art Unit: 3992

obtained from Patent Center. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Any inquiry concerning this communication should be directed to **the Central Reexamination Unit** at telephone number **517-272-7705.**


/JEFFREY D CARLSON/
Primary Examiner, Art Unit 3992


/M.F/
Supervisory Patent Examiner, Art Unit 3992