# EXHIBIT P

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/015,424 | 08/01/2025 | 9116786 | 04305.9048-00000 | 2080 |

192827          7590          09/16/2025

Avantech Law, LLP
80 S 8th St, Suite 900
Minneapolis, MN 55402

| EXAMINER |
|---|
| DESAI, RACHNA SINGH |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/16/2025 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Finnegan, Henderson, Farabow, Garrett & Dunner LLP

901 New York Avenue, NW
Washington, DC 20001-4413

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. _90/015,424_ .

PATENT UNDER REEXAMINATION _9116786_ .

ART UNIT _3992_ .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/015,424 | 9116786 |
| | Examiner | Art Unit | AIA (FITF) Status |
| | RACHNA S DESAI | 3992 | No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed 08/01/2025 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐   PTO-892,        b)☑   PTO/SB/08,        c)☐   Other: _____

1. ☑   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

cc:Requester ( if third party requester )

Application/Control Number: 90/015,424                                          Page 2
Art Unit: 3992

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.     The present application is being examined under the pre-AIA first to invent provisions.

### Decision on Request for Reexamination

2.     A substantial new question of patentability affecting claims 1-2, 4-9, 11, 15, 23, 24, and 26-28 of US Patent 9,116,786 (hereafter "the '786 patent") is raised by the request for ex parte reexamination.

### References Cited in the Request

3.     The request cites the following prior art references:

- Spillane et al., US 2003/0200016 A1, issued 10/23/2003 (filed 04/17/2003)
- Namburu et al., US 2010/0222939 A1, issued 09/02/2010 (filed 02/27/2009)
- Nagara et al., US 2009/0176469 A1, issued 07/09/2009 (filed 12/23/2008)
- Thompson et al., US 2013/0211623 A1, issued 08/15/2013 (PCT filed 05/25/2011)
- Thompson et al., WO 2011/147893 A1, issued 12/01/2011 (filed 05/25/2011)
- Schuyler, US 6,429,773 B1, issued 08/06/2002 (filed 10/31/2000)
- Small et al., US 2011/0082615 A1, issued 04/07/2011 (filed 02/19/2010, provisional 10/05/2009).
- Gormley, GB 2273580A, issued 06/22/1994 (filed 11/29/1993).
- Breed et al., US 2007/0109111 A1, issued 05/17/2007 (filed 11/22/2006).

Application/Control Number: 90/015,424                                                Page 3
Art Unit: 3992

## Issues Raised by Request

**Issue 1:**   The Requester alleges that Spillane in view of Namburu raises a substantial new question of patentability regarding claims 1, 5-8, 11, and 15 of the '786 Patent. Spillane was not cited or applied during the original prosecution.  Namburu was cited in the prior prosecution but not applied.

**Issue 2:**   The Requester alleges that Spillane in view of Namburu and Nagara raises a substantial new question of patentability regarding claim 2 of the '786 Patent.  Spillane and Nagara were not cited or applied during the original prosecution.  Namburu was cited in the prior prosecution but not applied.

**Issue 3:**   The Requester alleges that Spillane in view of Namburu and Thompson raises a substantial new question of patentability regarding claim 9 of the '786 Patent. Spillane and Thompson were not cited or applied during the original prosecution. Namburu was cited in the prior prosecution but not applied.

**Issue 4:**   The Requester alleges that Thompson in view of Spillane and Nagara raises a substantial new question of patentability regarding claims 23, 24, and 26-28 of the '786 Patent.  None or the references were cited or applied during the original prosecution.

Application/Control Number: 90/015,424                                     Page 4
Art Unit: 3992

**Issue 5:**   The Requester alleges that Spillane in view of Schuyler raises a substantial

new question of patentability regarding claims 1, 4-6, 8, 11, 23, and 26-28 of the '786

Patent.  None or the references were cited or applied during the original prosecution.


**Issue 6:**   The Requester alleges that Spillane in view of Schuyler and Nagara raises a

substantial new question of patentability regarding claims 2 and 24 of the '786 Patent.

None or the references were cited or applied during the original prosecution.


**Issue 7:**   The Requester alleges that Spillane in view of Schuyler and Small raises a

substantial new question of patentability regarding claims 7 and 15 of the '786 Patent.

None or the references were cited or applied during the original prosecution.


**Issue 8:**   The Requester alleges that Spillane in view of Schuyler and Thompson raises

a substantial new question of patentability regarding claim 9 of the '786 Patent.  None or

the references were cited or applied during the original prosecution.


**Background**


4.      Claims 1-2, 4-9, 11, 15, 23, 24, and 26-28 of US Patent 9,116,786 are being

requested in the instant request for reexamination in the '786 Patent that issued August

25, 2015 from application 13/828,513 filed on March 14, 2013.

        The '786 patent relates to a microprocessor executable remote control module

operable to receive, via a remote node, a command from a vehicle owner to configure

Application/Control Number: 90/015,424                                                    Page 5
Art Unit: 3992

and/or alter and/or determine a state of a selected vehicle component and, when the

vehicle owner is authenticated successfully by the remote control module, to configure

and/or alter and/or determine a state of the selected vehicle component.


## Prosecution History

### *Original Application 13/828,513*

5.       During prosecution of the original application 13/828,513, claims 1-21 were

initially rejected in a non-final office action on 05/06/2014 under 35 U.S.C. 103(a) over

Jung et al., US 2012/0116609 in view of Brinkmeyer et al., US 5,838,251.

