# EXHIBIT S

U NITED  S TATES  P ATENT AND  T RADEMARK  O FFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,983 | 06/06/2025 | 9098367 | 698162.0026 | 4074 |

192827        7590        07/24/2025

Avantech Law, LLP
80 S 8th St, Suite 900
Minneapolis, MN 55402

| EXAMINER |
|---|
| WOOD, WILLIAM H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/24/2025 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K STREET, NW
WASHINGTON DC 20006

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,983* .

PATENT UNDER REEXAMINATION  *9098367* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting Request For Ex Parte Reexamination* | Control No. 90/019,983 | Patent Under Reexamination 9098367 | |
|---|---|---|---|
| | Examiner WILLIAM H WOOD | Art Unit 3992 | AIA (FITF) Status Yes |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>06/06/2025</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐    PTO-892,    b)☑    PTO/SB/08,    c)☐    Other: _____

1. ☑    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| /William H. Wood/ Primary Examiner, Art Unit 3992 | | |
|---|---|---|

cc:Requester ( if third party requester )

U.S. Patent and Trademark Office
PTOL-471G(Rev. 01-13)                     Office Action in *Ex Parte* Reexamination                     Part of Paper No. 20250625

Application/Control Number: 90/019,983                                                    Page 2
Art Unit: 3992

*Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first

inventor to file provisions of the AIA.


**DECISION ON REQUEST FOR REEXAMINATION**

Reexamination (*ex parte*) has been requested by a third party requester (Unified Patents, LLC)

for claims 1-5 and 7-30 of US 9,098,367 to Ricci, which issued on 08/04/2015 (hereinafter, the '367

patent). The Request for *ex parte* reexamination (herein *Request*) was received on 06/06/2025.


A substantial new question of patentability affecting claims 1-5 and 7-30 of United States Patent

Number 9,098,367 to Ricci is raised by the request for *ex parte* reexamination. As such the filed request

for reexamination is granted.


*Reexamination*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because

the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination

proceeding.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be

conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in *ex parte* reexamination

proceedings are provided for in 37 CFR 1.550(c).


The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise

the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No.

9,098,367 throughout the course of this reexamination proceeding.  The third party requester is also

reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the

course of this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.


### *Claim Interpretation*

During reexamination ordered under 35 U.S.C. 304, and also during reexamination ordered

under 35 U.S.C. 257, claims are given the broadest reasonable interpretation consistent with the

specification and limitations in the specification are not read into the claims (In re Yamamoto, 740 F.2d

1569, 222 USPQ 934 (Fed. Cir. 1984)). In a reexamination proceeding involving claims of an expired

patent, claim construction pursuant to the principle set forth by the court in Phillips v. AWH Corp., 415

F.3d 1303, 1316, 75 USPQ2d 1321, 1329 (Fed. Cir. 2005) (words of a claim "are generally given their

ordinary and customary meaning" as understood by a person of ordinary skill in the art in question at

the time of the invention) should be applied since the expired claim are not subject to amendment. See

Ex parte Papst-Motoren, 1 USPQ2d 1655 (Bd. Pat. App. & Inter. 1986). The statutory presumption of

validity, 35 U.S.C. 282, has no application in reexamination (In re Etter, 756 F.2d 852, 225 USPQ 1 (Fed.

Cir. 1985)). See MPEP 2258 I.G.


The US 9,098,367 patent to Ricci statements relevant to the broadest reasonable interpretation

of the claim language: (1) "[v]ehicle state, configuration, and/or operation can be determined based on

one or types of sensed information received from one or more vehicle sensors" *(Ricci: column 3, lines*

*19-21)*.


### *Prosecution History Summary*

The patent requested for reexamination, <u>US 9,098,367 to Ricci</u>, issued from U.S. Application 13/963,728 with a filing date on 08/09/2013. The following is a summary of the relevant portions of the corresponding prosecution history.

Issued claims 1-5 and 7-30 are requested for reexamination. The issued claims correspond to prosecution claims *(prosecution claims in italics)* as follows: 1-2 *(1-2)*; 7 *(3)*; 8 *(5)*; 3 *(6)*; 4 *(7)*; 9 *(8)*; 5 *(9)*; 6 *(10)*; 10 *(11)*; 11 *(12)*; 14 *(13)*; 15 *(15)*; 12 *(16)*; 13 *(17)*; 16 *(18)*; 17 *(19)*; 18 *(20)*; 21 *(21)*; 22 *(23)*; 19 *(24)*; 20 *(25)*; 23 *(26)*; 24 *(27)*; 25 *(28)*; 26 *(29)*; 27 *(30)*; 28 *(31)*; 29 *(32)*; 30 *(33)*.


