# EXHIBIT U

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,866 | 02/26/2025 | 10862764 | 1007-005EPR1 | 8955 |

192827        7590        11/19/2025

Avantech Law, LLP
80 S 8th St, Suite 900
Minneapolis, MN 55402

| EXAMINER |
|---|
| ROSWELL, MICHAEL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/19/2025 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

SLATER MATSIL, LLP
17304 Preston Rd., Suite 900
Dallas, TX 75252-5680

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,866* .

PATENT UNDER REEXAMINATION  *10862764* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

Application/Control Number: 90/019,866                                                              Page 2
Art Unit: 3992

## DETAILED ACTION

The present application is being examined under the pre-AIA first to invent provisions.

The prior Office Action, mailed 28 May 2025, addressed claims 1-19 of US Patent 10,862,764 to **Ricci** ("the '764 Patent"), for which it had been determined in the Order Granting *Ex Parte* Reexamination (hereafter the "Order") mailed 28 April 2025 that at least one substantial new question of patentability was raised in the Request for *Ex Parte* Reexamination filed on 26 February 2025 (hereafter the "Request").

The instant submission, filed 28 August 2025, maintains ordered claims 1-19 and adds new claims 21-54.

**Claims 1-19** are rejected herein.

**Claims 21-54** are found to be patentable.

**Claim 20** is not subject to the current reexamination.

This is a **Final Office Action**.

### *Reexamination*

The Patent Owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving US Patent 10,862,764 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding through the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that reexamination proceedings

Application/Control Number: 90/019,866                                    Page 3
Art Unit: 3992

"will be conducted with special dispatch" (37 CFR 1.550(a)).  Extension of time in *Ex Parte*

reexamination proceedings are provided for in 37 CFR 1.550(c).

    In order to ensure full consideration of any amendments, affidavits or declarations, or

other documents as evidence of patentability, such documents must be submitted in response

to this Office Action.  Submissions after the next Office Action, which is intended to be a Final

Action, will be governed by the requirements of 37 CFR 1.116, after final rejection and 37 CFR

41.33 after appeal, which will be strictly enforced.

    Patent Owner is notified that any proposed amendment to the specification and/or claims

in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally

presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR

1.20(c).

### References Submitted by Requester

    The following four references have been cited as establishing a substantial new question

of patentability, as discussed in the Order mailed 28 April 2025:

- **Chutorash** – PCT Publication WO 2009/073806 A2, published 11 June 2009

- **Smith** – US Patent 6,919,821 B1, published 19 July 2005

- **Burghardt** – German Patent DE 102009021138 A1, published 18 November 2010

- **Malawey** – US Publication 2008/0266552 A1, published 30 October 2008

### Priority

    As discussed in the Request at 6-7, the '764 Patent (formerly US Application

16/243,051) asserts priority from a chain of 13 applications.  Of these applications, the earliest

filed was US Provisional Application 61/560,509, on 16 November 2011.  Assuming *arguendo*

Application/Control Number: 90/019,866                                          Page 4
Art Unit: 3992

that the '764 Patent maintains the benefit of such date, the references cited in the Request and

applied herein all predate 16 November 2011 and qualify as prior art at least under pre-AIA 35

USC 102(e).


### Claim Summary

The status of the claims in this *Ex Parte* Reexamination proceeding are as follows:

- **Claims 1-19 and 21-54 are** subject to the current reexamination.

- **Claim 20 is not** subject to the current reexamination.

- **Claims 1-19 are rejected**, as discussed below.

- **Claims 21-54 are found to be patentable**, as discussed below.


### Response to Arguments

Patent Owner's arguments filed 28 August 2025 have been considered but are not

persuasive.

Patent Owner argues with respect to the prior interpretation of the terms "vehicle

sensors" and "non-vehicle sensors" in the remarks at 13-14.  Patent Owner alleges that the

interpretation set forth in the prior Office Action was improper "because it contradicts the claim

language itself" (remarks at 13).  Patent Owner asserts that

> The claim explicitly states that "the ***vehicle sensors are sensors associated with the
> vehicle*** configured to provide information to the vehicle control system that determine or
> provide information about an environment in which the vehicle is operating," while "the
> ***non-vehicle sensors are sensors not associated with the vehicle*** configured to
> provide information to the vehicle control system."

Patent Owner at 13 further argues that an identified subset of the vehicle subsystems of

**Chutorash**, namely "a breathalyzer, occupancy sensor, light sensor, rain sensor, and

temperature sensor", should not be considered "non-vehicle sensors", as such sensors are

"repeatedly and consistently" treated by **Chutorash** "as part of the vehicle itself and fails to

describe any 'sensors not associated with the vehicle.'"  The Examiner respectfully disagrees with Patent Owner's assertions.  With respect to the interpretation of "vehicle sensors" and "non-vehicle sensors", the 28 May 2025 Office Action states

