# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AUTOCONNECT HOLDINGS LLC, <br><br> Plaintiff, <br><br> v. <br><br> FORD MOTOR COMPANY, <br><br> Defendant. | C.A. No. 24-1327-JCG <br><br> **REDACTED PUBLIC VERSION** |

## FORD MOTOR COMPANY'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STAY

Dated: February 26, 2026

*Of Counsel:*

**BROOKS KUSHMAN P.C.**
John S. LeRoy
Christopher C. Smith
Reza Roghani Esfahani
150 W. Second St., Suite 400N
Royal Oak, MI 48067-3846
(248) 358-4400
jleroy@brookskushman.com
csmith@brookskushman.com
resfahani@brookskushman.com

**SMITH KATZENSTEIN & JENKINS LLP**

Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Counsel for Defendant Ford Motor Company*

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ............................................................................... iii

I.    NATURE AND STAGE OF THE PROCEEDINGS ...................................... 1

II.   SUMMARY OF ARGUMENT ...................................................................... 1

III.  STATEMENT OF FACTS .............................................................................. 3

    A.    The Asserted Patents and their Transfer to AutoConnect .................... 3

    B.    AutoConnect's Failure to Pay Flex and ███████████████ .......... 5

    C.    The Instant Action ................................................................................. 6

    D.    Flex Licensed Ford Under the Asserted Patents .................................. 6

    E.    Related Litigation in the Eastern District of Texas —
            *AutoConnect v. Toyota & General Motors* ........................................ 7

    F.    Post-Grant Challenges of the Asserted Patents .................................... 7

IV.   LEGAL STANDARD ..................................................................................... 9

    A.    Mandatory Stay Under 9 U.S.C. § 3 .................................................... 9

    B.    Discretionary Stay Under the Inherent Power of the Court ................. 9

V.    ARGUMENT .................................................................................................. 10

    A.    FAA Section 3 Compels a Stay in View of ███████████ ............... 10

        1.    The ownership issue in this case is a focus of ████
             ████████ ............................................................................. 11

        2.    Under California law, Ford can invoke Section 3 to
            mandate a stay under the doctrine of equitable estoppel ......... 12

    B.    Discretionary Factors Strongly Favor a Stay ...................................... 14

        1.    A Stay Would Streamline the Present Case Significantly
            by Disposing of the Case Entirely, Reducing the Number

of Asserted Patents, the Number of Asserted Claims, and/or the Accused Products ...................................................... 14

    a.    Simplification in view of ███████ ..................... 15

    b.    Simplification in view of the PTAB Proceedings ......... 18

2.    The Early Posture of this Case Weighs Strongly in Favor of a Stay ................................................................................. 19

3.    A Stay Will Not Prejudice, and Could Benefit, AutoConnect ........................................................................... 20

VI.    CONCLUSION .............................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)................................................................11

*Bechtel Corp. v. Laborers' Int'l Union of N. Am.*,
    544 F.2d 1207 (3d Cir. 1976) ........................................ 9, 10

*Brit. Telecommunications PLC v. IAC/InterActiveCorp*,
    2019 WL 4740156 (D. Del. Sept. 27, 2019) .......................... 10, 14

*Consumeron, LLC v. MapleBear Inc.*,
    2023 WL 3434002 (D. Del. May 12, 2023) ................................18

*Evident Corp. v. Church & Dwight Co.*,
    399 F.3d 1310 (Fed. Cir. 2005.......................................15

*Franklin v. Cmty. Reg'l Med. Ctr.*,
    998 F.3d 867 (9th Cir. 2021) ..........................................12

*Herrera v. Cathay Pac. Airways Ltd.*,
    104 F.4th 702 (9th Cir. 2024) .................................... 12, 13

*Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
    248 F.3d 1333 (Fed. Cir. 2001) .......................................16

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    2019 WL 3943058 (D. Del. Aug. 21, 2019)...............................19

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019) .......................................16

*Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*,
    840 F. Supp. 211 (E.D.N.Y. 1994)....................................18

*Media Techs. Licensing, LLC v. Upper Deck Co.*,
    334 F.3d 1366 (Fed. Cir. 2003) ....................................15

