███████████████████████

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AUTOCONNECT HOLDINGS LLC,<br><br>   Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>   Defendants. | Case No. 24-cv-01327-JCG<br><br><br>**JURY TRIAL DEMANDED**<br><br>███████████████ |

## AUTOCONNECT'S BRIEF IN
## <u>OPPOSITION TO FORD'S MOTION TO STAY</u>

Dated: March 12, 2026

Todd S. Werner (*pro hac vice*)
werner@avantechlaw.com
Jason M. Zucchi (*pro hac vice*)
zucchi@avantechlaw.com
Shelleaha L. Jonas (*pro hac vice*)
jonas@avantechlaw.com
**AVANTECH LAW, LLP**
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (855) 750-9951

Julianne Thomsen (*pro hac vice*)
thomsen@avantechlaw.com
**AVANTECH LAW, LLP**
521 5th Avenue, 17th Floor
New York, NY 10175-0038
Tel: (855) 750-9951

Kathryn A. Quisenberry (Bar. No. 24105639)
quisenberry@avantechlaw.com
**AVANTECH LAW, LLP**
1000 Main Street, Suite 2300
Houston, TX 77002
Tel: (855) 750-9951

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

William R. Woodford (LEAD) (#0322593)
woodford@avantechlaw.com
**AVANTECH LAW, LLP**
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (855) 750-9951

Andrea Fair (Texas Bar No. 24078488)
andrea@millerfairhenry.com
Garrett Parish (Texas Bar No. 24125824)
garrett@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Tel: (903) 757-6400

***Attorney for Plaintiff***
***AutoConnect Holdings LLC***

█████████████████████████████

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND .................................................................................................. 1

    A.    AutoConnect Notified Ford of Its Infringement in 2023 and Filed This Action in 2024. 1

    B.    The ████████████ Transferred the Patents to AutoConnect and ████████████ ████████████████ Barred by Limitations. ........................................................ 2

    C.    Ford's Post-Grant Challenges Were Filed Long After Notice of Infringement and Remain Procedurally Uncertain. ........................................................................ 4

        1.    Ford Waited Nearly Two Years After Notice of Infringement to File Its Petitions................................................................................................ 4

        2.    Only Three IPR Proceedings Have Been Instituted, and Several Petitions Remain Pending ............................................................................. 5

        3.    AutoConnect Has Requested Director Review of the Instituted Petitions. .... 5

        4.    The Remaining Patents Involve Only *Ex Parte* Reexaminations. .................. 6

III.  LEGAL STANDARDS ......................................................................................... 6

IV.   ARGUMENT ........................................................................................................ 7

    A.    Nothing in This Case Is ████████████████████████████ ████████████████████████████. ......................................... 7

    B.    Neither California Law Nor ██ Allows Defendants to Stay This Case ███████ ████████████. ............................................................................ 10

    C.    The ████████████ Does Not Warrant a Discretionary Stay. ....................................... 13

    D.    The Post-Grant Proceedings Also Do Not Justify a Stay .................................. 16

        1.    The Post-Grant Proceedings Are Fragmented, Uncertain, and Unlikely to Simplify the Case. ............................................................................ 16

        2.    Ford's Delay in Seeking Post-Grant Review Weighs Against a Stay ............ 18

        3.    The Stage of This Litigation Also Weighs Against a Stay. ........................... 19

        4.    A Stay Is Unnecessary Because the Existing Schedule Already Accounts for Any PTAB Proceedings. ...................................................................... 20

5.     If the Court Considers a Stay, It Should Be Deferred Until Institution and
Narrowly Tailored. ............................................................................................... 20

V.     CONCLUSION............................................................................................................... 20

**TABLE OF AUTHORITIES**

**Cases**

*Affinity Labs of Texas, LLC. v. Nike, Inc.*,

No. 10-cv-5543 CW, 2011 WL 1833122 (N.D. Cal. May 13, 2011) ............................................ 19

*Alvarado v. Rockwell Collins, Inc.*,

No. CV 23-400-JFW(JCX), 2023 WL 5505877 (C.D. Cal. May 24, 2023) .................................. 9

*Arthur Andersen LLP v. Carlisle*,

556 U.S. 624 (2009) ...................................................................................................................... 10

*AT&T Techs, Inc. v. Comm'ns Workers*,

475 U.S. 643 (1986) ........................................................................................................................ 6

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,

935 F.3d 274 (5th Cir. 2019) .......................................................................................................... 9

*Cranpark, Inc. v. Rogers Grp., Inc.*,

821 F.3d 723 (6th Cir. 2016) ........................................................................................................ 14

*CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*,

381 F.3d 131 (3d Cir. 2004) .................................................................................................... 13, 16

*Eminence Healthcare, Inc. v. Centuri Health Ventures, LLC*,

289 Cal. Rptr. 3d 840 (App. Ct. 2022) ........................................................................................ 8, 9

*Entangled Media, LLC v. Dropbox Inc.*,

732 F. Supp. 3d 1120 (N.D. Cal. 2024) ................................................................................... 17, 18

*First Options of Chi., Inc. v. Kaplan*,

514 U.S. 938 (1995) ........................................................................................................................ 6

*Fulfillium v. ReShape Med. LLC*,

No. 8:18-cv-01265-RGK-PLA, 2019 WL 13038364 (C.D. Cal. May 27, 2019) ......................... 14

*Goldman v. KPMG LLP*,

173 Cal. App. 4th 209 (2009) ....................................................................................................... 11

*Herrera v. Cathay Pac. Airways Ltd.*,

104 F.4th 702 (9th Cir. 2024) ....................................................................................................... 12