        The claims were amended on 08/19/2014.  Independent claim 1 was amended to

recite in part, *a plurality of vehicle components comprising a power source,*

*wheels…and a satellite positioning system receiver…the requestor to determine*

*whether the requestor is privileged to issue the command, and, when the successfully*

*authenticated requestor is privileged to issue the command…wherein a first requestor,*

*when authenticated successfully, is entitled to a first set of privileges to configure and/or*

*alter and/or determine a state of a selected vehicle component and a second requestor,*

*when authenticated successfully, is entitled to a different second set of privileges to*

*configure and/or alter and/or determine a state of a selected vehicle component.*

Independent claim 8 was amended to recite, *law enforcement agency…wherein the*

*command is one or more of accelerate, decelerate…provide a current speed of the*

*vehicle and lock doors.*  Independent claim 15 was amended to recite *a plurality of*

*vehicle components comprising a power source, wheels…and a satellite positioning*

*receiver…the remote node comprising one or more of a home computer…and smart*

Application/Control Number: 90/015,424                                    Page 6
Art Unit: 3992

*phone…performing the operation of the selected vehicle component, wherein the operation is one or more of alter one or more of a setting, appearance…and displayed icon selection and location of the display panel, configure a programmable hard button, download media…and reset the selected vehicle component.* Applicant argued that the cited references did not teach the amended features recited above.

A final rejection was issued on 09/04/2014 in which claims 1-20 and 22-29 were rejected under 35 U.S.C. 101.

Applicant filed a Request for Continued Examination on 12/04/2014 with arguments against the rejections under 35 U.S.C. 101.

A non-final rejection was issued on 12/24/2014 in which claims 1-20 and 22-29 were rejected under 35 U.S.C. 101.

Applicant filed remarks on 03/19/2015 arguing the rejections under 35 U.S.C. 101.

A notice of allowance issued on 04/03/2015 allowing claims 1-20 and 22-29.

Applicant filed an amendment after allowance under 37 CFR 1.312 on 07/06/2015 correcting some ambiguity in the claims.

A supplemental notice of allowability was issued on 07/17/2015 allowing claims 1-20 and 22-29.

## Substantial New Question

6.      In view of the prosecution history, it is considered that the evaluation of a prior art reference or combination of references that teaches or suggests any of the following features would raise a substantial new question of patentability:

Application/Control Number: 90/015,424                                    Page 7
Art Unit: 3992

- *a plurality of vehicle components comprising a power source, wheels…and a satellite positioning system receiver…the requestor to determine whether the requestor is privileged to issue the command, and, when the successfully authenticated requestor is privileged to issue the command…wherein a first requestor, when authenticated successfully, is entitled to a first set of privileges to configure and/or alter and/or determine a state of a selected vehicle component and a second requestor, when authenticated successfully, is entitled to a different second set of privileges to configure and/or alter and/or determine a state of a selected vehicle component.*

- *law enforcement agency…wherein the command is one or more of accelerate, decelerate…provide a current speed of the vehicle and lock doors.*

- *a plurality of vehicle components comprising a power source, wheels…and a satellite positioning receiver…the remote node comprising one or more of a home computer…and smart phone…performing the operation of the selected vehicle component, wherein the operation is one or more of alter one or more of a setting, appearance…and displayed icon selection and location of the display panel, configure a programmable hard button, download media…and reset the selected vehicle component.*

## Analysis

### Issue 1

7.      Spillane was not cited or applied during the original prosecution.  Namburu was cited in the prior prosecution but not applied.

Application/Control Number: 90/015,424                                    Page 8
Art Unit: 3992

Spillane discloses, among other things, a vehicle control system comprising a plurality of subsystem controllers including an engine management system, transmission controller, steering controller, brakes controller and suspension controller. See abstract. Spillane discloses a plurality of vehicle components including wheels, a powertrain, engine, transmission, transmission controller, steering system, engine controller, braking system. See paragraphs [0071]-[0076] and figures 1-2.

Namburu discloses, among other things, a vehicle including a preference database stored on a remote console such as a hard drive of an in-dash console, an occupant accommodation setting including seating systems, and a GPS system. Namburu discloses a display in a vehicle may be coupled to an I/O interface. See paragraphs [0048], [0049], [0052],and [0055]-[0056]. Namburu further discloses a remote console for handling and processing data related to the remote operation of the vehicle and a memory for storing information related to the operation of a vehicle including vehicle settings and preferences. See paragraphs [0043]-[0047] and [0077]. Namburu discloses that the remote console verifies a user's identify by receiving and recognizing a user entered code or the user's biometrics. If a match exists between the ID code and a stored ID code, the remote server is verified. The remote console allows verification of a user's authority to operate systems in the vehicle. See paragraphs [0030] and [0059]. Namburu discloses a remote console provides secure, personalized access to a vehicle's systems via a remote interface, such as via a remote server. The remote console 110 may provide a user with the ability to remotely and securely manage operation(s) of various systems of the vehicle. Remote operations performed from the remote console 110 may include, but are not limited to, (1) secure tool access

Application/Control Number: 90/015,424                                           Page 9
Art Unit: 3992

and activation (e.g., via login prompt and password protection, potentially matching info

on the ID token 420), (2) remote starting of a vehicle, (3) secure vehicle door/trunk

lock/unlock, (4) vehicle diagnostic health check, (5) vehicle status report including a fuel

reading, an odometer reading, and other standard dashboard features, (6) navigation

system, climate control system, and multimedia system review including the ability to

set a variety of options for the various systems, (6) user profile creation for each user

providing personalized settings for the vehicle, (7) remotely updating vehicle software,