*13/963,728 Original Prosecution (US 9,098,367 B2)*

Application 13/963,728 was filed 08/09/2013 claiming benefit to provisional application 61/714,016 filed 10/15/2012 and provisional application 61/715,699 filed 10/18/2012.

The Non-Final Rejection of 11/19/2014: rejected prosecution claims 1-27 under 35 U.S.C. 103 as being unpatentable over Uehara (US 2012/0239242) in view of Amendola et al. (US 2004/0039500); and rejected prosecution claims 11-27 under 35 U.S.C. 101 as being directed to non-statutory subject matter.

Applicant's Response of 02/24/2015, among other amendments and arguments, amended prosecution claim 1 (and similarly, the other independent claims) as follows:

> A method, comprising:
> determining, by a microprocessor executable application manager, configuration data regarding a vehicle;
> determining, by the application manager, a requirement of a selected application in an application store, the application store comprising information relating to a plurality of applications available for installation on a vehicle computer, <u>the plurality of applications comprising a plurality of an application related to handicap and accessibility graphical user interfaces, email client, web browser, communications application, game, entertainment application, satellite positioning system receiver application, automotive navigation application or device, map application, medical information application, emergency service application, noise suppression application, news-related application, vehicle manual related application, weather information-related application, biometric application, travel application, speech recognition application, application to read to the operator Really Simple Syndication ("RSS") feeds,</u>

Twitter messages, email messages, and/or instant messages, social networking application, streaming media application, and utility application; and

comparing, by the application manager, the vehicle configuration data with the requirement of the selected application to determine at least one of whether the selected application can be installed currently in an electronic readable memory of the vehicle computer and/or whether the selected application can be executed currently by on the vehicle computer.

The Response argues the cited prior art Uehara does not show the above amended language (which was originally found in dependent claim 8), but is instead directed toward a vehicle maneuver application (VMA) interface *(Response of 02/24/2015: page 22, "A VMA is none of the applications set forth in the independent claims")*. The Response argues the additional cited prior art Amendola does not show amended language.

The Notice of Allowance of 03/26/2015, via an Examiner's Amendment, amended the claim language amended by the 02/24/2015 response to increase clarity. Further, as noted by the Interview Summary of 03/26/2015, the Examiner indicated at the time of allowance the independent claims would be allowable if they included: "vehicle configuration data regarding a vehicle, wherein the vehicle configuration data is stored locally in a tangible and non-transitory computer readable memory of a vehicle and wherein the vehicle configuration data is updated dynamically to reflect a change in the vehicle configuration data, wherein the vehicle configuration data relates to one or more of an on board hardware and/or software resource, module, algorithm, and/or component and/or a setting and/or property thereof" and "wherein the requirement relates to one or more of a microprocessor, central processing unit, a service quality measure of network performance, available, unused, unavailable, and/or in use memory capacity, and operating system".

The Notice of Allowance of 03/26/2015 allowed prosecution claims 1-3, 5-13, 15-21, and 23-33, and further stated:

The cited prior art taken alone or in combination fail to teach, in combination with the other claimed limitation, a method for determining a vehicle configuration data, the vehicle configuration data is updated dynamically to reflect a change in the

vehicle configuration data, wherein the vehicle configuration data relates to one or more of an on board hardware and/or software resource, module, algorithm, and/or component and/or a setting and/or property thereof; determining a requirement of a selected application in an application store, wherein the requirement relates to one or more of a microprocessor, central processing unit, a service quality measure of network performance, available, unused, unavailable, and/or in use memory capacity, and operating system, the application store comprising information relating to a plurality of applications available for installation on a vehicle computer, and comparing the vehicle configuration data with the requirement of the selected application to determine whether the selected application can be installed currently in an electronic readable memory of the vehicle computer and/or whether the selected application can be executed currently by the vehicle computer.