> the '764 Patent discusses "vehicle sensors" and "non-vehicle sensors" at col. 11, lines 18-40.  While not explicitly defined, the '764 Patent asserts that vehicle sensors "may include one or more sensors for providing information to the vehicle control system 204 that determine or provide information about the environment 100 in which the vehicle is operating", and that non-vehicle sensors "can be any type of sensor that isn't currently associated with the vehicle", such as "sensors in a traffic system operated by a third party that provides data to the vehicle control system 204" and "other types of sensors which provide information about the distant environment 116 or other information about the vehicle 104 or the environment 100".  The vehicle environment is discussed at col. 9, lines 42-63, and while not explicitly defined, "can contain areas associated with a vehicle or conveyance", including the interior of a vehicle, the area surrounding the vehicle that can be detected by sensors, and "all areas beyond the sensor range", including "future locations of travel that the vehicle 104 may proceed to in the future".  As such substantial overlap occurs in the specification with respect to the terms "vehicle sensors" and "non-vehicle sensors, and as a result, such are not expressly defined or limited by the claims and specification.  Subsequently, under Broadest Reasonable Interpretation (BRI) standards, the term "vehicle sensors" will be interpreted as sensors relating to the direct operation and movement of the vehicle, while "non-vehicle sensors" will be interpreted as sensors relating to information other than the direct operation and movement of the vehicle.

Patent Owner's arguments assert that "non-vehicle sensors" cannot be "part of the vehicle itself", and that such sensors, as defined in the claim, are "not associated with the vehicle".  The Examiner contends that the phrase "associated with the vehicle", does not define physical residency within the vehicle.  The term "associated" provides a much broader context.  For example, the aforementioned "sensors in a traffic system operated by a third party that provides data to the vehicle control system" are not physically located within the vehicle, but may be said to have an association with the vehicle due to the communication between the sensors and the vehicle control system.  The specification does not explicitly define that non-vehicle sensors are those located physically outside of the vehicle.

Furthermore, as noted in the interpretation of "vehicle sensors" and "non-vehicle sensors", a "non-vehicle sensor" is defined as "other types of sensors which provide information about the distant environment 116 or other information about the vehicle 104 or the environment

100".  The environment 100 is discussed in a non-limiting fashion at col. 9, lines 43-52, as it

"**can** contain areas associated with a vehicle or conveyance" (emphasis added), and further

describes environment zone defined by interior spaces within a vehicle (trunk space, engine

compartment, etc.).  At col. 9, lines 59-61, the specification discloses that "the environment 100

may have an area 116 that includes **all areas beyond the sensor range 112**" (emphasis

added) including "future locations of travel that the vehicle 104 may proceed to in the future."

Therefore, the "environment 100", that a non-vehicle sensor may provide information about,

may be practically anywhere inside or outside of a vehicle.

As demonstrated, the claim recites that vehicle sensors "provide information to the

vehicle control system that determine or provide information about an environment in which the

vehicle is operating", and non-vehicle sensors, as shown *supra*, similarly provide information

about an environment in which the vehicle is operating.  No clear line of demarcation between

the functionality of "vehicle sensors" and "non-vehicle sensors" is drawn by the specification or

claims.  Coupled with the fact that the term "associated" has been shown to provide no bearing

on the physical location of such sensors, the Examiner contends that Patent Owner has not

shown that the interpretation provided in the 28 May 2025 Office Action was improper.  As a

result, the Examiner maintains the interpretations of "vehicle sensors" and "non-vehicle sensors"

as previously set forth.

Subsequently, Patent Owner's arguments asserting a locational distinction between

"vehicle sensors" and "non-vehicle sensors", as in the remarks at 14-16, are not persuasive.


In response to Patent Owner's argument that the Examiner's conclusion of obviousness

is based upon improper hindsight reasoning, it must be recognized that any judgment on

obviousness is in a sense necessarily a reconstruction based upon hindsight reasoning.  But so

long as it takes into account only knowledge which was within the level of ordinary skill at the

time the claimed invention was made, and does not include knowledge gleaned only from the

Application/Control Number: 90/019,866                                                              Page 7
Art Unit: 3992

applicant's disclosure, such a reconstruction is proper.  See *In re McLaughlin*, 443 F.2d 1392, 170 USPQ 209 (CCPA 1971).

Furthermore, while a "reasonable expectation of success" was not explicitly articulated by the 28 May 2025 Office Action, such expectation was indeed implied (it is noted that MPEP 2143.02(I) states that "reasonable expectation of success can be implicitly shown via the prior art teachings or as part of the obviousness analysis"), and may be seen to exist.  In support of the combination of **Chutorash** and **Smith**, the Office Action states

> **Smith** discloses methods and systems for collecting meteorological data for use with vehicle systems, similar to **Chutorash**

and

> Therefore, it would have been obvious to one of ordinary skill in the art prior to the effective filing date of the instant invention to modify the vehicular data collection and processing systems of **Chutorash** to include the third-party services of **Smith**.

Both the **Chutorash** and **Smith** systems are directed towards collecting and using data for vehicle control systems.  Furthermore, **Chutorash** at [0068] explicitly states that "vehicle control system 106 may be configured to communicate (e.g., wired, wirelessly) with any suitable remote source (e.g., that includes a transceiver) that is able to interface with vehicle control system 106.  **Smith** discloses such a source.  As such, it would be expected that there would be a likelihood of success in combining **Chutorash** and **Smith** to meet the limitations of the claimed invention, and such expectation was at least implied by the prior Office Action.  See MPEP § 2143.02.