*Miics & Partners Am. Inc. v. Toshiba Corp.*,
    2015 WL 9854845 (D. Del. Aug. 11, 2015)..............................19

*Mkt.-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*,
    922 F. Supp. 2d 486 (D. Del. 2013) .............................................................20

*Monitoring v. Get-Grin Inc.*,
    2024 WL 1603403 (D. Del. Apr. 9, 2024) ...................................................18

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007) .....................................................................15

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
    2013 WL 3353984 (D. Del. July 2, 2013)....................................................20

*Optimal Golf Sols., Inc. v. Altex Corp.*,
    2009 WL 10733424 (N.D. Tex. Sept. 30, 2009) ..........................................17

*Rmail Ltd. v. Amazon.com, Inc.*,
    2014 WL 11394910 (E.D. Tex. Jan. 30, 2014) ............................................17

*RPost Holdings, Inc. v. Exacttarget, Inc.*,
    2014 WL 12703780 (E.D. Tex. Sept. 29, 2014) ..........................................15

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
    427 F.3d 971 (Fed. Cir. 2005) ......................................................................15

*STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*,
    2019 WL 2417625 (C.D. Cal. Feb. 15, 2019) ....................................... 12, 13

*Turing Video Tech., Inc. v. AGI7 Inc.*,
    2025 WL 579190 (N.D. Cal. Feb. 21, 2025)................................................13

*UNM Rainforest Innovs. v. D-Link Corp.*,
    No. 6:20-cv-143 (W.D. Tex. July 28, 2021) ................................................17

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014) .............................................................. 18, 20

*Wildcat Licensing Wi LLC v. Bayerische Motoren Werke AG*,
    2020 WL 6940038 (D. Del. Nov. 25, 2020)............................................ 9, 10

## Statutes

9 U.S.C. § 3 .......................................................................................................... 9, 10

iv

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On December 6, 2024, AutoConnect Holdings, LLC ("AutoConnect") filed a Complaint against Ford Motor Company ("Ford") alleging infringement of thirteen (13) patents. (D.I. 1.) Ford moved to dismiss the Complaint. (D.I. 12.) The Court denied the motion to dismiss and ordered the parties to proceed with case scheduling. (D.I. 24.) On November 25, 2025, the Court entered an Amended Scheduling Order setting the claim construction hearing for September 3, 2026, summary judgment motions for May 13, 2027, and trial for October 25, 2027. (D.I. 31.) The case is presently in the early stage of discovery.

Ford moves to stay this action pending (i) resolution of a ███████████ that will determine whether Plaintiff AutoConnect owns the asserted patents, and (ii) completion of the U.S. Patent and Trademark Office ("USPTO") ongoing *inter partes* reviews ("IPRs") and *ex parte* reexaminations ("EPRs")—nine of which have been instituted/granted and four of which are awaiting a decision on institution. Ford submits this opening brief in support of its motion to stay.

## II.     SUMMARY OF ARGUMENT

This case concerns thirteen patents previously and currently owned by one of Ford's suppliers of the technology accused of infringement: Flextronics AP, LLC ("Flex"). Flex licensed Ford to practice the asserted patents. In parallel with this litigation, Flex and AutoConnect are ███████ ownership of the asserted patents.

For several reasons outlined below, the Court should stay this case pending the outcome of ███████████ and the pending post-grant reviews.

      1.    Section 3 of the Federal Arbitration Act ("FAA") compels a stay because the dispositive issue of patent ownership ████████████████████ ███████████████. AutoConnect's standing to sue Ford depends on its ownership of the asserted patents and turns on whether an alleged Event of Default under its agreement with Flex triggered an automatic reversion of rights to Flex—████████ ██████████████████████████. ██████████████████████████ ██████████████████████. Although Ford is a nonsignatory to the Flex–AutoConnect agreement, it may invoke Section 3 under California's doctrine of equitable estoppel because AutoConnect's claims are intimately founded in and intertwined with that agreement, which governs the transfer and reversion of the patent rights at issue.