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,

No. 12-CV-054-GMS, 2013 WL 1743854 (D. Del. Apr. 22, 2013) ....................................... 13, 16

*Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,

248 F.3d 1333, 1348 (Fed. Cir. 2001) ............................................................... 15

*In re Marriage of Braendle*, 54 Cal. Rptr. 2d 397 (App. Ct. 1996) ................................................. 9

*Invensas Corp. v. Samsung Elecs. Co.*,

No. CV 17-1363-MN-SRF, 2018 WL 4762957 (D. Del. Oct. 2, 2018) ....................................... 17

*Invista S.a.r.l. v. Rhodia S.A.*,

No. CIV.08-941(RBK/JS), 2009 WL 1439407 (D. Del. May 20, 2009) ..................................... 13

*Jurosky v. BMW of N. Am., LLC,*

441 F. Supp. 3d 963 (S.D. Cal. 2020) ............................................................... 11

*Kramer v. Toyota Motor Corp.,*

705 F.3d 1122 (9th Cir. 2013) .............................................................. 10, 12

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,

925 F.3d 1225 (Fed. Cir. 2019) ............................................................... 15

*Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*,

840 F. Supp. 211 (E.D.N.Y. 1994) ............................................................... 15

*MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*,

No. CV 17-1641-CFC, 2019 WL 5964599 (D. Del. Nov. 13, 2019) .............................................. 7

*Nexans Inc. v. Belden Inc.*,

No. CV 12-1491-SLR-SRF, 2014 WL 651913 (D. Del. Feb. 19, 2014) ....................................... 7

*NextEngine Inc. v. NextEngine, Inc.*,

No. 2:19-CV-00249-AB (MAA), 2021 WL 926104 (C.D. Cal. Jan. 15, 2021) ............................ 14

*Optimal Golf Sols., Inc. v. Altex Corp.*,

C.A. No. 3:09-CV-1403-K, 2009 WL 10733424 (N.D. Tex. Sept. 30, 2009) .............................. 15

*Revvo Techs., Inc. v. Cerebrum Sensor Techs., Inc.*,

IPR2025-00632, Paper 20 (Director Nov. 3, 2025) ................................................. 16

*Rmail Ltd. v. Amazon.com, Inc.*,

C.A. No. 2:10-CV-258, 2014 WL 11394910 (E.D. Tex. Jan. 30, 2014) ..................................... 15

*Soverain Software LLC v. Amazon.com, Inc.,*

356 F. Supp. 2d 660 (E.D. Tex. 2005) .............................................................. 7, 13

*Stafford v. Oil Tool Corp.*,

133 Cal. App. 2d 763 (1955) .............................................................. 14

*STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*,

No. 218-CV-01269, 2019 WL 2417625 (C.D. Cal. Feb. 15, 2019) ............................................. 12

*Tesla, Inc. v. Intellectual Ventures II LLC*,

IPR2025-00340, Paper 18 (Director Nov. 5, 2025) ...................................................... 16

*Tigo Energy Inc. v. SMA Solar Tech. Am. LLC*,

No. CV 22-915-GBW, 2024 WL 1637511 (D. Del. Apr. 16, 2024)............................................. 17

*Turing Video Tech., Inc. v. AGI7 Inc.*,

 C.A. No. 24-CV-04606-EKL, 2025 WL 579190 (N.D. Cal. Feb. 21, 2025) .............................. 12

*TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*,

No. CV 21-1126-GBW-SRF, 2023 WL 2563179 (D. Del. Mar. 17, 2023)................................... 18

*U.S. v. Miraca Life Scis., Inc.*,

No. 3:13-CV-01025, 2021 WL 679275 (M.D. Tenn. Feb. 22, 2021)........................................ 9, 10

*UNM Rainforest Innovs. v. D-Link Corp.*,

C.A. No. 6:20-cv-143 (W.D. Tex. July 1, 2021) ............................................................ 15

*White v. Sunoco, Inc.*,

870 F.3d 257 (3d Cir. 2017) ...................................................................... 11

**Statutes**

Cal. Civ. Code § 337 ............................................................................... 14

Cal. Com. Code § 9203........................................................................... 9

Cal. Com. Code § 9620(a)(1)........................................................................ 9

**Regulations**

FAA § 3 ....................................................................................... 6, 10, 11

███████████████████████████████████████

## I.     INTRODUCTION

Neither the ██████████████████████ nor any post-grant proceedings support halting this 15-month old case.

Defendants are wrong that the ████████████████████ will "determine" patent ownership. ██████████████████████████████████████████████████ ███████████████████████████████████████████████. ██████████████ therefore cannot transfer ownership, divest AutoConnect of exclusionary rights, or affect standing. And because ████████████ cannot grant relief relevant to patent ownership or standing, no issue in this case is ██████████████████████████████████. And Ford—a non-signatory with no independent right ████████████████████████████—cannot invoke ███████████████ stay provision.

A discretionary stay is likewise unwarranted. It is unclear whether numerous challenges launched by Ford will proceed, and the odds that all claims are invalidated across 13 different challenges is nonexistent. Exacerbating this problem, those proceedings are likely to take years to resolve, and then there will be appeals, with Ford introducing new and evolving systems and expanding the scope of discovery needed to show infringement. This case was already paused once due to Ford's unsuccessful motion to dismiss, and indefinitely stopping it a second time would prejudice AutoConnect by delaying enforcement of its patents while Ford continues infringing, would not simplify the issues, and would disrupt a case well advanced toward trial.

Defendants' motion should be denied.