(8) enabling/disabling available vehicle utilities (e.g., child lock, disabling/enabling door

lock, granting limited access to users or vehicle spaces as in a "valet access key"

limiting access to trunk/ glove compartments, or other private personalized functions of

the vehicle), (9) system feedback from the vehicle, and (10) scheduled alarms regarding

maintenance and service.  See paragraph [0046].  Namburu discloses an authority or

administrative user can set a "setting threshold" for a vehicle preference such as

maximum vehicle temperature, seating positions, sound systems.  A "sub-user" such as

a child or passenger may be given the privilege to access certain vehicle settings within

a certain threshold value set by the authority/admin account.  See paragraph [0062] and

[0059].

Since these teachings are directly related to subject matter considered as the

basis for allowability of the patent claims, a reasonable examiner would consider

evaluation of Spillane in view of Namburu as important in determining the patentability

of the claims.  As such it is agreed that Spillane in view of Namburu raises a substantial

new question of patentability with respect to at least claims 1, 5-8, 11, and 15 of the

'786 Patent as relied upon in Issue 1.

**Issue 2**

8.        Issue 2 is drawn to dependent claim 2.  As it has already been established above in Issue 1 that Spillane in view of Namburu raises a substantial new question of patentability with respect to at least claims 1, 5-8, 11, and 15 of the '786 Patent as relied upon in Issue 1, it is further agreed that an evaluation of Spillane in view of Namburu and Nagara would also raise a substantial new question of patentability based on the base claim from which claim 2 depends.

        Additionally, Nagara discloses, among other things, a system and method for a single-action multi-source presets for a vehicle entertainment system and providing remote customization for vehicle entertainment systems.  See paragraph [0003].  A vehicle entertainment system can be remotely customized from a remote device.  The features of the vehicle entertainment system display including a display theme, font, color, shape, size, etc.  See paragraph [0015].  In figure 3 and paragraph [0035], Nagara discloses, *the graphical interface allows easy moving or rearrangement of preset or favorite buttons as well as media selection of presets. The user selects a preset, such as by holding the preset for a short time, and then drags and drops the preset to a different location that suits the user. Therefore, the user can arrange preset buttons 30 along with media selection buttons to the preference of the user that allow the user to select their desired audio content from the vehicle entertainment system with as little distraction as possible and as quickly as possible.*

        Since these teachings are directly related to subject matter considered as the basis for allowability of the patent claims, a reasonable examiner would consider evaluation of Spillane in view of Namburu and Nagara as important in determining the patentability of the claims.  As such it is agreed that Spillane in view of Namburu and

Application/Control Number: 90/015,424                                          Page 11
Art Unit: 3992

Nagara raises a substantial new question of patentability with respect to at least 2 of the

'786 Patent as relied upon in Issue 2.


**Issue 3**

9.      Issue 3 is drawn to dependent claim 9.  As it has already been established above

in Issue 1 that Spillane in view of Namburu raises a substantial new question of

patentability with respect to at least claims 1, 5-8, 11, and 15 of the '786 Patent as relied

upon in Issue 1, it is further agreed that an evaluation of Spillane in view of Namburu

and Thompson would also raise a substantial new question of patentability based on the

base claim from which claim 9 depends.

        Additionally, Thompson discloses, among other things, a method and apparatus

for interacting remotely with a vehicle comprising a data transfer means for wirelessly

communication messages between a mobile device and a vehicle data bus within a

vehicle.  See abstract.  Thompson discloses receiving a control signal wherein a DTU

22 and related software determine a correct CAN message for effecting the control

request.  See paragraphs [0025]-[0028], [0033]-[0038], [0046]-[0049].  See paragraph

[0047] disclosing w*hen the transceiver unit 30 receives a message transmitted over the*

*GSM network 13, the message is passed to the microprocessor 26 which then*

*accesses the look-up table in the NVRAM module 34 to determine the correct CAN*

*message for effecting the control request.*

        Since these teachings are directly related to subject matter considered as the

basis for allowability of the patent claims, a reasonable examiner would consider

evaluation of Spillane in view of Namburu and Thompson as important in determining

the patentability of the claims.  As such it is agreed that Spillane in view of Namburu

Application/Control Number: 90/015,424                                    Page 12
Art Unit: 3992

and Thompson raises a substantial new question of patentability with respect to at least

9 of the '786 Patent as relied upon in Issue 2.


**Issue 4**

10.    None of the references were cited or applied during the original prosecution.

Thompson discloses, among other things, a method and apparatus for interacting

remotely with a vehicle comprising a data transfer means for wirelessly communication

messages between a mobile device and a vehicle data bus within a vehicle.  See

abstract.  Thompson discloses the vehicle includes core systems such as an engine

and transmission, wheels, control of vehicle engine output, braking systems, power

controllers, GPS, vehicle performance parameters, and user customized settings such

as for seat position.  See paragraphs [0034], [0040], [0084], [0094]-[0095], [0159], and

[0167].  Thompson discloses a vehicle has a data transceiver unit or DTU 22 capable of

wirelessly receiving and transmitting data to and from a vehicle such as via a cellular

network using a personal computer, mobile device, smartphone, laptop, etc.  See

paragraphs [0025]-[0028] and  [0031]-[0038]. Thompson discloses to gain access to the

features of a system, a user must login and be authenticated  See figures 3b-3d and

paragraphs [0029] and [0193].  Once authenticated, a user can perform a variety of

operations such as checking the doors, tailgate, tire pressure, lamp status, etc.  See

paragraphs [0083]-[0087] and figures 6a-6d.  See also paragraphs [0156]-[0157] and

[0161], [0164] for other control operations such as vehicle lighting, retractable roof, and

window controls.