_Summary_

Therefore, at least the following limitations would be considered important to a reasonable examiner (as issued in claim 1, corresponding to prosecution claim 1): "determining … a vehicle configuration data, … wherein the vehicle configuration data is updated dynamically to reflect a change in the vehicle configuration data, wherein the vehicle configuration data relates to one or more of an on board hardware and/or software resource, module, algorithm, and/or component and/or a setting and/or property thereof"; "determining … a requirement of a selected application in an application store, wherein the requirement relates to one or more of a microprocessor, central processing unit, a service quality measure of network performance, available, unused, unavailable, and/or in use memory capacity, and operating system, the application store comprising information relating to a plurality of applications available for installation on a vehicle computer …"; and "comparing … the vehicle configuration data with the requirement of the selected application to determine … whether the selected application can be installed currently in an electronic readable memory of the vehicle computer and/or whether the selected application can be executed currently by the vehicle computer".


After the prosecution of US Application 13/963,728 which resulted in reexamination requested patent US 9,098,367 to Ricci, the patent was involved in the following litigation: (1) OPEN, 1:24cv1327,

Application/Control Number: 90/019,983                                                            Page 7
Art Unit: 3992

Autoconnect Holdings LLC v. Ford Motor Company; and (2) OPEN, 2:24cv877, Autoconnect Holdings LLC

v. General Motors LLC.

***References of the Request***

The *Request* proposes the following patents and/or printed publications provide teachings

relevant to the requested claims of the US 9,098,367 B2 patent to Ricci.


<u>Faenger</u>

*Faenger*, US 8,688,320 B2 (herein *Faenger*) <u>was not cited during the original prosecution</u> of

application 13/963,728 which resulted in the reexamination requested patent US 9,098,367 B2 *(Ricci)*.

The *Faenger* reference is eligible for application under at least 35 U.S.C. 102(e) as the *Faenger* reference

was filed 01/11/2011 as compared to the earliest possible priority date of the *Ricci* patent to

10/15/2012. As discussed in the following section on SNQs, the *Request* asserts *Faenger* establishes a

substantial new question of patentability. Additionally, the *Faenger* patent's application was published

as US 2012/0179325 A1 on July 12, 2012, a document eligible for application under at least 35 U.S.C.

102(a).


<u>Firman</u>

*Firman*, US 9,055,120 B2 (herein *Firman*) <u>was not cited during the original prosecution</u> of

application 13/963,728 which resulted in the reexamination requested patent US 9,098,367 B2 *(Ricci)*.

The *Firman* reference is eligible for application under at least 35 U.S.C. 102(e) as the *Faenger* reference

was filed 01/30/2012 as compared to the earliest possible priority date of the *Ricci* patent to

10/15/2012. As discussed in the following section on SNQs, the *Request* asserts *Firman* establishes a

substantial new question of patentability.

<u>*Moinzadeh*</u>

*Moinzadeh* et al., US 8,838,332 B2 (herein *Moinzadeh*) <u>was not cited during the original</u> <u>prosecution</u> of application 13/963,728 which resulted in the reexamination requested patent US 9,098,367 B2 *(Ricci)*. The *Moindzadeh* reference is eligible for application under at least 35 U.S.C. 102(e) as the *Moinzadeh* reference was filed 05/11/2010 as compared to the earliest possible priority date of the *Ricci* patent to 10/15/2012. As discussed in the following section on SNQs, the *Request* asserts *Moinzadeh* establishes a substantial new question of patentability. Additionally, the *Moinzadeh* patent's application was published as US 2011/0093154 A1 on April 21, 2011, a document eligible for application under at least 35 U.S.C. 102(b). <u>This related Patent Application Publication **was cited** during the original</u> <u>prosecution</u> of application 13/963,728 which resulted in the reexamination requested patent US 9,098,367 B2 *(Ricci)*.

<u>*McWalter*</u>

*McWalter* et al., US 6,928,344 B2 (herein *McWalter*) <u>was not cited during the original</u> <u>prosecution</u> of application 13/963,728 which resulted in the reexamination requested patent US 9,098,367 B2 *(Ricci)*. The *McWalter* reference is eligible for application under at least 35 U.S.C. 102(b) as the *McWalter* reference was patented 08/09/2005 as compared to the earliest possible priority date of the *Ricci* patent to 10/15/2012. As discussed in the following section on SNQs, the *Request* asserts *McWalter* establishes a substantial new question of patentability.