Similar arguments with respect to **Chutorash** and **Burghardt/Malawey** are made in remarks at 17-18.  The Examiner contends that the rationales provided are similarly proper, as such rationales take into account only knowledge which was within the level of ordinary skill at the time the claimed invention was made, and does not include knowledge gleaned only from the applicant's disclosure, and provided implied expectation of success based on the similarities between the references.

Patent Owner further argues that "there is no credible reason why a person of ordinary skill in the art would have been motivated to combine **Chutorash** and **Smith** to arrive at the claimed invention" and that "importing **Smith**'s in-vehicle sensor model into **Chutorash**'s system would be redundant of **Chutorash**'s own on-board vehicle sensors and would fail to yield the non-vehicle sensor information required by the claims".  The Examiner respectfully disagrees.  Patent Owner has mischaracterized **Smith**; while in-vehicle sensors are utilized to gather meteorological information, such information is gathered by a plurality of vehicles and is sent to a data collection and forecasting service, where the data from the plurality of sources is processed and sent back to the vehicles (see **Smith** at col. 3, lines 39-42).  Furthermore, **Smith** explicitly states that such data (gathered from sensors external to an individual user's vehicle) "may be used to warn other vehicles traveling toward the area about wet driving conditions ahead" and that "weather data, such as forecasts for areas not covered by sensor-equipped vehicles, can be relayed back to vehicles that participate in data collection."  As such, the system of **Smith** would allow for the access of data not capable of being gathered by the in-vehicle sensors of **Chutorash**, and would allow a user to become aware of driving conditions and weather forecasts for areas outside of that the vehicle currently resides.

Likewise, at 16, Patent Owner argues that the data "for areas not covered by sensor-equipped vehicles" is not "data associated with one or more users or associated with one or more vehicles".  Again, the term "associated" does not explicitly connote a physical or locational correlation.  That such data may be of interest to a user is enough to deem such data "associated" with a user.  Regardless, **Smith** explicitly discloses collecting data from a plurality of vehicles, processing such data, and transmitting data based on that collected (see col. 3, lines 46-59).  Such data is "associated with one or more users or associated with one or more vehicles" as claimed.

Patent Owner's arguments at 16 with respect to "authorized vehicles or authorized users", as in claim 9, are not persuasive.  The term "authorized" only occurs in the limitations of claim 9.  The specification does not disclose any particular authorization or security methodology that would limit the term "authorization" to Patent Owner's assertion that authorization must be "required, analyzed, or granted".  Authorization, in the plain meaning of the term, is the allowing of access or permission to access something.  While the term "authorization" does not exist in **Smith**, users "participating" in the system of **Smith** are as such "authorized" to access its data.  Furthermore, **Smith** explicitly states at col. 3, lines 49-59 that a way to incentivize users to participate in data collection for a weather service would be to expand the areas of weather-related information such users would be "entitled to".  The expansion of data to only a certain subset of users is analogous to an "authorization" to access such data.

Patent Owner generally asserts that "the motivation to modify **Chutorash** based on **Smith** alleged in the Office Action is conclusory, based on impermissible hindsight, and lacks an articulation of a reasonable expectation of success for similar reasons as discussed with respect to claim 3."  Such arguments have been addressed above, and any similar arguments made in the remarks are deemed responded to.

The remarks at 17 argue that "**Chutorash** does not disclose 'health data sensors' – let alone 'health data sensors configured to collect data related to health of a driver or passenger located inside the vehicle'", asserting that "[a] breathalyzer does not measure health data of a driver or passenger".  The Examiner respectfully disagrees.  The specification of the '764 Patent at col. 23, lines 28-39 states that health data "may include any type of physical characteristic associated with the user.  For example, a heart rate, a blood pressure, a temperature, or other types of health data may be obtained and stored in portion 828."  The specification further discloses, *id.*, that "if some function of the user's health deviates from the norm, the vehicle 104 may be able to determine there is a problem with the person and react to the data."  First, the

specification is open-ended with respect to what qualifies as "health data", utilizing language such as "for example" and "other types", as seen in the cited passage.  The blood alcohol level of a driver is seen to be a "type of physical characteristic associated with the user".  Second, that the specification clearly sets forth that the tracking of health data is used to "determine there is a problem with the person and react to the data" is precisely the type of scenario in which a breathalyzer would be used in a vehicle subsystem, as it would be useful to prevent unsafe operation of the vehicle.

### *Claim Rejections*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis (i.e., changing from AIA to pre-AIA) for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

The following are quotations from the MPEP regarding the types of rejections to be utilized below:

### *35 USC § 102*

The following is a quotation of the appropriate paragraphs of pre-AIA 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

### Chutorash

**Claims 1, 2, 4-8, 10-14, and 19 are rejected** under pre-AIA 35 U.S.C. 102(b) as being

anticipated by **Chutorash** (PCT Publication WO 2009/073806 A2, published 11 June 2009).