      2.    A stay would significantly streamline the case because every asserted patent is subject to an IPR or EPR challenge. To date, the USPTO has instituted IPRs or EPRs on 9 of the 13 asserted patents. Petitions for IPR or EPR on the remaining asserted patents are pending and are likely to be instituted like the others. These IPRs and EPRs will significantly simplify this case by resolving claim construction issues, canceling claims and reducing the number of asserted patents and/or asserted claims.

3.      The early posture of this case favors a stay because the case remains in its infancy and the most resource-intensive phases such as fact and expert discovery, claim construction, dispositive motions, trial preparation, and trial are still ahead. To date, only minimal discovery has occurred, no depositions have been noticed or taken, and the parties have not briefed claim construction. Expert discovery remains open for more than a year, and trial is not scheduled for nearly two years. Staying this case would preserve the resources of both the Court and the parties by preventing significant and potentially unnecessary expenditures while ███████ and the PTAB address the same issues that would otherwise be litigated in this action.

4.      A stay will not unduly prejudice AutoConnect, as delay alone does not constitute legal prejudice, particularly where monetary damages can fully compensate any alleged harm. The relevant inquiry focuses on whether the patentee has a concrete need for immediate relief. Here, AutoConnect is a non-practicing entity that does not compete in the marketplace and therefore faces no risk of lost market share, price erosion, or other irreparable competitive harm during a stay.

## III.    STATEMENT OF FACTS

### A.    The Asserted Patents and their Transfer to AutoConnect

This action concerns U.S. Patent No. 9,020,491 ("the '491 Patent"), U.S. Patent No. 9,020,697 ("the '697 Patent"), U.S. Patent No. 9,082,239 ("the '239 Patent"), U.S. Patent No. 9,098,367 ("the '367 Patent"), U.S. Patent No. 9,116,786

("the '786 Patent"), U.S. Patent No. 9,123,186 ("the '186 Patent"), U.S. Patent No. 9,140,560 ("the '560 Patent"), U.S. Patent No. 9,147,296 ("the '296 Patent"), U.S. Patent No. 9,147,297 ("the '297 Patent"), U.S. Patent No. 9,173,100 ("the '100 Patent"), U.S. Patent No. 9,290,153 ("the '153 Patent"), U.S. Patent No. 10,862,764 ("the '764 Patent"), and U.S. Patent No. 11,163,931 ("the '931 Patent") (collectively, the "Asserted Patents"). (D.I. 1.)

The Asserted Patents originated with Flex and list Christopher Ricci (then Flex's in-house IP counsel) ("Ricci") as a named inventor. In 2015, Flex assigned the Asserted Patents to AutoConnect. (Ex. A,[1] ███████████████████ at ¶¶1, 3; *Id.* at Ex. 1 & Ex. 8.) As consideration, AutoConnect executed a collateralized promissory note (the "Promissory Note"), where it promised to pay $500,000 to Flex within a specified period, with the Asserted Patents and other IP assets as collateral. (*Id.*, at ¶¶5, 8, 34; *Id.* at Ex. 1.)

The Promissory Note grants Flex a "first priority security interest and continuing lien on all of [AutoConnect's] right, title, and interest in, to and under the Collateral," further providing that "[i]n case of an Event of Default, [Flex] ***shall*** have the right to all of the Collateral." (*Id.* at Ex. 1 §5(b).) The Promissory Note identifies failure to pay after receiving written notice as one of several "Events of Default."

---

[1] Exhibits A–X refer to the exhibits attached to the Declaration of Reza Roghani Esfahani filed contemporaneously with this brief.

(*Id.* at Ex. 1 §2(a).) The Promissory Note entitles Flex, upon "the occurrence of any Event of Default . . . and at any time thereafter during the continuance of such Event of Default," to demand immediate satisfaction of outstanding obligations, specifies "transfer of the Collateral to [Flex]" as the remedy for default, and requires AutoConnect to "promptly execute any and all instruments of transfer necessary or desirable in connection with such transfer." (*Id.* at Ex. 1 §3.)