## II.     BACKGROUND

### A.     AutoConnect Notified Ford of Its Infringement in 2023 and Filed This Action in 2024.

AutoConnect first notified Ford of its infringement in December 2023, providing detailed claim charts addressing eighteen patents. Ford responded that it was "diligently reviewing" the

1

███████████████████████████████████

patents and supporting materials.  Ex. J.  After discussions failed to resolve the dispute, AutoConnect filed this action on December 6, 2024.  D.I. 1.

After receiving a 45-day extension to respond to the Complaint, Ford filed a partial motion to dismiss challenging six patents and contesting infringement of two others, leaving the remaining patents unaddressed. D.I. 12. Because Ford did not file an Answer while that motion was pending, the case did not proceed until the Court denied the motion in its entirety on September 7, 2025. D.I. 24.  The parties then negotiated a scheduling order setting trial for October 2027.  D.I. 26.

Since then, the case has advanced substantially.  The parties have exchanged and responded to written discovery, including interrogatories and document requests.  AutoConnect has produced approximately 239,000 pages of documents, including prosecution histories, ownership records, prior art cited during prosecution and in related litigation, materials referenced in interrogatory responses in the related Toyota and GM cases, and documents concerning efforts to commercialize the asserted patents.  Ford has produced approximately 53,000 pages of documents, including prior art and technical materials concerning the accused instrumentalities.

On December 19, 2025, AutoConnect served detailed infringement contentions addressing all thirteen asserted patents.  On February 6, 2026, Ford served invalidity contentions for each of those patents, including over 185 invalidity claim charts.  The parties are scheduled to exchange claim construction terms on April 2 and proposed constructions on April 16, with AutoConnect's opening claim construction brief due May 14.

**B.    The ███████████████ Transferred the Patents to AutoConnect and ████ ████████████████████████████ Is Barred by Limitations.**

AutoConnect was formed in 2015 to complete the spin-out of a connected-vehicle technology portfolio developed at Flex.  Several years earlier, ████████████████████ ████████████████████████████ which resulted in a substantial patent portfolio.

2

████████████████████████████

Despite the technology's promise, ████████████████████████

████████████████████████████████████████████

██████████████. Ex. H at 2. Flex also sought ████████████████████

████████████████████████████████████.

The transaction ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████.

████████████████████ Flex did not ████████████████████

████████████████████████████████████████████.

Nor did Flex ████████████████████████████. Even after discussions ██████

████████████████████████████████████.

By late 2023, AutoConnect's patents had become commercially significant. In December 2023, AutoConnect notified Ford, GM, and Toyota of their infringement, providing detailed claim charts covering nineteen patents. When licensing discussions proved unsuccessful, AutoConnect filed patent infringement actions in late 2024. Only after those infringement actions exposed Flex's largest customers to potential liability did Flex reappear.

3



In June 2025, Flex issued a ████████████████████████████ ██████████████████. Ex. L. AutoConnect promptly rejected the assertion, explaining that it was legally and factually baseless, including because ██████████████████ expired years earlier under California's four-year statute of limitations. Exs. M, N, O.

Shortly thereafter, ████████████████████████████████ ████████████ ████████████████████████████████ ████████████████████████████████████ ████████████████████████████████. ████████ By ████████████████ ████████████████████████████, ████████████████████████████████████████ ████████████████.

On October 7—just days after ██████████████ was finalized—Flex ████ ████████████████████████ The accused infringers immediately relied ████████████████████████████████████. GM and Toyota quickly relied on ██████████████ in filing motions to dismiss, amended Answers and counterclaims, and motions to stay. While Ford also raised its proposal to seek a stay back in October, it waited six months *until after* AutoConnect served infringement contentions and after engaging in significant discovery.

**C.      Ford's Post-Grant Challenges Were Filed Long After Notice of Infringement and Remain Procedurally Uncertain.**

**1.      Ford Waited Nearly Two Years After Notice of Infringement to File Its Petitions.**

Ford has challenged 8 of the 13 asserted patents. AutoConnect notified Ford of its infringement in December 2023 and filed suit in December 2024. Yet Ford did not file a single petition with the United States Patent & Trademark Office (PTO) until late July 2025, more than

seven months after suit was filed and approximately nineteen months after receiving notice of infringement. Three additional petitions followed over the next several months, and Ford waited until the statutory deadline to file the remainder of its petitions. In the case of the '931 patent, Ford filed a request for *ex parte* reexamination (EPR) over a year after it was sued for infringement.

### 2. Only Three IPR Proceedings Have Been Instituted, and Several Petitions Remain Pending

Of the eight patents Ford has challenged, one has been discretionarily denied and three have been instituted. Whether those three proceedings will remain instituted is uncertain, as Ford managed to sustain those petitions based on an argument that AutoConnect believes is without factual basis. The other three IPR petitions remain pending without institution decisions.

The Director substantially changed the analysis the PTO uses to decide whether to institute IPR petitions last year. A dominant factor is whether the parties have developed "settled expectations" regarding the validity of the patent, an inquiry that generally considers how long ago the patent issued. Here, all the patents Ford challenged with IPR petitions issued about ten or more years ago, which is much longer than the time frame generally considered sufficient.