Application/Control Number: 90/015,424                                                    Page 13
Art Unit: 3992

Spillane discloses, among other things, a vehicle control system comprising a

plurality of subsystem controllers including an engine management system,

transmission controller, steering controller, brakes controller and suspension controller.

See abstract.  Spillane discloses a plurality of vehicle components including wheels, a

powertrain, engine, transmission, transmission controller, steering system, engine

controller, braking system.  See paragraphs [0071]-[0076], [0085]-[0086], and figures 1-

2.

Nagara discloses, among other things, a system and method for a single-action

multi-source presets for a vehicle entertainment system and providing remote

customization for vehicle entertainment systems.  See paragraph [0003].  A vehicle

entertainment system can be remotely customized from a remote device.  The features

of the vehicle entertainment system display including a display theme, font, color,

shape, size, etc.  See paragraph [0015].  In figure 3 and paragraph [0035], Nagara

discloses, *the graphical interface allows easy moving or rearrangement of preset or*

*favorite buttons as well as media selection of presets. The user selects a preset, such*

*as by holding the preset for a short time, and then drags and drops the preset to a*

*different location that suits the user. Therefore, the user can arrange preset buttons 30*

*along with media selection buttons to the preference of the user that allow the user to*

*select their desired audio content from the vehicle entertainment system with as little*

*distraction as possible and as quickly as possible.*

Since these teachings are directly related to subject matter considered as the

basis for allowability of the patent claims, a reasonable examiner would consider

evaluation of Thompson in view of Spillane and Nagara as important in determining the

patentability of the claims.  As such it is agreed that Thompson in view of Spillane and

Nagara raises a substantial new question of patentability with respect to at least claims

23-24 and 26-28 of the '786 Patent as relied upon in Issue 4.

**Issue 5**

11.    None of the references were cited or applied during the original prosecution.

Spillane discloses, among other things, a vehicle control system comprising a

plurality of subsystem controllers including an engine management system,

transmission controller, steering controller, brakes controller and suspension controller.

See abstract.  Spillane discloses a plurality of vehicle components including wheels, a

powertrain, engine, transmission, transmission controller, steering system, engine

controller, braking system.  See paragraphs [0071]-[0076], [0085]-[0086], and figures 1-

2.

Schuyler discloses, among other things, a vehicle system used to collect data on

vehicle status and for controlling specific vehicle functions.  See column 1, lines 1-

column 2.  Schuyler discloses a vehicle computer display used for calculating directions

or maps as in figure 7 and columns 9-10.  Schuyler discloses the vehicles have on-

board passenger displays with web access as well as a GPS.  See column 3, lines 46-

53 and column 8, lines 32-34.  Schuyler discloses a system for remotely communicating

with a vehicle enabling an owner to wirelessly check vehicle status or control vehicle

functions from a remote digital device.  See column 1 and column 9.  See also figure 7.

Schuyler discloses an on-board vehicle function ensuring that only authorized users are

Application/Control Number: 90/015,424                                          Page 15
Art Unit: 3992

able to wirelessly write parameters to or retrieve information from a vehicle on-board

computer system 19 and web server functionality allowing the vehicle to be accessible

to a remote user via the Internet.  See columns 4-5 and figure 1.  See also column 8-9

disclosing that an on-board computer system includes software to "provide gateway

functions of access control" and to format and respond to electronic signals sent over

the phone.  A remote user is coupled with the computer and functions provided by an in-

vehicle electronic dashboard gauge, a computer display for calculating directions and

various vehicle controls.  Schuyler discloses that only authorized individuals can

remotely access the vehicle's on-board computer system.  See column 4, lines 6-50 and

figure 1. Schuyler discloses the remote-control module can receive user commands to

configure a vehicle component such as a security setting, control the locking of a door,

a vehicle alarm or ignition kill and check various states of a vehicle component such as

tire pressure, gas level, and vehicle location from GPS.  See column 2, lines 1-22, and

column 4, lines 6-19.  Schuyler discloses a security screening to ensure only authorized

individuals can access the vehicle's onboard system.  The security system has multiple

tiers.  Only an authorized individual can configure, alter, or determine a state of the

vehicle such as changing security settings, controlling door locks, alarms, and checking

various states of the component.  See column 4, lines 6-50.  Schuyler discloses in

column 6, liens 23-57 that *one preferred feature of a system for remotely*

*communicating with a vehicle is the use of "skins," or customizable user interfaces that*

*can be varied from operator to operator and can preferably be created and downloaded*

*directly to the vehicle, such that an owner anywhere can access his or her vehicle using*

*a preferred "skin." Since vehicle operators may have different levels of sophistication,*

*e.g., some individuals accessing a vehicle may have the understanding of an experienced mechanic while other individuals may not understand how to physically check oil level, it is desired to provide a system that accommodates many different interfaces to make it easy for any vehicle owner to access required information, no matter what level of owner sophistication. To this effect, different skins will present different "controls" or parameters in differing graphical manners. For example, a skin used by an experienced mechanic may permit cursor selection (and retrieval) of engine timing parameters. Alternatively, for an unsophisticated user, a skin might have a simplified display directed to simple functions of checking oil, transmission fluid, air pressure, fuel remaining, and other basic queries related to vehicle maintenance*. See also FIG. 3 directed toward a typical user who might typically desire to simply check fuel level, fluids, tires or G.P.S. A preferred interface provides "full mode" access to a wide variety of controls and parameters, the hypothetical skin in FIG. 3 is directed toward an unsophisticated vehicle owner.  See also column 4, lines 6-34; column 2, lines 43-49; columns 9-10 and figure 8.