<u>*Small*</u>

*Small* et al., US 2011/0082615 A1 (herein *Small*) <u>**was cited** during the original prosecution</u> of application 13/963,728 which resulted in the reexamination requested patent US 9,098,367 B2 *(Ricci)*. The *Small* reference is eligible for application under at least 35 U.S.C. 102(b) as the *Small* reference was

published 04/07/2011 as compared to the earliest possible priority date of the *Ricci* patent to

10/15/2012. As discussed in the following section on SNQs, the *Request* asserts *Small* establishes a

substantial new question of patentability.

### Substantial New Question of the Request

The following is an analysis of the *Request* asserted at least one substantial new question of

patentability, in view of the above cited prior art, with respect to issued claims 1-5 and 7-30 of US

9,098,367 B2 patent to Ricci.

*Issue 1*

The *Request* asserts *Faenger* in view of *Firman* raises a substantial new question of patentability

*(Request: page 14, Ground 1; pages 15-26, section VI.C.; Appendix AA)* with regard to claims 1-4, 7-24,

and 26-30.

Claims 1-4, 7-24, and 26-30 are proposed as being obvious over *Faenger* in view of *Firman*

*(Request: page 14, Ground 1; pages 15-26, section VI.C.; Appendix AA)*.

In now analyzing the cited references, it is seen that **_Faenger_** discloses at least: "[s]tored data

116 include various data files for use by one or more stored programs in operation … [t]he stored data

116 contain one or more sets of configuration data that define the format of user interfaces for the

programs in the stored program data 114 … [t]he configuration data may include CSS and XSLT files that

define rules for generating a user interface" *(Faenger: column 4, line 65 to column 5, line 3; "stored

data" relevant to vehicle configuration data)*; "[w]hen presenting data to the operator of the vehicle

102, the vehicle information system 100 identifies the operating condition of the vehicle … [t]he vehicle

information 100 system may identify the operating condition of the vehicle 102 from one or more

vehicle systems 148 including a speedometer, brake sensor, and gear selection" *(Faenger: column 10,*

Application/Control Number: 90/019,983                                          Page 10
Art Unit: 3992

*lines 35-45; "operating condition of the vehicle" relevant to vehicle configuration data, see above*

*discussion under Claim Interpretation)*; "[p]rogram data 114 also include one or more software modules

that the controller 104 executes to provide access to one or more of the vehicle systems 148 using the

web browser" *(Faenger: column 7, lines 17-20; relevant to application using vehicle configuration data)*;

"[t]he controller 104 may take different actions for a signal generated by the same input device in

response to the operating state of the information system 100 at the time the signal is generated … [f]or

example, a dial may be used to adjust the volume level of music when the controller 104 presents a

music application to the operator, while the same dial may be used to adjust a temperature level for a

climate control system in a different operating context." *(Faenger: column 5, lines 55-62; relevant to*

*vehicle configuration and operating state being dynamic/changeable, and relevant to applications being*

*dependent on vehicle configuration and operating state)*; "the operating condition of the vehicle 102 is

identified … [t]he vehicle information system 100 may determine the operating condition of the vehicle

based on data received from one or more in vehicle systems 148 … [o]ne or more vehicle systems

including, for example, a global positioning system (GPS), a speedometer, a tachometer, a brake sensor,

or a gear indicator that indicate the operating condition of the vehicle 102 … [s]ince the operating

condition of vehicle 102 may change at one or more times, the vehicle information system 100 may

monitor the operating condition of the vehicle 102 to identify changes in the operating condition … the

vehicle information system 100 generates a user interface based on the data elements in the address

book web application … [t]he user interface has a layout that is generated in accordance with the

identified data types of data elements in the web application, relevance assigned to the data elements,

and the identified operating condition of the vehicle 102" *(Faenger: column 11, line 56 to column 12, line*

*7; relevant to applications being dependent/customizable on vehicle configuration and operating*

*condition, and comparing requirements to configuration and operating condition)*.

Application/Control Number: 90/019,983                                    Page 11
Art Unit: 3992

In now analyzing the cited references, it is seen that **_Firman_** discloses at least: "[r]eferring now more particularly to the first scenario involving browsing and display of multiple compatible applications, a plurality of mobile applications 110 that are generally managed by the marketplace 108 may be subjected to a filter 112 so as to create a subset 114 of the mobile applications 110 … [t]he subset 114 may include only those applications of the mobile applications 110 that are evaluated as potentially compatible with the mobile device 102 … [t]he mobile applications within the subset 114 may then subsequently be exposed to a user when the user accesses the marketplace 108 via a web or client interface 116 on the mobile device 102 … [i]n this manner, those applications of the mobile applications 110 that are possibly incompatible with the mobile device 102 are concealed from the user … [s]uch an implementation can be beneficial in many respects … [f]or example, a situation may be avoided in which a user inadvertently downloads a mobile application that is incompatible with the user's device" *(Firman: column 6, lines 7-23; relevant to comparing configuration data with a requirement to determine if an application can be installed)*.