**Regarding independent claim 1**, **Chutorash** discloses

*A vehicle system* (**Chutorash** discloses a "control system for mounting in a vehicle",

Abstract)*, comprising:*

*a vehicle* (**Chutorash** illustrates a vehicle that includes "a number of subsystems", at

Fig. 1 and [0046])*;*

*a communication network* (**Chutorash** discloses at least communication device 102 and

data bus 1002 for facilitating data communications within the vehicle, at [0052-0053] and

[0101])*;*

*a vehicle control system* (vehicle control system 106 may be used to control vehicle

subsystems, as at [0049]*;*

*a power control module* (**Chutorash** discloses a physical connection to a portable

electronic device that allows for power charging, at [0050])*;*

*a device configured to communicate with the vehicle control system, the device*

*connected to the power control module and attached to the vehicle* (**Chutorash** discloses a

portable electronic device that may communicate with the vehicle control system and is

physically connected to a power control module, at [0050].  The portable electronic device may

be attached to the vehicle through holder 302, at [0050] and Fig. 3)*; and*

*a plurality of sensors configured to communicate via the communication network with the*

*vehicle control system and the device, wherein* (a plurality of sensors provide information to the

vehicle control system over a communication network, at [0101].  Vehicle status information,

including sensor data, may be communicated to the portable electronic device, at [0101]).

*wherein the vehicle control system is configured to use computing capability of the device* (the portable device may process information, files, signals, etc. provided from the vehicle control system, at [0093-0094]).


**Regarding claim 2**, **Chutorash** discloses

*The vehicle system according to claim 1, wherein:*

*the plurality of sensors comprises vehicle sensors and non-vehicle sensors* (the '764 Patent discusses "vehicle sensors" and "non-vehicle sensors" at col. 11, lines 18-40.  While not explicitly defined, the '764 Patent asserts that vehicle sensors "may include one or more sensors for providing information to the vehicle control system 204 that determine or provide information about the environment 100 in which the vehicle is operating", and that non-vehicle sensors "can be any type of sensor that isn't currently associated with the vehicle", such as "sensors in a traffic system operated by a third party that provides data to the vehicle control system 204" and "other types of sensors which provide information about the distant environment 116 of other information about the vehicle 104 or the environment 100".  The vehicle environment is discussed at col. 9, lines 42-63, and while not explicitly defined, "can contain areas associated with a vehicle or conveyance", including the interior of a vehicle, the area surrounding the vehicle that can be detected by sensors, and "all areas beyond the sensor range", including "future locations of travel that the vehicle 104 may proceed to in the future".  As such substantial overlap occurs in the specification with respect to the terms "vehicle sensors" and "non-vehicle sensors, and as a result, such are not expressly defined or limited by the claims and specification.  Subsequently, under Broadest Reasonable Interpretation (BRI) standards, the term "vehicle sensors" will be interpreted as sensors relating to the direct operation and movement of the vehicle, while "non-vehicle sensors" will be interpreted as sensors relating to information other than the direct operation and movement of the vehicle.

**Chutorash** at [0101] discloses several types of sensors that provide information relating to the direct operation and movement of the vehicle, such as wheel speed, transmission, impact, speed, and air bag sensors, as well as disclosing several types of sensors that provide information that does not relate to the direct operation and movement of the vehicle, such as a breathalyzer, occupancy sensor, light sensor, rain sensor, and temperature sensor, which provide information relating to the occupants and/or external environment in which the vehicle is operating),

*the vehicle sensors are sensors associated with the vehicle configured to provide information to the vehicle control system that determine or provide information about an environment in which the vehicle is operating* (as discussed *supra*, the specification conflictingly describes "vehicle sensors" and "non-vehicle sensors".  Based on the BRI of "vehicle sensors" discussed above, the "environment in which the vehicle is operating" is interpreted as the sensed information relating directly to the operation and movement of the vehicle.

As such, **Chutorash** discloses several types of sensors that provide information relating to the direct operation and movement of the vehicle, such as wheel speed, transmission, impact, speed, and air bag sensors, at [0101])*, and*

*the non-vehicle sensors are sensors not associated with the vehicle configured to provide information to the vehicle control system* (based on the BRI of "non-vehicle sensors", as discussed above, "sensors not associated with the vehicle" is interpreted as sensors providing information not relating to the direct operation and movement of the vehicle.  As such, **Chutorash** discloses several types of sensors that provide information that does not relate to the direct operation and movement of the vehicle, such as a breathalyzer, occupancy sensor, light sensor, rain sensor, and temperature sensor, at [0101]).

**Regarding claim 4**, **Chutorash** discloses

*The vehicle system according to claim 1, wherein:*

Application/Control Number: 90/019,866                                                    Page 14
Art Unit: 3992

*said vehicle system comprises a plurality of predefined areas, the plurality of predefined areas comprises a first predefined area* (**Chutorash** discloses wherein the vehicle system comprises a plurality of defined areas, seen through the vehicle subsystems of [0101], including the engine, wheels, transmission, brakes, airbags, etc.)*,*

*the plurality of sensors comprises a first sensor* (**Chutorash** at [0101] discloses a plurality of sensors relating to various vehicle subsystems)*,*

*the first sensor is positioned in the first predefined area* (it is conventionally understood that sensors are disposed in a location proximate to the environment they are tasked with monitoring.  For example, an anti-lock brake system sensor is typically located in the wheel hub of a vehicle)*, and*

*the first sensor is configured to collect and send environmental information about the first predefined area to at least one of the vehicle control system or device* (information provided by the sensors may be communicated to the vehicle control system or to a portable electronic device, at [0101]).