**B.    AutoConnect's Failure to Pay Flex and** ███████████████████

AutoConnect never paid Flex under the Promissory Note. On June 25, 2025, Flex sent AutoConnect a written "Notice of Default" and pursuant to Sections 3 and 5(b) of the Promissory Note "exercise[d] its first-priority security interest in the Collateral . . . including all of AutoConnect's right, title, and interest in the Patents and their proceeds." (*Id.* at Ex. 3.) While AutoConnect does not "dispute that Flex declared an event of default under the Promissory Note based on [AutoConnect's] failure to pay," it refused to transfer the collateral patents to Flex. (*Id.*, at Ex. 4; Ex. B, co-defendants' Motion to Dismiss (redacted) at 9 (citing AutoConnect's Interrogatory Responses to GM).)

Given AutoConnect's default and subsequent refusal to transfer the collateral patents to Flex, on October 7, 2025, pursuant to Section 12(e) of the Promissory Note, ████████████████████. (Ex. A, at Ex. 1 §12(e) (████████████

████████████████████████████████



. (*Id.* at ¶¶129–159.)[2]                                     .

## C.    The Instant Action

On December 6, 2024, AutoConnect filed a Complaint against Ford alleging infringement of the 13 Asserted Patents. (D.I. 1.) These patents contain nearly 300 claims and are asserted against several different aspects of infotainment systems installed in Ford vehicles sold beginning in 2017. (*See* D.I. 1-1, 1-4, 1-7, 1-10, 1-13, 1-16, 1-19, 1-22, 1-25, 1-28, 1-31, 1-34, and 1-37; *see also* D.I. 1-2 (listing the "Accused Instrumentalities").)

## D.    Flex Licensed Ford Under the Asserted Patents

Flex has been a supplier of Ford's "SYNC" infotainment system—the system accused of infringement in this case—since well before the applications for the Asserted Patents were filed. On September 23, 2025, Flex licensed Ford to practice (and "have made") the claims of each of the Asserted Patents.  (Ex. W, Section B(1).)

---

[2] ████████████████████████████████████████████████████. Flex is pursuing its claims against Ricci in the Northern District of California for fraud, breach of fiduciary duty, fraudulent inducement, and misappropriation of trade secrets. *See Flextronics AP, LLC v. Ricci*, Case No. 5:26-cv-00117, ECF No. 1 (N.D. Cal. Jan. 6, 2026).

**E.    Related Litigation in the Eastern District of Texas —**

   ***AutoConnect v. Toyota & General Motors***

AutoConnect filed substantially similar patent infringement suits against Toyota on October 3, 2024, and against General Motors on October 30, 2024 (collectively, "co-defendants"). *See AutoConnect Holdings, LLC v. Toyota Motor Corp.*, No. 2:24-CV-00802, Dkt. 1 (E.D. Tex. Oct. 3, 2024) & *AutoConnect Holdings, LLC v. General Motors, LLC¸* No. 2:24-CV-00877, Dkt. 1 (E.D. Tex. Oct. 30, 2024). The *General Motors* case is now consolidated with the *Toyota* case.

**F.    Post-Grant Challenges of the Asserted Patents**

Early in this case, Ford initiated comprehensive prior-art searches and began drafting petitions to challenge the Asserted Patents before the USPTO. Ford filed seven IPR petitions challenging the validity of the '697, '153, '186, '296, '100, '297, and '239 Patents. (*See* Ex. C, IPR2025-01342 (challenging the validity of the '697 Patent); Ex. D, IPR2025-01383 (challenging the validity of the '153 Patent); Ex. E, IPR2025-01524 (challenging the validity of the '186 Patent); Ex. F, IPR2026-00002 (challenging the validity of the '296 Patent); Ex. G, IPR2026-00173 (challenging the validity of the '100 Patent); Ex. H, IPR2026-00172 (challenging the validity of the '297 Patent); Ex. I, IPR2026-00171 (challenging the validity of the '239 Patent).) Ford also filed an EPR challenging the '931 Patent. (*See* Ex. J, No. 90/015,788 (requesting *ex parte* reexamination of the '931 Patent).)

To date, the USPTO has instituted IPRs on the '697, '153, and '186 Patents as to all challenged claims. (Ex. K, Institution Decisions for the '697 and '153 Patents, respectively; Ex. X, Institution Decision for the '186 Patent.) Although Ford's IPR on the '296 Patent was denied institution,[3] that patent—and ***all*** other Asserted Patents—remain subject to other USPTO proceedings summarized below.