### 3. AutoConnect Has Requested Director Review of the Instituted Petitions.

Ford initially avoided the denial of three IPR petitions by suggesting it had developed settled expectations it would not be sued on AutoConnect's patents because (a) they were originally owned by Flex, (b) Flex supplies Ford with the accused systems, and (3) Ford did not expect to get sued by its supplier. The Director accepted this argument, and instituted three of the petitions. AutoConnect has sought Director review of those institution decisions because Ford has taken several inconsistent positions in its IPR petitions and this litigation. For example, while Ford told the PTO that it did not expect to be sued on the patents because Flex owned the applications that led to the patents in 2015, it states here that it was not even aware of the patents until 2023, when

5

AutoConnect notified it of infringement.  Ex. K.  Additionally, Ford bases its argument on Flex supplying the accused systems, but it has never identified any systems accused of infringement that are supplied by Flex.  Instead, Ford misled the PTO by pointing to activities *in 2010*, while the accused systems were not released *until 2017* for some patents, and *2020 or later* for others.

AutoConnect has requested Director review based on other inconsistent positions by Ford. Last fall the Director ruled that if a petitioner advances inconsistent claim construction positions in the PTO and district court, the PTO will deny their petitions.  And here, *after* the Director instituted the three proceedings based on Ford's contention that the claims should be given their "plain meaning," in the litigation, Ford contended that every asserted claim is indefinite.

### 4.    The Remaining Patents Involve Only *Ex Parte* Reexaminations.

For the six other asserted patents, Ford relies on *ex parte* reexamination (EPR) requests, only one of which it filed itself.  The other five EPR proceedings were initiated by an assortment of third parties, and will proceed independently of Ford's participation.

Accordingly, the various post-grant proceedings cited by Ford are proceeding on different tracks, involve different petitioners and procedural postures, and remain subject to multiple unresolved issues—including pending institution decisions and requests for Director review.

## III.    LEGAL STANDARDS



A court may not stay a litigation ███████████████████████████████████ ██████████████████████████████████████████████.  "Courts should not assume that the parties ██████████████████████████████ unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation modified).  Where an █████████████████████████████████, courts  cannot  compel  ███████████████████ ████████.  *AT&T Techs, Inc. v. Comm'ns Workers*, 475 U.S. 643, 648–49 (1986).

When the ███ does not support a stay, a court retains limited discretion to stay proceedings

6

███████████████████████████████████

in appropriate circumstances.  In determining whether to discretionarily stay litigation, this district typically considers: "(1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party; (2) whether a stay will simplify the issues for trial; and (3) whether discovery is complete and a trial date set."  *Nexans Inc. v. Belden Inc.*, No. CV 12-1491-SLR-SRF, 2014 WL 651913, at *2 (D. Del. Feb. 19, 2014), report and recommendation adopted, No. CV 12-1491-SLR/SRF, 2014 WL 1232218 (D. Del. Mar. 12, 2014); *see also MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*, No. CV 17-1641-CFC, 2019 WL 5964599, at *2 (D. Del. Nov. 13, 2019) (denying motion to stay pending arbitration).

## IV.    ARGUMENT

Ford's motion to stay fails because ███████████████ cannot resolve any issue relevant to this litigation.  The ██████████████████████████████████████ ████████████████████████████████ cannot divest AutoConnect of its exclusionary rights or affect its standing to enforce the asserted patents.  Moreover, even if the Court were to consider a discretionary stay, the relevant factors weigh decisively against one.  The ████████████████ simplify the issues in this case, the parallel post-grant proceedings remain procedurally uncertain and fragmented, and the case is already well underway.  Granting a stay would therefore serve only to delay resolution of AutoConnect's infringement claims while Defendants continue to exploit the accused technology, memories fade, and the scope of requisite discovery expands due to evolving accused products.

### A.    Nothing in This Case █████████████████████████ ██████████████████████████████████.

Defendants' motion to stay rests on the flawed premise that ████████████████ ████████could result in an award transferring ownership of the asserted patents and thereby

██████████████████████████████████████████

affect standing in this case.  But ███████████████████████████████████████

████████████ grant any such relief.  Because ████████████████████████ affecting patent

ownership, no issue in this case is ████████████████████████████.

The ████████████████████████████████████████████

████████████████████████████████████████ :

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████    ████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████

Ex. E § 12(e) (emphasis added).  It ██████████████████████████████

██████████████████████████████████████████

The  parties ████████████████████████████████████

████████████████.  *See, e.g.,* ████████████████████████████

████████████████████████ (affirming  denial ████████████████████

██████████████████████████████████████████

████████████████████████████████ ).

Ford's stay theory nevertheless assumes that ████████████ can compel a transfer of patent

ownership through some divesture of AutoConnect's rights.  But any such outcome would require

8

███████████████████████████████████████████████████████

equitable relief.   Specific performance, foreclosure of collateral, quiet title, replevin, or any declaration altering patent ownership are purely equitable remedies, not awards of compensatory damages.  Because the parties ████████████████████████████████████████████ ████████ that would alter patent ownership or affect AutoConnect's exclusionary rights.  A party may not be forced to █████████████████████████████████████

██████████████████████████████████████ It is █████████████████████████

██████████████████████████████████████████████████████ ████

███████████████████████████████████████. Flex's █████████████████

██████████████████████████████████████████████████████

█████████████████. Not even a court, ██████████████████████████████

████████████ may simply order title transferred by decree.  *In re Marriage of Braendle*, 54 Cal. Rptr. 2d 397, 401 (App. Ct. 1996) (reversing title transfer of collateral to a secured creditor because it was not permitted under Article 9).  A proceeding to collect on a debt is not a dispute over ownership of collateral, and relabeling it cannot █████████████████████████████.