Since these teachings are directly related to subject matter considered as the basis for allowability of the patent claims, a reasonable examiner would consider evaluation of Spillane in view of Schuyler as important in determining the patentability of the claims.  As such it is agreed that Spillane in view of Schuyler raises a substantial new question of patentability with respect to at least claims 1, 4-6, 8, 11, 23, and 26-28 of the '786 Patent as relied upon in Issue 5.

Application/Control Number: 90/015,424                                      Page 17
Art Unit: 3992

**Issue 6**

Issue 6 is drawn to dependent claims 2 and 24. As it has already been established above in Issue 5 that Schuyler in view of Spillane raises a substantial new question of patentability with respect to at least claims 1, 4-6, 8, 11, 23, and 26-28 of the '786 Patent as relied upon in Issue 5, it is further agreed that an evaluation of Schuyler in view of Spillane and Nagara would also raise a substantial new question of patentability based on the base claim from which claim 2 depends.

None of the references were cited or applied during the original prosecution.

Spillane discloses, among other things, a vehicle control system comprising a plurality of subsystem controllers including an engine management system, transmission controller, steering controller, brakes controller and suspension controller. See abstract. Spillane discloses a plurality of vehicle components including wheels, a powertrain, engine, transmission, transmission controller, steering system, engine controller, braking system. See paragraphs [0071]-[0076], [0085]-[0086], and figures 1-2.

Schuyler discloses, among other things, a vehicle system used to collect data on vehicle status and for controlling specific vehicle functions. See column 1, lines 1-column 2. Schuyler discloses a vehicle computer display used for calculating directions or maps as in figure 7 and columns 9-10. Schuyler discloses the vehicles have on-board passenger displays with web access as well as a GPS. See column 3, lines 46-53 and column 8, lines 32-34. Schuyler discloses a system for remotely communicating with a vehicle enabling an owner to wirelessly check vehicle status or control vehicle functions from a remote digital device. See column 1 and column 9. See also figure 7.

Schuyler discloses an on-board vehicle function ensuring that only authorized users are
able to wirelessly write parameters to or retrieve information from a vehicle on-board
computer system 19 and web server functionality allowing the vehicle to be accessible
to a remote user via the Internet.  See columns 4-5 and figure 1.  See also column 8-9
disclosing that an on-board computer system includes software to "provide gateway
functions of access control" and to format and respond to electronic signals sent over
the phone.  A remote user is coupled with the computer and functions provided by an in-
vehicle electronic dashboard gauge, a computer display for calculating directions and
various vehicle controls.  Schuyler discloses that only authorized individuals can
remotely access the vehicle's on-board computer system.  See column 4, lines 6-50 and
figure 1. Schuyler discloses the remote-control module can receive user commands to
configure a vehicle component such as a security setting, control the locking of a door,
a vehicle alarm or ignition kill and check various states of a vehicle component such as
tire pressure, gas level, and vehicle location from GPS.  See column 2, lines 1-22, and
column 4, lines 6-19.  Schuyler discloses a security screening to ensure only authorized
individuals can access the vehicle's onboard system.  The security system has multiple
tiers.  Only an authorized individual can configure, alter, or determine a state of the
vehicle such as changing security settings, controlling door locks, alarms, and checking
various states of the component.  See column 4, lines 6-50.  Schuyler discloses in
column 6, liens 23-57 that *one preferred feature of a system for remotely
communicating with a vehicle is the use of "skins," or customizable user interfaces that
can be varied from operator to operator and can preferably be created and downloaded
directly to the vehicle, such that an owner anywhere can access his or her vehicle using*

Application/Control Number: 90/015,424                                          Page 19
Art Unit: 3992

a preferred "skin." Since vehicle operators may have different levels of sophistication,

e.g., some individuals accessing a vehicle may have the understanding of an

experienced mechanic while other individuals may not understand how to physically

check oil level, it is desired to provide a system that accommodates many different

interfaces to make it easy for any vehicle owner to access required information, no

matter what level of owner sophistication. To this effect, different skins will present

different "controls" or parameters in differing graphical manners. For example, a skin

used by an experienced mechanic may permit cursor selection (and retrieval) of engine

timing parameters. Alternatively, for an unsophisticated user, a skin might have a

simplified display directed to simple functions of checking oil, transmission fluid, air

pressure, fuel remaining, and other basic queries related to vehicle maintenance. See

also FIG. 3 directed toward a typical user who might typically desire to simply check fuel

level, fluids, tires or G.P.S. A preferred interface provides "full mode" access to a wide

variety of controls and parameters, the hypothetical skin in FIG. 3 is directed toward an

unsophisticated vehicle owner.  See also column 4, lines 6-34; column 2, lines 43-49;

columns 9-10 and figure 8.