These disclosures of *Faenger* and *Firman* constitute teachings pertinent to at least the claim limitations (see 9,098,367, claim 1): "determining … a vehicle configuration data, … wherein the vehicle configuration data is updated dynamically to reflect a change in the vehicle configuration data, wherein the vehicle configuration data relates to one or more of an on board hardware and/or software resource, module, algorithm, and/or component and/or a setting and/or property thereof"; "determining … a requirement of a selected application in an application store, wherein the requirement relates to one or more of a microprocessor, central processing unit, a service quality measure of network performance, available, unused, unavailable, and/or in use memory capacity, and operating system, the application store comprising information relating to a plurality of applications available for installation on a vehicle computer …"; and "comparing … the vehicle configuration data with the requirement of the selected application to determine … whether the selected application can be

installed currently in an electronic readable memory of the vehicle computer and/or whether the selected application can be executed currently by the vehicle computer".

As revealed in the above "Prosecution History Summary", these limitations were important to the allowability of US 9,098,367 to Ricci over the prosecution cited prior art. As now presented, these teachings were not previously considered in the prosecution that led to the reexamination requested patent and are viewed in a new light (neither *Faenger* nor *Firman* have previously been considered by the Office for these or any other limitations). *Faenger* and *Firman* are not merely cumulative to prior art already considered by the Office (the references teach at least additional information as compared to the previously cited prior art).

In light of these teachings, *Faenger* and *Firman* are found to provide new prior art teachings that would be considered important to a reasonable examiner in evaluating the patentability of claims 1-4, 7-24, and 26-30. Accordingly, *Faenger* and *Firman* raise a substantial new question of patentability with respect to claims 1-4, 7-24, and 26-30.


*Issue 2*

The *Request* asserts *Faenger* in view of *Firman* and *Moinzadeh* raises a substantial new question of patentability *(Request: page 14, Ground 2; pages 27-33, section VI.D.; Appendix AA)* with regard to claim 5.

Claim 5 is proposed as being obvious over *Faenger* in view of *Firman* and *Moinzadeh (Request: page 14, Ground 2; pages 27-33, section VI.D.; Appendix AA)*.

*Moinzadeh* provides additional teachings that are viewed in conjunction with the disclosures of *Faenger* and *Firman* (see above). As revealed in the above analysis the disclosures of *Faenger* and *Firman* raise a substantial new question of patentability with respect to claims 1-4, 7-24, and 26-30. Therefore, as now presented, these additional teachings were not previously considered in the

prosecution that led to the reexamination requested patent as they are viewed in a new light and not merely cumulative to prior art already considered by the Office (though cited in the original prosecution *Moinzadeh* has not been considered along with *Faenger* and *Firman* as now presented).

In light of these teachings, *Moinzadeh* is found to provide new prior art teachings that would be considered important to a reasonable examiner in evaluating the patentability of claim 5 (ultimately dependent upon claim 1). Accordingly, *Faenger, Firman, and Moinzadeh* raise a substantial new question of patentability with respect to claim 5.


*Issue 3*

The *Request* asserts *Faenger* in view of *Firman* and *Small* raises a substantial new question of patentability *(Request: page 14, Ground 3; pages 33-39, section VI.E.; Appendix AA)* with regard to claim 25.

Claim 25 is proposed as being obvious over *Faenger* in view of *Firman* and *Small (Request: page 14, Ground 3; pages 33-39, section VI.E.; Appendix AA)*.

*Small* provides additional teachings that are viewed in conjunction with the disclosures of *Faenger* and *Firman* (see above). As revealed in the above analysis the disclosures of *Faenger* and *Firman* raise a substantial new question of patentability with respect to claims 1-4, 7-24, and 26-30. Therefore, as now presented, these additional teachings were not previously considered in the prosecution that led to the reexamination requested patent as they are viewed in a new light and not merely cumulative to prior art already considered by the Office (*Small* has not been considered along with *Faenger* and *Firman* as now presented).