**Regarding claim 5**, **Chutorash** discloses

*The vehicle system according to claim 4, wherein*

*the first sensor is a vehicle sensor* (**Chutorash** discloses a plurality of vehicle sensors, at [0101])*, and*

*the vehicle sensor is configured to provide information to the vehicle control system that determines or provides information about an environment in which the vehicle is operating* (the vehicle sensors of **Chutorash** provide information to the vehicle control system, at [0101].  Such information is related to the direct operation and movement of the vehicle, and thus pertains to the environment in which the vehicle is operating).


**Regarding claim 6**, **Chutorash** discloses

*The vehicle system according to claim 1, wherein*

*the communication network is a wireless system operable to communicate inside and*

*outside the vehicle* (**Chutorash** discloses communication device 120 that may establish

wireless communication links through a variety of protocols, such that data may be sent and

received "from connected devices and remote sources", at [0053]).

**Regarding claim 7**, **Chutorash** discloses

*The vehicle system according to claim 1, wherein*

*the vehicle control system is configured to communicate through the communication*

*network to a server positioned outside the vehicle* (the vehicle control system 106 may

communicate to "any suitable remote source", including remote server 154 or "various other

remote data sources", at [0068]).

**Regarding claim 8**, **Chutorash** discloses

*The vehicle system according to claim 7, wherein*

*the server is a cloud computing system or cloud storage unit configured to permit the*

*vehicle control system to gain access to further computing capabilities or storage* (**Chutorash**

discloses the synchronization of data between the vehicle control system and a remote data

source, such as an enterprise server accessible via the Internet, at [0082]).

**Regarding claim 10**, **Chutorash** discloses

*The vehicle system according to claim 1, wherein*

*the communication network is a wide area communication network configured to allow*

*the vehicle control system to communicate outside the vehicle, the communication network is*

*one or more of the following: cellular communication network, satellite telephone communication*

*network, and wireless wide area network* (**Chutorash** at [0053] discloses that communication

device 120 of vehicle control system 106 may utilize various communications protocols,

including cellular phone protocol, IEEE protocols 802.11, 802.15, and/or 802.16, or "any other

suitable wireless technology").

**Regarding claim 11**, **Chutorash** discloses

*The vehicle system according to claim 1, wherein*

*the device is a mobile device, the mobile device configured to be permanently or*
*removably positioned inside the vehicle* (**Chutorash** discloses connecting portable electronic

device 116 to the vehicle system, where the device may be a mobile phone, PDA, media player,

etc., at [0068]. Such device may be "removably positioned" inside the vehicle in holder 302, at

[0050]).

**Regarding claim 12**, **Chutorash** discloses

*The vehicle system according to claim 1, wherein*

*the device is configured to receive user input either through touch input, interface*
*buttons, or gesture capture* (**Chutorash** discloses wherein a vehicle touch screen may be used

to provide touch screen features to the portable electronic device or "send other control signals

to the portable device", at [0092]).

**Regarding claim 13**, **Chutorash** discloses

*The vehicle system according to claim 1, wherein*

*the device comprises device data, the device data is data used in conjunction with the*
*device* (**Chutorash** discloses that the vehicle control system may access data from the portable

electronic device, at [0051]), *and*

*the device data including one or more of the following: multimedia data, preferences*
*data, bioinformatics, and data associated with a user of the device* (data accessible by the

vehicle control system from the portable electronic device includes media files, phonebook data files, voice information, calendar data, or "any other accessible data for use by vehicle control system 106", at [0051]).

      **Regarding claim 14**, **Chutorash** discloses

*The vehicle system according to claim 4, wherein*

*the plurality of predefined areas comprises a second predefined area* (**Chutorash** discloses wherein the vehicle system comprises a plurality of defined areas, seen through the vehicle subsystems of [0101], including the engine, wheels, transmission, brakes, airbags, etc.)*,*

*the plurality of sensors comprises a second sensor* (**Chutorash** at [0101] discloses a plurality of sensors relating to various vehicle subsystems)*,*

*the second sensor is positioned in the second predefined area* (it is conventionally understood that sensors are disposed in a location proximate to the environment they are tasked with monitoring. For example, an anti-lock brake system sensor is typically located in the wheel hub of a vehicle)*, and*

*the second predefined area is located outside the vehicle and is configured to collect and send information about the second predefined area to at least one of the vehicle control system or device* (the term "outside the vehicle" is not expressly defined by the claims or specification. For example, the '764 Patent at col. 9, lines 47-52 discloses that a "first zone 108 may be inside a vehicle 104". Element 108 of Fig. 1 points generally to the cabin of vehicle 104. Col. 9, lines47-52 further states that zone 108 "includes any interior space, trunk space, engine compartment, or other associated space within or associated with the vehicle 104" and that "interior environment 108 can be defined by one or more techniques, for example, geo-fencing". As such, under BRI standards, "inside a vehicle" is interpreted as spaces that are known to be considered the "interior" of a vehicle, such as the cabin, trunk space, and engine compartment of col. 9, lines 47-52. Spaces not "inside a vehicle" may be considered "outside a vehicle",

Application/Control Number: 90/019,866                                    Page 18
Art Unit: 3992

including elements attached to but considered to be "external" to the vehicle, such as the

vehicle roof, hood, bumpers, etc.  **Chutorash** at [0101] discloses sensors suitable to detect

vehicle impacts/collisions and communicate such information to the vehicle control system.

Such sensors are conventionally located at least in the bumper area of a vehicle, and are

therefore considered to be "external" sensors).