Like Ford, Toyota sought USPTO review of the patents it is accused of infringing. With respect to the overlapping patents (*i.e.,* patents asserted against both Ford and Toyota), Toyota has filed five EPR petitions challenging the validity of the '296, '491, '560, '786, and '764 Patents. The USPTO has granted four of the five requests, ordering reexamination of all challenged claims after finding a substantial new question of patentability. (Ex. M, No. 90/015,634 (granting request for EPR on the '296 Patent); Ex. N, No. 90/015,453 (granting request for EPR on the '491 Patent); Ex. O, No. 90/015,463 (granting request for EPR on the '560 Patent); Ex. P, No. 90/015,424 (granting request for EPR on the '786 Patent).) The fifth EPR request remains pending. (Ex. Q, No. 90/015,447 (requesting *ex parte* reexamination of the '764 Patent).)

Third-party Unified Patents, LLC filed two EPR requests against the '764 and '367 Patents. The USPTO granted both requests, ordering reexamination of all

---

[3] The Director denied the IPR petition challenging the '296 Patent only because that patent was already subject to an EPR. (Ex. L, Decision Denying Institution.)

challenged claims after finding a substantial new question of patentability. (Ex. R, No. 90/019,866 (granting request for EPR on the '764 Patent); Ex. S, No. 90/019,983 (granting request for EPR on the '367 Patent).) The USPTO has issued Office Actions in each of the EPRs rejecting the patentability of all challenged claims. (Exs. T–U, Office Actions concerning the '764 and '367 Patents, respectively.)

## IV.    LEGAL STANDARD

### A.    Mandatory Stay Under 9 U.S.C. § 3

Under FAA Section 3, when "any issue" in a suit is referable to arbitration under a written agreement, the court "***shall*** … stay the trial of the action until such arbitration has been had."[4] 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (holding that "§ 3 of the FAA compels the court to stay the proceeding," where "a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration").

### B.    Discretionary Stay Under the Inherent Power of the Court

Whether to grant a stay is a matter committed to the Court's discretion. *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976); *Wildcat Licensing Wi LLC v. Bayerische Motoren Werke AG*, C.A. No. 19-834-MN-JLH, 2020 WL 6940038, at *1 (D. Del. Nov. 25, 2020). A stay is

---

[4] Unless otherwise indicated, all emphasis has been added.

particularly appropriate where the outcome of another proceeding may "substantially affect" the issues in a case. *Bechtel*, 544 F.2d at 1215.

Courts consider three factors when deciding whether to stay a case: "(1) whether a stay will simplify the issues for trial, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Wildcat Licensing Wi LLC*, 2020 WL 6940038, at *1 (citation omitted). Some courts also consider a "fourth factor," which includes an inquiry into whether the granting of a stay will reduce the burden of litigation on the parties and the court. *Brit. Telecommunications PLC v. IAC/InterActiveCorp*, C.A. No. 18-366-WCB, 2019 WL 4740156, at *2 (D. Del. Sept. 27, 2019).

## V.    ARGUMENT

## A.    FAA Section 3 Compels a Stay in View of ███████████

███████████████████████████████████, the Federal Arbitration Act compels a stay of this litigation. Section 3 of the FAA compels a stay of judicial proceedings when the claims at issue are referable to arbitration under a written agreement. 9 U.S.C. § 3; *Spizzirri*, 601 U.S. at 478 ("§ 3 of the FAA compels the court to stay the proceeding," where "a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration"). The Supreme Court has made clear that "a litigant who was not a party to the relevant arbitration agreement

may invoke § 3 if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). Here, both conditions are satisfied.