Section 3 requires more than factual overlap; it requires that the issue in litigation be capable of meaningful resolution████████████████████████████. *E.g.*, *AT&T*, at 648–49; *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 283 (5th Cir. 2019); *Alvarado v. Rockwell Collins, Inc.*, No. CV 23-400-JFW(JCX), 2023 WL 5505877, at *4 (C.D. Cal. May 24, 2023) ("[T]he Court cannot compel a claim to arbitration that Plaintiff did not ████████████."). ████████████cannot resolve ownership, cannot divest AutoConnect of standing, and cannot alter the course of this infringement action.  A stay is therefore neither required nor permitted under ████ ████.  *E.g.*, *Eminence Healthcare, Inc. v. Centuri Health Ventures, LLC*, 289 Cal. Rptr. 3d 840, 848–49 (App. Ct. 2022); *U.S. v. Miraca Life Scis., Inc.*, No. 3:13-CV-01025, 2021 WL 679275, at



*3 (M.D. Tenn. Feb. 22, 2021) (denying ████████████████████ could not resolve the claim at issue or provide relief affecting the litigation).

  **B.**  **Neither California Law Nor ██ Allows Defendants to Stay This Case ██████ ████████████████**

  Defendants cannot invoke ████████ because they are nonsignatories to the ████████ ████████████ have no right to enforce that agreement under California law.  The Supreme Court made clear that a nonsignatory may invoke ██ *only if* state contract law would allow that party to ████████████████████.  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).  Absent such a right under state law, § 3 does not apply.  ████████████████████ ████████████ which recognizes only narrow circumstances in which a nonsignatory may enforce ████████████ through equitable estoppel.  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (explaining that under California law equitable estoppel applies only where (1) the plaintiff's claims against the nonsignatory rely on, or are intimately founded in, ████████████████████, or (2) the plaintiff alleges substantially interdependent and concerted misconduct by the nonsignatory and a signatory, where that misconduct is rooted in ████████████████).  The purpose of California's rule is "to prevent a party from ████████████████████ as the basis for his claims against a nonsignatory, while at the same time ████████████████████ ████████████t."  *Id.*  Neither circumstance in *Kramer* applies here.

  This case closely parallels *Kramer*.  There, Toyota—also a nonsignatory—argued that plaintiffs' claims would not exist "but for" vehicle purchase agreements ████████████ ██████.  The Ninth Circuit rejected that argument, holding that the claims did not rely on the terms of those agreements and therefore could not be compelled to arbitration or stayed.  *Id.* at 1130–31.  The same is true here.  AutoConnect's infringement claims ████████████, seek to enforce

10

it, or arise from ████████████ Other courts applying California law have likewise refused to ██████████████████████████ where the plaintiff's claims do not ████████ ████████████████████████. *See, e.g.*, *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 213–14, 218–21 (2009) (holding equitable estoppel does not permit a nonsignatory █████████ ██████ unless the plaintiff's claims depend on, or are "inextricably intertwined" with, the agreement ████████████████████). Ford therefore has no right under California law to ████████████████████ or to invoke ███.

The reality that AutoConnect's claims are not based on t██████████████████ ██████ is confirmed by the fact that ████████ would not be undermined or rendered meaningless by this litigation. ██████████ may proceed—or fail—entirely independently of this case, and nothing this Court does will ███████████████████████████ ██████. Because ██████████ cannot change patent ownership or standing, proceeding here does not threaten ██████████████████. *See, e.g., White v. Sunoco, Inc.*, 870 F.3d 257, 265 (3d Cir. 2017) (affirming denial of non-signatory effort ████████████ where dispute was not based ██████████, as demonstrated by the fact that changes to terms "such as the interest rate, credit limit, billing address, annual membership fee, foreign transaction fees, payment schedules…would not have any bearing on the validity of [plaintiff's] claims"); *Jurosky v. BMW of N. Am.*, LLC, 441 F. Supp. 3d 963, 972 (S.D. Cal. 2020) (applying California law). And this litigation will not have any "critical impact" on ██████████ Article III standing turns on AutoConnect's present exclusionary rights, not on the terms of ██████████ or hypothetical future events in another forum—especially where ██████████ cannot result in transfer of patent ownership. Accordingly, Ford cannot rely on ████████████████████████ in pursuit of a stay ████████.

11

Ford wrongly argues that this case is "intimately founded in and intertwined with the ███████████████████████████████████████. Br. at 12. This case is about the scope and validity of the asserted patents and Ford's vehicle systems. Even if Flex somehow prevailed ██████ ██████████, it would not result in Flex owning the patents, or eliminate AutoConnect's claims for the time it owned the patents. That reality confirms this case is not about ████████████ ████████ *Kramer*, 705 F.3d at 1128–29. And the tangentiality of █████████████████████ — ██████████████████ —bears no similarity to the cases on which Ford relies. *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 (9th Cir. 2024) (dispute between airline and ticket purchaser who bought tickets from broker under contract with arbitration clause); *STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*, No. 218-CV-01269, 2019 WL 2417625, at *5 (C.D. Cal. Feb. 15, 2019) (dispute centered on transaction between plaintiff and a third-party where defendant was the lender to the third-party and a quasi-broker for the deal who allegedly controlled the third party); *Turing Video Tech., Inc. v. AGI7 Inc.,* C.A. No. 24-CV-04606-EKL, 2025 WL 579190, at *3 (N.D. Cal. Feb. 21, 2025) (misappropriation dispute between a company and the new company formed by its former executive, where the executive had entered into an agreement with the company containing an arbitration clause governing his obligations regarding the company's intellectual property).