Nagara discloses, among other things, a system and method for a single-action

multi-source presets for a vehicle entertainment system and providing remote

customization for vehicle entertainment systems.  See paragraph [0003].  A vehicle

entertainment system can be remotely customized from a remote device.  The features

of the vehicle entertainment system display including a display theme, font, color,

shape, size, etc.  See paragraph [0015].  In figure 3 and paragraph [0035], Nagara

discloses, the graphical interface allows easy moving or rearrangement of preset or

Application/Control Number: 90/015,424                                        Page 20
Art Unit: 3992

*favorite buttons as well as media selection of presets. The user selects a preset, such*

*as by holding the preset for a short time, and then drags and drops the preset to a*

*different location that suits the user. Therefore, the user can arrange preset buttons 30*

*along with media selection buttons to the preference of the user that allow the user to*

*select their desired audio content from the vehicle entertainment system with as little*

*distraction as possible and as quickly as possible.*

Since these teachings are directly related to subject matter considered as the

basis for allowability of the patent claims, a reasonable examiner would consider

evaluation of Spillane in view of Schuyler and Nagara as important in determining the

patentability of the claims.  As such it is agreed that Spillane in view of Schuyler and

Nagara raises a substantial new question of patentability with respect to at least claims

2 and 24 of the '786 Patent as relied upon in Issue 6.


**Issue 7**

Issue 7 is drawn to dependent claims 7 and 15.  As it has already been

established above in Issue 5 that Schuyler in view of Spillane raises a substantial new

question of patentability with respect to at least claims 1, 4-6, 8, 11, 23, and 26-28 of the

'786 Patent as relied upon in Issue 5, it is further agreed that an evaluation of Spillane in

view of Schuyler and Small would also raise a substantial new question of patentability

based on the base claim from which claim 7 and 15 depends.

None of the references were cited or applied during the original prosecution.

Spillane discloses, among other things, a vehicle control system comprising a

plurality of subsystem controllers including an engine management system,

Application/Control Number: 90/015,424                                    Page 21
Art Unit: 3992

transmission controller, steering controller, brakes controller and suspension controller.

See abstract.  Spillane discloses a plurality of vehicle components including wheels, a

powertrain, engine, transmission, transmission controller, steering system, engine

controller, braking system.  See paragraphs [0071]-[0076], [0085]-[0086], and figures 1-

2.

Schuyler discloses, among other things, a vehicle system used to collect data on

vehicle status and for controlling specific vehicle functions.  See column 1, lines 1-

column 2.  Schuyler discloses a vehicle computer display used for calculating directions

or maps as in figure 7 and columns 9-10.  Schuyler discloses the vehicles have on-

board passenger displays with web access as well as a GPS.  See column 3, lines 46-

53 and column 8, lines 32-34.  Schuyler discloses a system for remotely communicating

with a vehicle enabling an owner to wirelessly check vehicle status or control vehicle

functions from a remote digital device.  See column 1 and column 9.  See also figure 7.

Schuyler discloses an on-board vehicle function ensuring that only authorized users are

able to wirelessly write parameters to or retrieve information from a vehicle on-board

computer system 19 and web server functionality allowing the vehicle to be accessible

to a remote user via the Internet.  See columns 4-5 and figure 1.  See also column 8-9

disclosing that an on-board computer system includes software to "provide gateway

functions of access control" and to format and respond to electronic signals sent over

the phone.  A remote user is coupled with the computer and functions provided by an in-

vehicle electronic dashboard gauge, a computer display for calculating directions and

various vehicle controls.  Schuyler discloses that only authorized individuals can

remotely access the vehicle's on-board computer system.  See column 4, lines 6-50 and

figure 1. Schuyler discloses the remote-control module can receive user commands to configure a vehicle component such as a security setting, control the locking of a door, a vehicle alarm or ignition kill and check various states of a vehicle component such as tire pressure, gas level, and vehicle location from GPS.  See column 2, lines 1-22, and column 4, lines 6-19.  Schuyler discloses a security screening to ensure only authorized individuals can access the vehicle's onboard system.  The security system has multiple tiers.  Only an authorized individual can configure, alter, or determine a state of the vehicle such as changing security settings, controlling door locks, alarms, and checking various states of the component.  See column 4, lines 6-50.  Schuyler discloses in column 6, liens 23-57 that *one preferred feature of a system for remotely communicating with a vehicle is the use of "skins," or customizable user interfaces that can be varied from operator to operator and can preferably be created and downloaded directly to the vehicle, such that an owner anywhere can access his or her vehicle using a preferred "skin." Since vehicle operators may have different levels of sophistication, e.g., some individuals accessing a vehicle may have the understanding of an experienced mechanic while other individuals may not understand how to physically check oil level, it is desired to provide a system that accommodates many different interfaces to make it easy for any vehicle owner to access required information, no matter what level of owner sophistication. To this effect, different skins will present different "controls" or parameters in differing graphical manners. For example, a skin used by an experienced mechanic may permit cursor selection (and retrieval) of engine timing parameters. Alternatively, for an unsophisticated user, a skin might have a simplified display directed to simple functions of checking oil, transmission fluid, air*

Application/Control Number: 90/015,424                                Page 23
Art Unit: 3992

pressure, fuel remaining, and other basic queries related to vehicle maintenance. See

also FIG. 3 directed toward a typical user who might typically desire to simply check fuel

level, fluids, tires or G.P.S. A preferred interface provides "full mode" access to a wide

variety of controls and parameters, the hypothetical skin in FIG. 3 is directed toward an

unsophisticated vehicle owner.  See also column 4, lines 6-34; column 2, lines 43-49;

columns 9-10 and figure 8.