In light of these teachings, *Small* is found to provide new prior art teachings that would be considered important to a reasonable examiner in evaluating the patentability of claim 25 (ultimately

dependent upon claim 17). Accordingly, *Faenger, Firman, and Small* raise a substantial new question of patentability with respect to claim 25.


*Issue 4*

The *Request* asserts *McWalter* in view of *Firman* raises a substantial new question of patentability *(Request: page 14, Ground 4; pages 40-48, section VI.F.; Appendix BB)* with regard to claims 1-4, 7-24, and 26-30.

Claims 1-4, 7-24, and 26-30 are proposed as being obvious over *McWalter* in view of *Firman* *(Request: page 14, Ground 4; pages 40-48, section VI.F.; Appendix BB)*.

In now analyzing the cited references, it is seen that **McWalter** discloses at least: "… the TCU is incorporated into a land based vehicle … [i]n one embodiment, the TCU is in communication with the electronic components of a vehicle through a vehicle bus, or by other means … [t]hese components include the measurement of vehicle operating and safety parameters, such as tire pressure, speed, oil pressure, engine temperature, etc., as well as information and entertainment components, such as audio system settings, Internet access, environmental control within the cabin of the vehicle, seat positions, etc … [o]ne skilled in the art will appreciate that the telematics control unit is capable of integrating the functionality of various handheld information and entertainment (infotainment) devices, such as mobile phones, personal digital assistants (PDA), MP3 players, etc." *(McWalter: column 5, lines 7-25; relevant to vehicle configuration data, see above discussion under Claim Interpretation; further this shows the environment of McWalter is relevant to mobile devices/applications)*; "… a carlet is a [Java] application … a carlet is invoked to manage the operation … carlets can be independently written, tested, and launched for use on a telematics system … a carlet can be written to control or monitor the activity of automobile components (e.g., tires, engine oil, wiper activity, steering tightness, maintenance recommendations, air bag control, transmission control, engine temperature monitoring, etc.), and to

control or monitor applications to be processed by the telematics control unit (TCU) and interacted with

using the on-board automobile monitor ... specialized carlets can be written to control the audio system,

entertainment modules (e.g., such as on-line games or movies), voice recognition, telecommunications,

email communications (text and voice driven), etc. ... the type of carlets that can be written is unlimited"

*(McWalter: column 6, lines 13-30; relevant to vehicle configuration and operating state being*

*dynamic/changeable, and relevant to applications being dependent on vehicle configuration and*

*operating state).*

     In now analyzing the cited references, it is seen that ***Firman*** discloses at least: "[r]eferring now

more particularly to the first scenario involving browsing and display of multiple compatible

applications, a plurality of mobile applications 110 that are generally managed by the marketplace 108

may be subjected to a filter 112 so as to create a subset 114 of the mobile applications 110 ... [t]he

subset 114 may include only those applications of the mobile applications 110 that are evaluated as

potentially compatible with the mobile device 102 ... [t]he mobile applications within the subset 114

may then subsequently be exposed to a user when the user accesses the marketplace 108 via a web or

client interface 116 on the mobile device 102 ... [i]n this manner, those applications of the mobile

applications 110 that are possibly incompatible with the mobile device 102 are concealed from the user

... [s]uch an implementation can be beneficial in many respects ... [f]or example, a situation may be

avoided in which a user inadvertently downloads a mobile application that is incompatible with the

user's device" *(Firman: column 6, lines 7-23; relevant to comparing configuration data with a*

*requirement to determine if an application can be installed; also showing Firman used in an environment*

*of mobile devices/applications).*

     These disclosures of *McWalter* and *Firman* constitute teachings pertinent to at least the claim

limitations (see 9,098,367, claim 1): "determining ... a vehicle configuration data, ... wherein the vehicle

configuration data is updated dynamically to reflect a change in the vehicle configuration data, wherein

the vehicle configuration data relates to one or more of an on board hardware and/or software resource, module, algorithm, and/or component and/or a setting and/or property thereof"; "determining … a requirement of a selected application in an application store, wherein the requirement relates to one or more of a microprocessor, central processing unit, a service quality measure of network performance, available, unused, unavailable, and/or in use memory capacity, and operating system, the application store comprising information relating to a plurality of applications available for installation on a vehicle computer …"; and "comparing … the vehicle configuration data with the requirement of the selected application to determine … whether the selected application can be installed currently in an electronic readable memory of the vehicle computer and/or whether the selected application can be executed currently by the vehicle computer".