> **Regarding claim 19**, **Chutorash** discloses
>
> *The vehicle system according to claim 1, further comprising:*
>
> *a storage system configured to store system data, the system data being data needed*

for the vehicle control system to control the vehicle (**Chutorash** discloses a memory device

configured to store information and data accessible and usable by the vehicle control system, at

[0059]).

### *35 USC § 103*

The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed
> or described as set forth in section 102, if the differences between the subject
> matter sought to be patented and the prior art are such that the subject matter as
> a whole would have been obvious at the time the invention was made to a
> person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negated by the manner in which the invention was
> made.

**<u>Chutorash and Smith</u>**

**<u>Claims 3 and 9 are rejected</u>** under pre-AIA 35 U.S.C. 103(a) as being unpatentable

over **Chutorash** in view of **Smith** (US Patent 6,919,821 B1).

**Regarding claim 3**, **Chutorash** discloses *The vehicle system according to claim 2.*

**Chutorash** fails to explicitly disclose

*wherein the non-vehicle sensor information is controlled by third parties and includes at least one of weather tracking data, user health tracking data, maintenance data of the vehicle.*

While **Chutorash** does disclose sensors for monitoring at least weather tracking and user health tracking data (through the rain sensor, temperature sensor, and breathalyzer of [0101], **Chutorash** is silent with respect to the use of third-party "non-vehicle sensor information", as claimed.

**Smith** discloses methods and systems for collecting meteorological data for use with vehicle systems, similar to **Chutorash**.  Furthermore, **Smith** discloses a "service" for collecting and processing meteorological data from a plurality of vehicles traveling along a road network.  Such data may be "collected by some vehicles in one area" and "may be used to warn other vehicles traveling toward the area" about the driving conditions ahead.  See **Smith**, col. 3, lines 40-46.  As **Smith** aggregates, processes, and disseminates data from/to a plurality of vehicles, the service of **Smith** is a "third-party" service.

Therefore, it would have been obvious to one of ordinary skill in the art prior to the effective filing date of the instant invention to modify the vehicular data collection and processing systems of **Chutorash** to include the third-party services of **Smith**.  Such a combination necessarily amounts to a combination of prior at elements according to known methods to yield predictable results.


**Regarding claim 9**, **Chutorash** and **Smith** disclose

*The vehicle system according to claim 7, wherein the server comprises stored data*
(**Chutorash** discloses the use of a server for storing data relevant to a user of the vehicle, as the vehicle control system 106 may communicate to "any suitable remote source", including remote server 154 or "various other remote data sources", at [0068]) *and*

*the stored data comprises data associated with one or more users or associated with one or more vehicles* (**Chutorash** at [0081] discloses a server for storing user-specific data, such as calendaring data).

**Chutorash fails to explicitly disclose**

*the stored data being exchanged and accessible by a plurality of authorized vehicles or authorized users.*

**Smith** discloses methods and systems for collecting meteorological data for use with vehicle systems, similar to **Chutorash**.  Furthermore, **Smith** discloses data collected from a plurality of vehicles being exchanged and accessible by participating vehicles and/or participating drivers of the service, at col. 3, lines 46-59.

Therefore, it would have been obvious to one of ordinary skill in the art prior to the effective filing date of the instant invention to modify the vehicular data collection and processing systems of **Chutorash** to include the third-party services including authorized vehicles/users as in **Smith**.  Such a combination necessarily amounts to a combination of prior at elements according to known methods to yield predictable results.


**Chutorash and Burghardt**


**Claims 15 and 16 are rejected** under pre-AIA 35 U.S.C. 103(a) as being unpatentable over **Chutorash** in view of **Burghardt** (German Patent DE 102009021138 A1).


**Regarding claim 15, Chutorash** discloses *The vehicle system according to claim 1.*
**Chutorash** further discloses the use of a breathalyzer for monitoring the health data of a driver or passenger of the vehicle, at [0101].

However, **Chutorash** fails to explicitly disclose

*wherein the plurality of sensors comprise health data sensors positioned in an interior*

*space of the vehicle, the health data sensors configured to collect data related to health of a*

*driver or passenger located inside the vehicle.*

**Burghardt** discloses systems and methods for providing data sensors located within a

vehicle, similar to **Chutorash**.  Furthermore, **Burghardt** discloses health data sensors

integrated into the steering wheel of a vehicle suitable to record the health data of a driver, at

[0007], [0010], and [0024].

Therefore, it would have been obvious to one of ordinary skill in the art prior to the

effective filing date of the instant invention to modify the vehicular data collection and

processing systems of **Chutorash**, including health data sensors, to include the interior

positioned health data sensors of **Burghardt**.  Such a combination necessarily amounts to a

combination of prior at elements according to known methods to yield predictable results.


**Regarding claim 16**, **Chutorash** and **Burghardt** disclose

*The vehicle system according to claim 15, wherein the health data sensor is a sensor in*

*a steering wheel configured to measure health telemetry of the driver positioned in proximity to*

*the steering wheel* (**Burghardt** discloses health data sensors integrated into the steering wheel

of a vehicle suitable to record the health data of a driver, at [0007], [0010], and [0024]).


**Chutorash and Malawey**


**Claims 17 and 18 are rejected** under pre-AIA 35 U.S.C. 103(a) as being unpatentable

over **Chutorash** in view of **Malawey** (US Publication 2008/0266552 A1).