### 1.    The ownership issue in this case is a focus of ████████████

AutoConnect alleges that it "owns the entire right, title, and interest in and to the [Asserted Patents], including the right to sue for and collect past damages." (D.I. 1, at ¶¶15–27.) Ford disagrees and has asserted an affirmative defense for lack of standing "to the extent that AutoConnect is not the current or sole owner of the Asserted Patents." (D.I. 25, at 125.) Accordingly, this Court would be required to determine whether AutoConnect in fact holds the full right, title, and interest in the Asserted Patents. That precise ownership issue, however, ██████████████████ ████████████████████████████████. Specifically, ███████████████ ████████████████████████████████████████. (Ex. A.) ████████████████████████████████████████████████ ████████████████████████████ (Ex. V, Flex Response.) ███████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████. (*See* Ex. A at Ex. 1 §5(b) (" ████████████████ ████████████████████████████████████).) Accordingly, the existence of an Event of Default—███████████████████████████████

█████████████████████████████████████████████████████

███ —is a matter that must be decided by ██████████████ .

### 2. Under California law, Ford can invoke Section 3 to mandate a stay under the doctrine of equitable estoppel

██████████████████████████████████████████████████████ .

(Ex. A, at §12(e).) "Under California law, a non-signatory to a contract may enforce an arbitration provision under the doctrine of equitable estoppel when 'the claims [against the non-signatory] are 'intimately founded in and intertwined with' the underlying contract.'" *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 (9th Cir. 2024). California courts "look at the relationship between the parties and their connection to the alleged violations." *Id.* (brackets omitted) (citing *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 875 (9th Cir. 2021)).

Here, AutoConnect's right to sue Ford for infringement of the Asserted Patents depends on and is "intimately founded in and intertwined with the underlying contract" between Flex and AutoConnect, and ██████████████████████████

██████████████████████ . To support the allegations in its Complaint regarding its purported ownership of the Asserted Patents, AutoConnect necessarily relies on its earlier Agreement with Flex under which the patents were transferred. *See STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*, C.A. No. 2:18-CV-01269-JLS-JCG, 2019 WL 2417625, at *4 (C.D. Cal. Feb. 15, 2019) ("Equitable estoppel applies only when the signatory to a written agreement containing an arbitration clause must rely on the

terms of the written agreement in asserting its claims against the nonsignatory" (brackets omitted)); *see also Turing Video Tech., Inc. v. AGI7 Inc.,* C.A. No. 24-CV-04606-EKL, 2025 WL 579190, at *3 (N.D. Cal. Feb. 21, 2025) (same). Here, █

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████.

Furthermore, "[t]he 'linchpin' for equitable estoppel is fairness." *Herrera*, 104 F.4th at 710 (citation omitted). Thus, "the doctrine of equitable estoppel may apply in [] cases where a signatory to an arbitration agreement attempts to evade arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants." *STM Atl. N.V.*, 2019 WL 2417625, at *5 (internal quotation marks and citation omitted). In this case, █████████████████████████████████████

██████████████████████████████████████████ (Ex. A, at ¶118.) AutoConnect cannot "evade ████████ by suing nonsignatory" Ford for infringement of products that are supplied by "signatory" Flex. *STM Atl. N.V.*, 2019 WL 2417625, at *5. Had AutoConnect brought an infringement action against Flex in district court, and Flex raised patent ownership as a defense, Section 3 of the FAA would require that action to be stayed and that the parties first ████████████████████ ██████████████. AutoConnect cannot escape that result by suing Ford.

Section 3 of the Federal Arbitration Act compels a stay of this litigation.

**B.    Discretionary Factors Strongly Favor a Stay**

**1.    A Stay Would Streamline the Present Case Significantly by Disposing of the Case Entirely, Reducing the Number of Asserted Patents, the Number of Asserted Claims, and/or the Accused Products**

"The most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial." *Brit. Telecommunications PLC*, 2019 WL 4740156, at *7. This motion presents two independent grounds for simplification. First, t█████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████████. ████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████.

Second, the post-grant proceedings that Ford, Toyota, and Unified Patents have initiated may render all asserted claims of the Asserted Patents unpatentable. The institution decisions and office action already indicate that at least some asserted claims are unpatentable. Even if all claims are not found unpatentable, the case will still be significantly simplified because the number of asserted claims and the number of accused products will be reduced, which lowers discovery burdens, expert issues, and trial complexity.