Ford also argues that "fairness" supports a stay. First, "fairness" is not the test for determining whether a nonsignatory ████████████████ can rely on ██████████ to secure a stay of a litigation directed at curbing its infringement. Second, Ford argues that "[i]n this case, ███████████ 'AutoConnect asserts that Ford's SYNC system, which Flex supplied to Ford, infringes some of the Patents.'" Br. at 13. The sentence is almost indecipherable due to the twists Ford must undertake to advance it. Ford inexplicably relies on █████████ rather

than simply offer evidence or its own representation that Flex supplies the systems accused of infringement. This is because ***Flex does not provide any accused systems***, much less all of them. If fairness were the guiding factor, it would dictate that the Court decline Ford's efforts to delay an infringement ruling based on a ██████████████████████████████████.

C.    ██████████████████ **Does Not Warrant a Discretionary Stay.**

A discretionary stay based on ████████████ is likewise warranted. The Third Circuit has explained that "judicial efficiency does not, by itself, allow a federal court to refuse to exercise its jurisdiction in favor of" ████████████████████;" rather, a stay of litigation is only proper when "there exist exceptional circumstances, the clearest of justifications, that. . . justify the surrender of that jurisdiction." *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 139 (3d Cir. 2004) (citation modified) (reversing stay ██████████████); *Invista S.a.r.l. v. Rhodia S.A.*, No. CIV.08-941(RBK/JS), 2009 WL 1439407, at *5 (D. Del. May 20, 2009). The factors considered in this District—prejudice, simplification of issues, and the stage of the proceedings—confirm that a stay would be inappropriate. *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-CV-054-GMS, 2013 WL 1743854, at *1 (D. Del. Apr. 22, 2013).

First, a stay would unduly prejudice AutoConnect and reward tactical delay. AutoConnect seeks to enforce its patent rights against ongoing infringement, and a stay would postpone that relief while Defendants continue to exploit the accused technology. ████████████████ initiated only after this litigation was underway, and ████████████████ and is being leveraged as a strategic delay device rather than a legitimate alternative forum. Equity weighs strongly against a stay where, as here, the moving parties invoke a collateral proceeding to slow enforcement of valid patent rights.

Second, a stay would not simplify the issues. As explained, ████████████ cannot affect patent ownership or standing because ████████████████████ to grant equitable relief. Even

13

██████████████████████████████████████████

if equitable claims ███████████, any such claim would be time-barred.  The ███████████ ███████████California law does not permit the indefinite delay of a claim's accrual by withholding demand.  *Stafford v. Oil Tool Corp.*, 133 Cal. App. 2d 763, 765–66 (1955) (party "cannot…indefinitely suspend the running of the statute by delaying to make a demand.").  Any enforcement right Flex may have once had to ████████████████████████████████ expired no later than four years after maturity.  Cal. Civ. Code § 337.

More fundamentally, ████████████ cannot simplify this case because it cannot affect patent ownership or standing.  At most, ███████████ may generate additional collateral disputes about enforcement or confirmation of ██████.  A stay would delay, not streamline, resolution. *E.g.*, *Fulfillium v. ReShape Med. LLC*, No. 8:18-cv-01265-RGK-PLA, 2019 WL 13038364, at *4 (C.D. Cal. May 27, 2019) (denying stay pending appeal where it would not simplify the issues or conserve judicial resources and would instead prolong the case).

Even if it could, AutoConnect holds all exclusionary rights in the asserted patents and a transfer occurring last July █████████████████████████████ would not defeat standing.  *See NextEngine Inc. v. NextEngine, Inc.*, No. 2:19-CV-00249-AB (MAA), 2021 WL 926104, at *4–*6 (C.D. Cal. Jan. 15, 2021) (finding that plaintiff retained standing to sue for past infringement despite transfer of right to the damages for past infringement to the subsequent owner, as that issue related to who was the real party in interest rather than standing); *cf. Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 730 (6th Cir. 2016) (holding that a party retains standing to recover damages for harm sustained before transferring its rights, even if it had later assigned the right to payment under the cause of action).  Flex cannot dispute that AutoConnect presently holds

14

███████████████████████████████████

title, as it discusses the prospect of ███████████████████████████████, which did not

happen until well after AutoConnect filed suit.[1]  *See* Br. at 15.

This fact also distinguishes the cases Ford cites in favor of a stay based on ███████████.

*Rmail Ltd. v. Amazon.com, Inc.*, C.A. No. 2:10-CV-258, 2014 WL 11394910, at *6 (E.D. Tex. Jan.

30, 2014) (involving dispute whether patents were ever assigned to patentee); *Loral Fairchild*

*Corp. v. Matsushita Elec. Indus. Co.*, 840 F. Supp. 211, 218 (E.D.N.Y. 1994) (same).  Ford's other

cases are inapposite.  *Optimal Golf Sols., Inc. v. Altex Corp.*, C.A. No. 3:09-CV-1403-K, 2009 WL

10733424, at *1 (N.D. Tex. Sept. 30, 2009) (patentee in bankruptcy proceedings that will decide

ownership, with ownership also already subject of an appeal); *UNM Rainforest Innovs. v. D-Link*

*Corp.,* C.A. No. 6:20-cv-143, D.I. 42 at 1 (W.D. Tex. July 1, 2021) (Plaintiff brief showing the

stay was requested while the patentee itself pursued separate litigation to "clear the cloud of title").

Third, the stage of this litigation weighs strongly against a stay.  Fact discovery is

underway, the parties have already exchanged infringement and invalidity contentions, responded

to interrogatories, produced documents, served third-party discovery, and claim construction is

starting.  The only reason the case is not further advanced is because Ford filed a misguided partial

motion to dismiss that was denied but achieved its likely goal of delaying the case.