  Small discloses, among other things, personalizing a vehicles' user interface to

their interface preferences and storing those preferences.  See paragraph [0019] and

[0025].  Paragraph [0025] states, "*When a particular user configures display 100,*

*thereby personalizing the vehicle's user interface to their particular interface*

*preferences, preferably this set of configuration instructions is retained in memory 207.*

*As a result of recording their preferences, the user only has to go through the interface*

*personalization process once, after which they may simply call up the previously*

*recorded preferences. In a preferred implementation of the invention, system 200 is*

*configured to accommodate multiple drivers/users, allowing each driver/user to record*

*their preferences in memory 207... Then when one of the drivers with a pre-recorded set*

*of interface preferences enters the vehicle, they simply select their previously recorded*

*preferences. Selection of a pre-recorded set of interface preferences may be automatic,*

*for example by utilizing means that identifies a particular driver. Various means that*

*allow the identity of a user to be determined are known, including key fobs with*

*embedded user identification information and sophisticated image recognition systems.*

*Alternately, system 200 may require that a particular user select their previously*

*configured interface preferences, for example by pressing a hard button mounted within*

Application/Control Number: 90/015,424                                    Page 24
Art Unit: 3992

the vehicle, or pressing a soft button located on display 101. In one embodiment, soft

buttons 105 include such selection means, specifically with buttons labeled "Driver 1",

"Driver 2", "Driver 3", and "Driver 4". Due to the configurable nature of system 200, in at

least one embodiment during interface set-up the user is able to name each selection

button 105, i.e., "Evan", "Brian", "Kylie" and "Kira", thus adding further personalization to

the interface."

Since these teachings are directly related to subject matter considered as the

basis for allowability of the patent claims, a reasonable examiner would consider

evaluation of Spillane in view of Schuyler and Small as important in determining the

patentability of the claims. As such it is agreed that Spillane in view of Schuyler and

Small raises a substantial new question of patentability with respect to at least claims 7

and 15 of the '786 Patent as relied upon in Issue 7.


**Issue 8**

Issue 8 is drawn to dependent claim 9. As it has already been established above

in Issue 5 that Schuyler in view of Spillane raises a substantial new question of

patentability with respect to at least claims 1, 4-6, 8, 11, 23, and 26-28 of the '786

Patent as relied upon in Issue 5, it is further agreed that an evaluation of Spillane in

view of Schuyler and Thompson would also raise a substantial new question of

patentability based on the base claim from which claim 9 depends.

None of the references were cited or applied during the original prosecution.

Spillane discloses, among other things, a vehicle control system comprising a

plurality of subsystem controllers including an engine management system,

Application/Control Number: 90/015,424                                    Page 25
Art Unit: 3992

transmission controller, steering controller, brakes controller and suspension controller.

See abstract.  Spillane discloses a plurality of vehicle components including wheels, a

powertrain, engine, transmission, transmission controller, steering system, engine

controller, braking system.  See paragraphs [0071]-[0076], [0085]-[0086], and figures 1-

2.

        Schuyler discloses, among other things, a vehicle system used to collect data on

vehicle status and for controlling specific vehicle functions.  See column 1, lines 1-

column 2.  Schuyler discloses a vehicle computer display used for calculating directions

or maps as in figure 7 and columns 9-10.  Schuyler discloses the vehicles have on-

board passenger displays with web access as well as a GPS.  See column 3, lines 46-

53 and column 8, lines 32-34.  Schuyler discloses a system for remotely communicating

with a vehicle enabling an owner to wirelessly check vehicle status or control vehicle

functions from a remote digital device.  See column 1 and column 9.  See also figure 7.

Schuyler discloses an on-board vehicle function ensuring that only authorized users are

able to wirelessly write parameters to or retrieve information from a vehicle on-board

computer system 19 and web server functionality allowing the vehicle to be accessible

to a remote user via the Internet.  See columns 4-5 and figure 1.  See also column 8-9

disclosing that an on-board computer system includes software to "provide gateway

functions of access control" and to format and respond to electronic signals sent over

the phone.  A remote user is coupled with the computer and functions provided by an in-

vehicle electronic dashboard gauge, a computer display for calculating directions and

various vehicle controls.  Schuyler discloses that only authorized individuals can

remotely access the vehicle's on-board computer system.  See column 4, lines 6-50 and