As revealed in the above "Prosecution History Summary", these limitations were important to the allowability of US 9,098,367 to Ricci over the prosecution cited prior art. As now presented, these teachings were not previously considered in the prosecution that led to the reexamination requested patent and are viewed in a new light (neither *McWalter* nor *Firman* have previously been considered by the Office for these or any other limitations). *McWalter* and *Firman* are not merely cumulative to prior art already considered by the Office (the references teach at least additional information as compared to the previously cited prior art).

In light of these teachings, *McWalter* and *Firman* are found to provide new prior art teachings that would be considered important to a reasonable examiner in evaluating the patentability of claims 1-4, 7-24, and 26-30. Accordingly, <u>*McWalter* and *Firman* raise a substantial new question of patentability</u> with respect to claims 1-4, 7-24, and 26-30.

<u>*Issue 5*</u>

The *Request* asserts *McWalter* in view of *Firman* and *Moinzadeh* raises a substantial new question of patentability *(Request: page 14, Ground 5; pages 48-52, section VI.G.; Appendix BB)* with regard to claim 5.

Claim 5 is proposed as being obvious over *McWalter* in view of *Firman* and *Moinzadeh (Request: page 14, Ground 5; pages 48-52, section VI.G.; Appendix BB)*.

*Moinzadeh* provides additional teachings that are viewed in conjunction with the disclosures of *McWalter* and *Firman* (see above). As revealed in the above analysis the disclosures of *McWalter* and *Firman* raise a substantial new question of patentability with respect to claims 1-4, 7-24, and 26-30. Therefore, as now presented, these additional teachings were not previously considered in the prosecution that led to the reexamination requested patent as they are viewed in a new light and not merely cumulative to prior art already considered by the Office (though cited in the original prosecution *Moinzadeh* has not been considered along with *McWalter* and *Firman* as now presented).

In light of these teachings, *Moinzadeh* is found to provide new prior art teachings that would be considered important to a reasonable examiner in evaluating the patentability of claim 5 (ultimately dependent upon claim 1). Accordingly, <u>*McWalter, Firman, and Moinzadeh* raise a substantial new question of patentability</u> with respect to claim 5.

<u>Issue 6</u>

The *Request* asserts *McWalter* in view of *Firman* and *Small* raises a substantial new question of patentability *(Request: page 14, Ground 6; pages 52-55, section VI.H.; Appendix BB)* with regard to claim 25.

Claim 25 is proposed as being obvious over *McWalter* in view of *Firman* and *Small (Request: page 14, Ground 6; pages 52-55, section VI.H.; Appendix BB)*.

*Small* provides additional teachings that are viewed in conjunction with the disclosures of

*McWalter* and *Firman* (see above). As revealed in the above analysis the disclosures of *McWalter* and

*Firman* raise a substantial new question of patentability with respect to claims 1-4, 7-24, and 26-30.

Therefore, as now presented, these additional teachings were not previously considered in the

prosecution that led to the reexamination requested patent as they are viewed in a new light and not

merely cumulative to prior art already considered by the Office (*Small* has not been considered along

with *McWalter* and *Firman* as now presented).

In light of these teachings, *Small* is found to provide new prior art teachings that would be

considered important to a reasonable examiner in evaluating the patentability of claim 25 (ultimately

dependent upon claim 17). Accordingly, <u>*McWalter, Firman, and Small* raise a substantial new question</u>

<u>of patentability</u> with respect to claim 25.


<u>Issue 7</u>

The *Request* asserts *Firman* in view of *McWalter* raises a substantial new question of

patentability *(Request: page 14, Ground 7; pages 55-61, section VI.I.; Appendix CC)* with regard to claims

1-4, 7-24, and 26-30.

Claims 1-4, 7-24, and 26-30 are proposed as being obvious over *Firman* in view of *McWalter*

*(Request: page 14, Ground 7; pages 55-61, section VI.I.; Appendix CC).*

For the same reasons discussed above for Issue 4, the cited prior art <u>*Firman* and *McWalter* raise</u>

<u>a substantial new question of patentability</u> with respect to claims 1-4, 7-24, and 26-30.