Application/Control Number: 90/019,866                                      Page 22
Art Unit: 3992

**Regarding claim 17**, **Chutorash** discloses *The vehicle system according to claim 1.* **Chutorash** further discloses a plurality of data sensors, including safety data sensors such as airbag status sensors, at [0101].

**Chutorash** fails to explicitly disclose such*, wherein the plurality of sensors comprise safety data sensors positioned in an interior space of the vehicle, the safety data sensors configured to collect data related to safety of a driver or passenger located inside the vehicle.*

**Malawey** discloses systems and methods for providing data sensors within a vehicle, similar to **Chutorash**.  Furthermore, **Malawey** discloses wherein sensors positioned in the interior space of the vehicle are used to monitor a driver's head pose to determine an attention level, in an effort to reduce automobile accidents caused by driver distractions (i.e., collecting and utilizing safety data).  See **Malawey**, [0002], [0003], and [0016].

Therefore, it would have been obvious to one of ordinary skill in the art prior to the effective filing date of the instant invention to modify the vehicular data collection and processing systems of **Chutorash** to include the interior positioned safety data sensors of **Malawey**.  Such a combination necessarily amounts to a combination of prior at elements according to known methods to yield predictable results.

**Regarding claim 18, Chutorash** and **Malawey** disclose

*The vehicle system according to claim 17, wherein the safety data sensor is an optical sensor positioned to capture the driver's position and attention to determine the driver's focus on a road ahead* (**Malawey** discloses wherein sensors positioned in the interior space of the vehicle are used to monitor a driver's head pose to determine an attention level, in an effort to reduce automobile accidents caused by driver distractions (i.e., collecting and utilizing safety data).  See **Malawey**, [0002], [0003], [0016], and [0017]).

### *Patentable Subject Matter*

Newly added claims 21-54 are found to be patentable in light of the **Chutorash**, **Smith**, **Burghardt**, and **Malawey** references.

**Regarding claim 21**, **Chutorash**, **Smith**, **Burghardt**, and **Malawey**, alone or in combination, fail to explicitly disclose

> *The vehicle system according to claim 1, wherein an operating system of the device is configured to associate a first frame buffer with a vehicle display to present first image data on the vehicle display.*

The combination of **Chutorash** and **Smith** is used in the rejection of independent claim 1, *supra*. However, **Chutorash** and **Smith** fail to disclose the particular use of a frame buffer to present data from a portable device onto the vehicle display. **Chutorash** at [0069]-[0071] discusses reproduction of a portable device display onto that of the vehicle display. **Chutorash** states at [0070] that the portable device "may generally be configured to send an image of one or more portable display portions 604,606 to vehicle control system" and "an image representing the entire display shown on the portable device may be transmitted to a vehicle system". Such passages do not disclose or make inherent that image reproduction is accomplished through the use of a frame buffer.

**Chutorash** further discusses the utilization of video services of the portable device by the vehicle control system, at [0087], and discloses that the portable device may be configured to process video data and "provide the results of such processing back to vehicle control system 106 for storage and/or output (e.g., display output, audio output)." Similar to the above, [0087] do not disclose or make inherent that the disclosed video processing and providing is accomplished through the use of a frame buffer.

**Smith**, **Burghardt**, and **Malawey** are not relevant to the display of data provided by a portable device on the display of a vehicle.

Subsequently, **claim 21** is found to be patentable. **Claims 22-26** depend from claim 21, and as a result are found to be patentable under similar rationale.


**Regarding independent claim 27**, **Chutorash**, **Smith**, **Burghardt**, and **Malawey** fail to disclose

> *a plurality of sensors configured to communicate via the communication network with the vehicle control system and the device, wherein a first sensor of the plurality of sensors is configured to communicate with the vehicle control system via a wired connection and wherein a second sensor of the plurality of sensors is configured to communicate with the device via a wireless connection.*

All of **Chutorash**, **Smith**, **Burghardt**, and **Malawey** disclose, in one form or another, the transmission of sensor data, typically to a vehicle control system. Such sensors may be wired (as in **Chutorash** at [0117], sensor data is received by the vehicle control system over a data bus) or wireless (weather data collected remotely from a user's vehicle may be processed and sent to the user's vehicle from a remote service, at col. 3, lines 23-32 and col. 3, lines 40-47, and seen in Fig. 1). However, none of **Chutorash**, **Smith**, **Burghardt**, or **Malawey** disclose wherein wireless sensor data is received at the portable device. At best, the combination of **Chutorash** and **Smith** disclose receipt of wireless sensor information by a vehicle control system.

**Chutorash** does disclose utilizing the GPS receiver of the portable device to provide location information for the vehicle, at [0118]. However, the '764 Patent at col. 3, lines 54-58. discloses that a sensor "refers to a converter or an instrument that measures a physical quantity or quality and converts that measurement into a signal which can be read, observed, stored, and/or understood by a an observer or by another instrument." The satellites of a GPS system, while remote from the GPS receiver (in wireless communication), are not "sensors" as defined in the '764 Patent. GPS satellites do not measure any physical quantity or quality and provide any conversion of that measurement. Such satellites typically transmit time-stamped location

signals that a GPS receiver may utilize to determine its own location.  As such, GPS satellites

may not be considered sensors, as the use of GPS information by the portable device of

**Chutorash** does not amount to *wherein a second sensor of the plurality of sensors is*

*configured to communicate with the device via a wireless connection*, as claimed.