14

### a.    Simplification in view of ████████████

"The doctrine of standing limits federal judicial power and has both constitutional and prudential components." *Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310, 1313 (Fed. Cir. 2005) (quoting *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed. Cir. 2003)). "The party bringing the action bears the burden of establishing that it has standing." *Sicom Sys., Ltd. v. Agilent Techs., Inc.,* 427 F.3d 971, 976–77 (Fed. Cir. 2005). Constitutional standing exists only "[w]hen a party holds all rights or all substantial rights" to a patent or where a party has "exclusionary rights and interests created by the patent statutes." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007).

Whether AutoConnect has standing will depend on whether Flex regained ownership of the Asserted Patents by virtue of AutoConnect's default, ████████ ████████████████████████████. ████████████████████ ████████████████████████████████████ ████████████████████████████████████ then AutoConnect does not hold all substantial rights to assert infringement and lacks standing in this case. Granting a stay will save the parties and the Court the hardship of litigating a case where the plaintiff lacks standing. *See RPost Holdings, Inc. v. Exacttarget, Inc.*, C.A. No. 2:12-CV-512-MHS-RSP, 2014 WL 12703780, at *3 (E.D. Tex. Sept. 29, 2014) (staying case because disposition of parallel

proceedings regarding ownership and licensing/transfer of the patent "would be the ultimate simplification" as "the entire instant action could be rendered moot."). Even if ███████████████████████████████████████████████, staying the case provides the benefit of simplifying the issues of this case.

 ***First***, ████████████████ will identify the real party in interest and the precise scope of any rights conveyed. That determination will resolve whether any retained rights make Flex a necessary party. Where a plaintiff has fewer than all substantial rights in a patent, the patent owners must generally be joined to satisfy prudential standing considerations. *Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001). Here, ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

(Ex. A, at §7(b).) ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

(*Id.*) ████████████████████████████████████████████████████

████████████████████ under controlling Federal Circuit precedent indicates that AutoConnect did not receive all substantial rights. *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1232 (Fed. Cir. 2019) (finding an agreement that "restrict[ed] [transferee's] ability to transfer the asserted patents" was

"fundamentally inconsistent with a transfer of all substantial rights"). ███

███████████████ will streamline party alignment, Rule 19 joinder issues, and real

party in interest disputes, and it eliminates threshold motion practice on those topics.

    ***Second***, ███████████ can moot or further streamline this action. For

example, as a part of a resolution, ████████████████████████

███████████████████████████████████████████████

███████████████████ (Ex. A, at ¶10.) If that occurs, the doctrine of patent

exhaustion and Flex's license to Ford (Ex. W) would bar infringement claims against

Ford's accused SYNC systems supplied by Flex and other suppliers, which would

reduce the number of patents and claims at issue, narrow the accused products,

shrink the scope of discovery, and conserve resources for the parties and the Court.

    In sum, proceeding on dual tracks invites piecemeal and inconsistent

outcomes, while a short pause allows ██████████████████ to shape or

conclude this case. Indeed, it is common for courts to stay a case when there is a

parallel litigation addressing the issue of patent ownership. *See Rmail Ltd. v.*

*Amazon.com, Inc.*, C.A. No. 2:10-CV-258, 2014 WL 11394910, at *6 (E.D. Tex.

Jan. 30, 2014) (staying a case pending resolution of a state court case addressing the

issue of patent ownership); *see also UNM Rainforest Innovs. v. D-Link Corp.*, C.A.

No. 6:20-cv-143, Text Order (W.D. Tex. July 28, 2021); *Optimal Golf Sols., Inc. v.*

*Altex Corp.*, C.A. No. 3:09-CV-1403-K, 2009 WL 10733424, at *1 (N.D. Tex. Sept.

30, 2009); *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 840 F. Supp. 211, 218 (E.D.N.Y. 1994) ("[I]n the interest of justice, there can be no other course but to stay this action pending the resolution of [ownership of the patent in the] state action.").