---

[1] ███████████████████████████████ do not impact AutoConnect's substantial rights as contended by Ford at 15–17.  They govern ███████████████████████; they do not relate to or limit the rights in the patents that were transferred ███████████████ ████████.  Flex's only remedy ███████████████████████████████ ████████████████████.  The cases Ford cites are inapposite as each involved a plaintiff that either failed to obtain sufficient patent rights under the transfer instrument or was merely a licensee lacking substantial rights to sue in its own name—none involved restrictions in a security agreement. *Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001) (Plaintiff was only an exclusive licensee); *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019) (assignment limited ability to sue, license, or assign).

15

Because a stay would prejudice AutoConnect, would not simplify the issues, and would interrupt a litigation that is already actively progressing, there are no "exceptional circumstances" that could justify surrendering the Court's jurisdiction. *CTF Hotel Holdings,* 381 F.3d at 139.

### D.    The Post-Grant Proceedings Also Do Not Justify a Stay.

The post-grant proceedings Ford and third parties have initiated in the PTO do not warrant a stay. The factors typically considered in this District—prejudice, simplification, and the stage of the proceedings—confirm that a stay would be inappropriate. *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-CV-054-GMS, 2013 WL 1743854, at *1 (D. Del. Apr. 22, 2013).

### 1.    The Post-Grant Proceedings Are Fragmented, Uncertain, and Unlikely to Simplify the Case.

The PTO proceedings cited by Ford are fragmented and remain procedurally uncertain. This is not a case where one or two patents are challenged and IPRs as to all asserted claims have already been instituted. Ford has challenged only eight of the thirteen asserted patents. Three petitions have been instituted, one has been discretionarily denied, and three petitions remain pending without institution decisions. The remaining patents are the subject only of EPRs, all but one of which were initiated by parties other than Ford.

Even the instituted IPRs have unresolved issues. As described above, AutoConnect has sought Director review of those institution decisions, and those requests remain pending. And the chances of the institutions being vacated are strong here. The Director has recently denied petitions or vacated institutions where the petitioner advanced inconsistent claim construction or indefiniteness positions across forums. *Revvo Techs., Inc. v. Cerebrum Sensor Techs., Inc.*, IPR2025-00632, Paper 20 (Director Nov. 3, 2025) (vacating institution due to inconsistent claim construction positions); *Tesla, Inc. v. Intellectual Ventures II LLC*, IPR2025-00340, Paper 18 (Director Nov. 5, 2025) (extending Revvo's reasoning to inconsistent indefinite positions). Here,

16

Ford did just that after institution decisions were issued, placing the viability of those proceedings in doubt.

Further increasing the likelihood that the institution decisions are vacated, Ford attempts to avoid discretionary denial by asserting that it developed expectations it would not be sued because Flex owned the patents.  But in an interrogatory response here, Ford contends it did not even know the patents existed until receiving AutoConnect's infringement letter in 2023.  Ex. K.  Ford's inconsistent positions make it far from certain that the instituted petitions will proceed.

Even with institution, any potential simplification is speculative.  The accused systems are alleged to infringe numerous claims across multiple patents.  The likelihood that the PTO proceedings eliminate any accused functionality is low, meaning the scope of fact discovery would not meaningfully change.  Courts routinely deny motions to stay where the PTAB proceedings are uncertain or involve only a subset of the asserted patents.  *Invensas Corp. v. Samsung Elecs. Co.*, No. CV 17-1363-MN-SRF, 2018 WL 4762957, at *3 (D. Del. Oct. 2, 2018) ("[T]his factor weighs against a stay when the PTAB has not yet decided whether to institute IPR proceedings."); *Tigo Energy Inc. v. SMA Solar Tech. Am. LLC*, No. CV 22-915-GBW, 2024 WL 1637511, at *2 (D. Del. Apr. 16, 2024) (denying stay where IPR was instituted for only one of three patents); *Entangled Media, LLC v. Dropbox Inc.*, 732 F. Supp. 3d 1120, 1124 (N.D. Cal. 2024) (explaining that claims of simplification were speculative for uninstituted IPR challenges).

Further limiting the potential simplification here is that Ford relies on EPRs for over half of the asserted patents, and unlike IPRs, EPRs have no fixed statutory completion deadline, typically take longer to resolve, and do not give rise to estoppel.  This means that Ford would be free to assert here the same arguments at issue in the EPRs.

The various proceedings also involve different petitioners, different procedural stages, and different potential outcomes. Even if some claims were ultimately invalidated years from now, the case would still proceed on multiple patents and issues unaffected by the PTO proceedings. The fragmented nature of these proceedings therefore provides little basis for halting this litigation. If anything, Ford's patchwork of challenges across different forums and procedural postures creates additional uncertainty rather than the kind of clear simplification that might justify a stay.

### 2.    Ford's Delay in Seeking Post-Grant Review Weighs Against a Stay.

The timing of Ford's petitions further weighs against a stay. AutoConnect notified Ford of its infringement in December 2023 and filed suit in December 2024. Yet Ford waited until late July 2025—approximately nineteen months after receiving notice of infringement—to file its first petition. Additional petitions followed months later, with Ford waiting until the statutory deadline to file three IPR petitions, and over a year after suit to file its EPR request.

Nothing prevented Ford from acting earlier. Ford knew of the asserted patents and the accused systems in 2023. Its motion to dismiss a year ago addressed only a subset of the asserted patents and therefore did not eliminate the need to challenge the remaining patents. Nevertheless, Ford did nothing to challenge the patents. Instead, it pursued collateral proceedings—███████—while delaying its own post-grant filings.