Application/Control Number: 90/015,424                                      Page 26
Art Unit: 3992

figure 1. Schuyler discloses the remote-control module can receive user commands to configure a vehicle component such as a security setting, control the locking of a door, a vehicle alarm or ignition kill and check various states of a vehicle component such as tire pressure, gas level, and vehicle location from GPS.  See column 2, lines 1-22, and column 4, lines 6-19.  Schuyler discloses a security screening to ensure only authorized individuals can access the vehicle's onboard system.  The security system has multiple tiers.  Only an authorized individual can configure, alter, or determine a state of the vehicle such as changing security settings, controlling door locks, alarms, and checking various states of the component.  See column 4, lines 6-50.  Schuyler discloses in column 6, liens 23-57 that *one preferred feature of a system for remotely communicating with a vehicle is the use of "skins," or customizable user interfaces that can be varied from operator to operator and can preferably be created and downloaded directly to the vehicle, such that an owner anywhere can access his or her vehicle using a preferred "skin." Since vehicle operators may have different levels of sophistication, e.g., some individuals accessing a vehicle may have the understanding of an experienced mechanic while other individuals may not understand how to physically check oil level, it is desired to provide a system that accommodates many different interfaces to make it easy for any vehicle owner to access required information, no matter what level of owner sophistication. To this effect, different skins will present different "controls" or parameters in differing graphical manners. For example, a skin used by an experienced mechanic may permit cursor selection (and retrieval) of engine timing parameters. Alternatively, for an unsophisticated user, a skin might have a simplified display directed to simple functions of checking oil, transmission fluid, air*

Application/Control Number: 90/015,424                                    Page 27
Art Unit: 3992

*pressure, fuel remaining, and other basic queries related to vehicle maintenance*. See also FIG. 3 directed toward a typical user who might typically desire to simply check fuel level, fluids, tires or G.P.S. A preferred interface provides "full mode" access to a wide variety of controls and parameters, the hypothetical skin in FIG. 3 is directed toward an unsophisticated vehicle owner.  See also column 4, lines 6-34; column 2, lines 43-49; columns 9-10 and figure 8.

Thompson discloses, among other things, a method and apparatus for interacting remotely with a vehicle comprising a data transfer means for wirelessly communication messages between a mobile device and a vehicle data bus within a vehicle.  See abstract.  Thompson discloses receiving a control signal wherein a DTU 22 and related software determine a correct CAN message for effecting the control request.  See paragraphs [0025]-[0028], [0033]-[0038], [0046]-[0049].  See paragraph [0047] disclosing w*hen the transceiver unit 30 receives a message transmitted over the GSM network 13, the message is passed to the microprocessor 26 which then accesses the look-up table in the NVRAM module 34 to determine the correct CAN message for effecting the control request.*

Since these teachings are directly related to subject matter considered as the basis for allowability of the patent claims, a reasonable examiner would consider evaluation of Spillane in view of Schuyler and Thompson as important in determining the patentability of the claims.  As such it is agreed that Spillane in view of Schuyler and Thompson raises a substantial new question of patentability with respect to at least claim 9 of the '786 Patent as relied upon in Issue 8.

Application/Control Number: 90/015,424                                    Page 28
Art Unit: 3992

**35 USC 325(d)**

9.      A review of the post grant history for the underlying patent indicates that there

have been no other Office post grant challenges made to the patent (Reexamination

Proceedings or *Inter Partes* Review, Post Grant Review, Covered Business Method

trials). Accordingly, a discretionary denial of reexamination pursuant to 35 USC 325(d)

is not applicable.

**Conclusion**

10.      In summary, it is agreed that Issues 1-8 raise a substantial new question of

patentability with respect to at least claims 1-2, 4-9, 11, 15, 23, 24, and 26-28 of US

Patent 9,116,786 as outlined above.

**Extensions of Time**

11.      Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that

reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).

Extension of time in *ex parte* reexamination proceedings are provided for in 37 CFR

1.550(c).

**Amendment in Reexamination Proceedings**

12.     Patent Owner is notified that any proposed amendment to the specification

and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j),

must be formally presented pursuant to 37 CFR §1.52(a) and (b), and must contain any

fees required by 37 CFR §1.20(c).  See MPEP §2250(IV) for examples to assist in the

preparation of proper proposed amendments in reexamination proceedings.


### Submissions

13.     If the patent owner fails to file a timely and appropriate response to any Office

action or any written statement of an interview required under 37 CFR §1.560(b), the ex

parte reexamination proceeding will be terminated, and the Director will proceed to

issue a certificate under 37 CFR §1.570 in accordance with the last office action.


### Service of Papers

14.     After the filing of a request for reexamination by a third party requester, any

document filed by either the patent owner or the third party requester must be served on

the other party (or parties where two or more third party requester proceedings are

merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248.  See

37 CFR 1.550(f).


### Notification of Concurrent Proceedings


15.     The patent owner is reminded of the continuing responsibility under 37 CFR

1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

Application/Control Number: 90/015,424                                    Page 30
Art Unit: 3992

proceeding, involving Patent No. 9,116,786 throughout the course of this reexamination

proceeding.  The third-party requester is also reminded of the ability to similarly apprise

the Office of any such activity or proceeding throughout the course of this reexamination

proceeding.  See MPEP §§ 2207, 2282 and 2286.


16.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Rachna Desai whose telephone number is (571)272-

4099. The examiner can normally be reached Monday-Friday 7am-3pm.

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Alexander Kosowski can be reached on (571)272-3744. The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Information regarding the status of published or unpublished applications may be

obtained from Patent Center. Unpublished application information in Patent Center is

available to registered users. To file and manage patent submissions in Patent Center,

visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-

center for more information about Patent Center and

https://www.uspto.gov/patents/docx for information about filing in DOCX format. For

additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

Application/Control Number: 90/015,424                                          Page 31
Art Unit: 3992

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Rachna S Desai/
Primary Examiner, Art Unit 3992


/ALEXANDER J KOSOWSKI/
Supervisory Patent Examiner, Art Unit 3992