<u>Issue 8</u>

Application/Control Number: 90/019,983                                    Page 19
Art Unit: 3992

The *Request* asserts *Firman* in view of *McWalter* and *Moinzadeh* raises a substantial new

question of patentability *(Request: page 14, Ground 8; pages 61-64, section VI.J.; Appendix CC)* with

regard to claim 5.

Claim 5 is proposed as being obvious over *Firman* in view of *McWalter* and *Moinzadeh (Request:*

*page 14, Ground 8; pages 61-64, section VI.J.; Appendix CC)*.

For the same reasons discussed above for Issue 5, the cited prior art <u>*Firman*, *McWalter*, and</u>

<u>*Moinzadeh* raise a substantial new question of patentability</u> with respect to claim 5.


<u>Issue 9</u>

The *Request* asserts *Firman* in view of *McWalter* and *Small* raises a substantial new question of

patentability *(Request: page 14, Ground 9; pages 65-68, section VI.K.; Appendix CC)* with regard to claim

25.

Claim 25 is proposed as being obvious over *Firman* in view of *McWalter* and *Small (Request:*

*page 14, Ground 9; pages 65-68, section VI.K.; Appendix CC)*.

For the same reasons discussed above for Issue 6, the cited prior art <u>*Firman*, *McWalter*, and</u>

<u>*Small* raise a substantial new question of patentability</u> with respect to claim 25.


### *Affidavits, Declarations, or Other Written Evidence*

For support, the Request for Reexamination of 06/06/2025 makes reference to the Declaration

of Dr. Andrew Wolfe, Ph.D. (Exhibit 1002). The declarations are considered and made of record.

Affidavits or declarations or other written evidence which explain the contents or pertinent

dates of prior art patents or printed publications in more detail may be considered in reexamination

(MPEP 2258 I.E). However, any rejection must be based upon the prior art patents or printed

publications as explained by the affidavits or declarations or other written evidence. The rejection in

Application/Control Number: 90/019,983                                                                Page 20
Art Unit: 3992

such circumstances cannot be based on the affidavits or declarations or other written evidence as such,

but must be based on the prior art patents or printed publications.

In this reexamination, the Wolfe Declaration analyzes the teachings of the cited references with

regard to the reexamination challenged claims and further explains the contents of the prior art patents

and printed publications in more detail.


### 35 USC 325(d)

A review of the post grant history for the '367 patent indicates that there have been no other

Office post grant challenges involving the patent (Reexamination Proceedings or Inter Partes Review,

Post Grant Review, Covered Business Method proceedings). Accordingly, a determination of whether to

exercise discretion to reject the request pursuant to 35 USC 325(d) is not applicable.


### Correspondence Information

**All** correspondence relating to this *ex parte* reexamination proceeding may be submitted via:

Electronically:         Registered users may submit via Patent Center
                        https://patentcenter.uspto.gov/.

By Mail to:             Mail Stop *Ex Parte* Reexam
                        Central Reexamination Unit
                        Commissioner for Patents
                        United States Patent & Trademark Office
                        P.O. Box 1450
                        Alexandria, VA 22313-1450

By FAX to:              (571) 273-9900
                        Central Reexamination Unit

By hand:                Customer Service Window
                        Knox Building
                        501 Dulany Street
                        Alexandria, VA 22314

For Patent Center transmissions, 37 CFR 1.8(a)(1)(i)(C) and (ii) states that correspondence (except for a
request for reexamination and a corrected or replacement request for reexamination) will be considered

Application/Control Number: 90/019,983                                                  Page 21
Art Unit: 3992

timely filed if (a) it is transmitted via the Office's electronic filing system in accordance with 37 CFR 1.6(a)(4) , and (b) includes a certificate of transmission for each piece of correspondence stating the date of transmission, which is prior to the expiration of the set period of time in the Office action.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to WILLIAM H WOOD whose telephone number is (571)272-3736. The examiner can normally be reached Monday-Friday 7am-3pm. If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Alexander Kosowski can be reached on (571)272-3744. For all general inquires the CRU main phone number is (571)272-7705.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/William H. Wood/

Reexamination Specialist, Art Unit 3992

Conferee:

/RACHNA S DESAI/
Reexamination Specialist, Art Unit 3992

/ALEXANDER J KOSOWSKI/
Supervisory Patent Examiner, Art Unit 3992