**Smith**, **Burghardt**, and **Malawey** do not disclose the receipt of sensor data at a portable

device.

As a result, **claim 27** is found to be patentable.  **Claims 28-34** depend, directly or

indirectly, from independent claim 27, and are found to be patentable under similar rationale.

**Regarding independent claim 35**, the claim recites

*a device configured to communication with the vehicle control system, the device connected to the power control module and attached to the vehicle, the device further configured to write image data into a frame buffer associated with a first vehicle screen and a second vehicle screen to create a composite display, wherein the composite display presents image data across portions of the first vehicle screen and the second vehicle screen*

Shown *supra*, **Chutorash**, **Smith**, **Burghardt**, and **Malawey** fail to disclose the writing of

image data into a frame buffer for use on a vehicle display.  Furthermore, all of **Chutorash**,

**Smith**, **Burghardt**, and **Malawey** are silent with respect to a "composite display" that "presents

image data across portions of the first vehicle screen and the second vehicle screen".  At best,

**Chutorash** at [0047] contemplates a vehicle control system including an output display that may

be of a variety of technologies, configurations, or shapes, but does not explicitly disclose that

such display may be a composite consisting of two vehicle screens.

As a result, **independent claim 35** is found to be patentable.  **Claims 36-39** depend,

directly or indirectly, from independent claim 35, and are subsequently found to be patentable

under similar rationale.

With respect to independent claim 40, **Chutorash**, **Smith**, **Burghardt**, and **Malawey** fail to explicitly disclose

> *a plurality of sensors configured to communicate via the communication network with the vehicle control system and the device, wherein the vehicle control system is configured to detect a driving deviation from stored safety parameters based on data from the plurality of sensors, and to alter the driving of the vehicle based on the driving deviation*

While **Chutorash**, **Burghardt**, and **Malawey** all disclose in some form or another the monitoring of "safety parameters" by sensors. In particular **Malawey** and **Burghardt** may be considered to disclose the detection of a "driving deviation" from stored safety parameters (as **Malawey** discloses the head pose of a driver is assessed in an attempt to minimize "driver distractions", at [0002], and **Burghardt** attempts to use a steering wheel-mounted sensor to detect conditions that my cause a vehicular accident, such as fatigue, concentration problems, or depression. See **Burghardt**, Ex. 1006, at [0012]), none of **Chutorash**, **Burghardt**, and **Malawey** disclose the altering of the driving of the vehicle based on the driving deviation. At best, **Burghardt** discloses alerting a driver that a determined condition may provide a safety risk, and "prompt[ing] him to take appropriate measures, such as stopping the vehicle, taking a break, or checking his blood sugar level" (**Burghardt**, Ex. 1006, at [0024]). Such citations do not amount to altering the driving of the vehicle based on the detected driving deviation, as claimed.

Subsequently, **independent claim 40** is found to be patentable. **Claims 41-47** depend either directly or indirectly from claim 40, and as a result are found to be patentable under similar rationale.

Similar to independent claim 40, **independent claim 48** discloses the limitation

> *wherein the vehicle control system is configured to detect a driving deviation from stored safety parameters based on data from the at least one safety sensor, and to alter the driving of the vehicle based on the driving deviation*

Application/Control Number: 90/019,866                                        Page 27
Art Unit: 3992

Such limitation has been discussed in detail with respect to **Chutorash**, **Smith**,

**Burghardt**, and **Malawey**, *supra*.  As a result, independent claim 48 is found to be patentable

for the rationale set forth with respect to independent claim 40.  **Claims 49-54** depend directly or

indirectly from claim 48, and as a result are found to be patentable under similar rationale.


### *Conclusion*

**Subsequently, claims 1-19 are rejected.  Claims 21-54 are found to be patentable.**

**All** correspondence relating to this *Ex Parte* reexamination proceeding should be

directed:


Electronically: Registered users may submit via Patent Center at https://patentcenter.uspto.gov/.

By Mail to:        Mail Stop *Ex Parte* Reexam
                   Central Reexamination Unit
                   Commissioner for Patents
                   United States Patent & Trademark Office
                   P.O. Box 1450
                   Alexandria, VA 22313-1450

By FAX to:         (571) 273-9900
                   Central Reexamination Unit

By hand:           Customer Service Window
                   Knox Building
                   501 Dulany Street
                   Alexandria, VA 22314

For Patent Center transmissions, 37 CFR 1.8(a)(1)(i)(C) and (ii) states that

correspondence (except for a request for reexamination and a corrected or replacement request

for reexamination) will be considered timely filed if (a) it is transmitted via the USPTO patent

electronic filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a certificate of

transmission for each piece of correspondence stating the date of transmission, which is prior to

the expiration of the set period of time in the Office action.

Application/Control Number: 90/019,866                                Page 28
Art Unit: 3992

Any inquiry concerning this communication should be directed by telephone to Michael

Roswell, at 571-272-4055.


/MICHAEL ROSWELL/
Primary Examiner, Art Unit 3992

Conferees:

/ALEXANDER J KOSOWSKI/
Supervisory Patent Examiner, Art Unit 3992