### b.    Simplification in view of the PTAB Proceedings

*All* Asserted Patents are currently the subject of a USPTO challenge. *See supra* at § IV (F). Several proceedings have already been instituted or ordered on a majority of the Asserted Patents, while others are awaiting institution. Where the Board has acted, it has done so on *all* asserted claims. It is thus highly likely that the pending IPRs and EPRs will materially narrow or eliminate issues in this case. Courts regularly grant stays when PTAB reviews cover the asserted claims because those "review[s] could dispose of the entire litigation: the ultimate simplification of issues." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014); *Monitoring v. Get-Grin Inc.*, C.A. No. 22-647-WCB, 2024 WL 1603403, at *7 (D. Del. Apr. 9, 2024); *Consumeron, LLC v. MapleBear Inc.*, C.A. No. 21-1147-GBW-MPT, 2023 WL 3434002, at *2 (D. Del. May 12, 2023).

Even if some claims survive, invalidating others will significantly simplify this case by narrowing the asserted patents, claims, and corresponding accused products. *Consumeron,* 2023 WL 3434002, at *2 ("Even if PTAB found some, but

not all, of the claims invalid, such a finding would still reduce the issues presented before this Court."). This factor heavily weighs in favor of granting the stay.

## 2.     The Early Posture of this Case Weighs Strongly in Favor of a Stay

The second factor, the status of the litigation, decisively favors a stay because "the most burdensome stages of the cases—completing fact discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future." *IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019). This case is in its infancy. Minimal discovery has been conducted with no depositions noticed or taken. The parties have not briefed claim construction. (D.I. 31.) Expert discovery does not close for more than a year and trial is set for nearly two years from now. (*Id.*)

Granting a stay at this stage will therefore conserve the parties' and the Court's resources by avoiding expensive and potentially unnecessary discovery, motion practice, and claim-construction proceedings. This factor, too, favors a stay. *Miics & Partners Am. Inc. v. Toshiba Corp.*, C.A. No. 14-803-RGA, 2015 WL 9854845, at *1 (D. Del. Aug. 11, 2015) (holding that the stage of the proceedings weighed in favor of a stay where "discovery ha[d] started and there [were] trial dates, there ha[d] been no depositions. . . and major expenses [were] yet to come").

### 3.    A Stay Will Not Prejudice, and Could Benefit, AutoConnect

A stay of this case would not unduly prejudice AutoConnect. Courts in this District consistently hold that delay in final resolution of a civil case, standing alone, does not constitute undue prejudice. *Mkt.-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 494 (D. Del. 2013) ("The court also recognizes [] that the potential for delay does not, by itself, establish *undue* prejudice." (emphasis in original)); *Neste Oil OYJ v. Dynamic Fuels, LLC*, C.A. No. 12-1744-GMS, 2013 WL 3353984, at *2 (D. Del. July 2, 2013) ("The mere potential for delay [] is insufficient to establish *undue* prejudice." (emphasis in original)). Instead, the inquiry "focuses on the patentee's need for an expeditious resolution of its claim." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014). AutoConnect is a non-practicing entity that neither manufactures products nor competes in the marketplace. It thus cannot suffer a harm that is not compensable by money damages. In contrast, a simplification of the issues can benefit AutoConnect by avoiding an unnecessary investment of legal resources.

## VI.    CONCLUSION

For the above reasons, Ford respectfully requests that the Court stay this action until the final resolution of ████████████████, *inter partes* reviews, and *ex parte* reexaminations of the Asserted Patents.

Dated: February 26, 2026

*Of Counsel:*

**BROOKS KUSHMAN P.C.**
John S. LeRoy
Christopher C. Smith
Reza Roghani Esfahani
150 W. Second St., Suite 400N
Royal Oak, MI 48067-3846
(248) 358-4400
jleroy@brookskushman.com
csmith@brookskushman.com
resfahani@brookskushman.com

**SMITH KATZENSTEIN & JENKINS LLP**

*/s/ Daniel A. Taylor*
Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Counsel for Defendant Ford Motor Company*

## WORD COUNT CERTIFICATION

The undersigned certifies that the foregoing document contains 4804 words (exclusive of the cover page, table of contents, table of authorities, pictures, figures, illustrations, and signature block) in Times New Roman 14-point font, counted using Microsoft Word's word count feature.

*/s/ Daniel A. Taylor*
Daniel A. Taylor (No. 6934)