Courts routinely deny stays where the movant delayed filing its petitions and then seeks to halt litigation after the case has progressed. *E.g., TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*, No. CV 21-1126-GBW-SRF, 2023 WL 2563179, at *3 (D. Del. Mar. 17, 2023) (finding delays of eight and eleven months after the complaint to pursue IPR was prejudicial); *Entangled Media*, 732 F. Supp. 3d at 1124 (finding risk of undue prejudice weighed against stay where noncompetitor filed IPR petitions only until a few days before the deadline, the court had ruled on motion to dismiss, and trial date had been set); *Affinity Labs of Texas, LLC. v. Nike, Inc.*, No. 10-cv-5543

18

CW, 2011 WL 1833122, at *2 (N.D. Cal. May 13, 2011) (finding noncompetitor's 9-month delay to file EPRs plus additional delay to move for stay after EPRs were granted supported denial).

The delay that would be imposed by the stay would be prolonged and disruptive. This case has already been pending for 15 months. The stay would likely push out merits adjudication several years. The filed IPRs, if instituted, would extend into mid-2027, and the EPRs are likely to extend beyond that, followed by an 18-month appeal. By the time this case resumes, trial could be pushed to the end of the decade. That is not a brief or temporary pause.

Time matters in patent cases, especially those involving products designed and launched years ago. Engineers change roles. Employees leave. Documents are archived. Even when documents remain, the context—the reasons behind design choices, testing decisions, and internal deliberations—often resides in memory, and memory fades. Meanwhile, Ford will be designing and releasing new products, causing the scope of discovery to expand rather than contract.

Ford created this timing problem. After waiting nearly two years following notice of infringement to pursue post-grant review, it now asks the Court to pause this case while those late-filed challenges run their course. Allowing a stay under those circumstances would reward delay rather than promote efficiency. Ford's delay therefore weighs strongly against granting a stay.

### 3. The Stage of This Litigation Also Weighs Against a Stay.

Finally, the stage of the case does not support a stay. The parties have already exchanged infringement and invalidity contentions, substantial document discovery has occurred, and claim construction efforts are underway. Granting a stay at this point would interrupt an active litigation while the PTO proceedings—many of which remain uncertain—run their course.

### 4.    A Stay Is Unnecessary Because the Existing Schedule Already Accounts for Any PTAB Proceedings.

A stay is not required to manage PTO proceedings. The existing schedule already accommodates the possibility of PTO review. The parties agreed to a case schedule that places trial after the anticipated window for any PTO decisions, allowing the challenges to inform the case without stopping it at the outset.

Parallel proceedings are common—especially when a defendant chooses to initiate the secondary proceedings after litigation has begun. Courts routinely manage them without blanket stays, particularly where institution is uncertain and the scope of review is limited. Maintaining the schedule preserves flexibility. If the PTAB institutes review and narrows the case in some way, the Court can adjust at that time. If it does not, the case will not have been paused for months based on contingencies that never materialized. The scheduling order already strikes the appropriate balance. A stay would not improve it—it would undermine it.

### 5.    If the Court Considers a Stay, It Should Be Deferred Until Institution and Narrowly Tailored.

AutoConnect respectfully submits that a stay is unwarranted, but if the Court is inclined to grant one, it should do so only after the PTAB has actually instituted review of the challenged patents and the scope of that review is known. A pre-institution stay rests on speculation. If any stay is entered, it should be limited to the specific patents and claims for which review is instituted. The case should proceed as to all patents, claims, and accused products that will not be addressed by the PTO. That approach preserves efficiency without freezing issues the PTO will not address.

## V.    CONCLUSION

For the foregoing reasons, AutoConnect respectfully requests that the Court deny Defendants' motion to stay.

20

███████████████████████

Dated:  March 12, 2026

**FARNAN LLP**

By: */s/ Mchael J. Farnan*
    Brian E. Farnan (Bar No. 4089)
    Michael J. Farnan (Bar No. 5165)
    919 North Market Street, 12th Floor
    Wilmington, DE 19801
    (302) 777-0300
    bfarnan@farnanlaw.com
    mfarnan@farnanlaw.com


    William R. Woodford (LEAD) (#0322593)
    woodford@avantechlaw.com
    **AVANTECH LAW, LLP**
    80 South 8th Street, Suite 900
    Minneapolis, MN 55402
    Tel: (855) 750-9951
    Fax: (612) 484-2001

    ***Attorney for Plaintiff***
    ***AutoConnect Holdings LLC***


Todd S. Werner *(pro hac vice)*
werner@avantechlaw.com
Jason M. Zucchi *(pro hac vice)*
zucchi@avantechlaw.com
Shelleaha L. Jonas *(pro hac vice)*
jonas@avantechlaw.com
**AVANTECH LAW, LLP**
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (855) 750-9951
Fax: (612) 484-2001

Julianne Thomsen *(pro hac vice)*
thomsen@avantechlaw.com
**AVANTECH LAW, LLP**
521 5th Avenue, 17th Floor
New York, NY 10175-0038
Tel: (855) 750-9951
Fax: (612) 484-2001

Kathryn A. Quisenberry (Bar. No. 24105639)
quisenberry@avantechlaw.com

Andrea Fair (Texas Bar No. 24078488)
andrea@millerfairhenry.com
Garrett Parish (Texas Bar No. 24125824)
garrett@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Tel: (903) 757-6400
Fax: (903) 757-2323

***Attorneys for Plaintiff***
***AutoConnect Holdings LLC***

21

**AVANTECH LAW, LLP**
1000 Main Street, Suite 2300
Houston, TX 77002
Tel: (855) 750-9951
Fax: (612) 484-2001