# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AUTOCONNECT HOLDINGS LLC,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | C.A. No. 24-1327-JCG<br><br>▮▮▮▮▮▮▮▮▮▮<br><br>Redacted public version filed March 26, 2026 |

## FORD MOTOR COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STAY

Dated: March 19, 2026

*Of Counsel:*

**BROOKS KUSHMAN P.C.**
John S. LeRoy
Christopher C. Smith
Reza Roghani Esfahani
150 W. Second St., Suite 400N
Royal Oak, MI 48067-3846
(248) 358-4400
jleroy@brookskushman.com
csmith@brookskushman.com
resfahani@brookskushman.com

**SMITH KATZENSTEIN & JENKINS LLP**

Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Counsel for Defendant Ford Motor Company*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

I.     SUMMARY OF ARGUMENT ....................................................1

II.    ARGUMENT ..............................................................................2

     A.    Mandatory Stay: ▮▮▮▮▮▮▮▮▮▮▮ Will Determine Patent Ownership—a Threshold Issue in This Litigation ....................2

     B.    Discretionary Stay: Discretionary Factors Warrant a Stay in Light ▮▮▮▮▮▮▮▮ USPTO Proceedings ...............................4

          1.    Issue Simplification Decisively Favors a Stay .......................... 4

              a.    ▮▮▮▮▮▮▮ Will Simplify or Resolve Key Issues ................................................................ 4

              b.    The USPTO Proceedings Independently Warrant a Stay and Are Highly Likely to Simplify the Case .......... 6

          2.    The Early Stage of This Litigation Favors a Stay ..................... 8

          3.    The Lack of Undue Prejudice Weighs in Favor of a Stay ....... 10

III.   **CONCLUSION** ........................................................................10

Word Count Certification ...............................................................1

# TABLE OF AUTHORITIES

## Cases

*Brit. Telecommunications PLC v. IAC/InterActiveCorp*,
2019 WL 4740156 (D. Del. Sept. 27, 2019) ...................................................6

*Clouding IP, LLC v. Google Inc.*,
61 F. Supp. 3d 4218 (D. Del. 2014) ..............................................................4

*e-ImageData Corp. v. Digital Check Corp.*,
2017 U.S. Dist. LEXIS 23050 (E.D. Wis. Feb. 17, 2017) .............................9

*Enhanced Sec. Rsch., LLC v. Cisco Sys., Inc.*,
2010 WL 2573925 (D. Del. June 25, 2010) ...................................................8

*Ethicon LLC v. Intuitive Surgical, Inc.*,
2019 WL 1276029 (D. Del. Mar. 20, 2019)...................................................6

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ...................................................................3, 4

*Masimo Corp. v. Wireless*,
2021 WL 321481 (S.D. Cal. Feb. 1, 2021)..................................................6, 9

*Monitoring v. Get-Grin Inc.*,
2024 WL 1603403 (D. Del. Apr. 9, 2024) .....................................................8

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
2013 WL 3353984 (D. Del. July 2, 2013)....................................................10

*PersonalWeb Techs., LLC v. Apple Inc.*,
69 F. Supp. 3d 1022 (N.D. Cal. 2014).........................................................10

*Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*,
2014 WL 3819458 (D. Del. Jan. 15, 2014) ...................................................8

*W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*,
198 F. Supp. 3d 366 (D. Del. 2016) ..............................................................5

## Statutes

35 U.S.C. § 303 ...............................................................................................................6
35 U.S.C. § 314 ...............................................................................................................6
35 U.S.C. § 315 ...............................................................................................................9

## Rules

Fed. R. Civ. P. 14 ...........................................................................................................2

## I.    SUMMARY OF ARGUMENT

1.    **Patent Ownership.** Whether AutoConnect owns the Asserted Patents is ███████████████████████ dispositive here. AutoConnect attempts to distinguish ████████████████████████████ award equitable relief. But Ford's motion to stay is not based on the nature of the remedies ███████ ████████████. Ford's motion is based on ████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████

If ███████████████████, and AutoConnect refuses to promptly dismiss this case, Ford will seek equitable relief in this Court to stop AutoConnect's assertion of patents it does not own.

2.    **Post-Grant Challenges.** AutoConnect asserts "[i]t is unclear whether numerous challenges launched by Ford will proceed." That is wrong. The USPTO is currently reviewing every asserted claim in 10 of the 13 Asserted Patents. These challenges—and the remaining three when instituted—will proceed. AutoConnect argues these reviews will take time. But as courts have consistently held, the time necessary for USPTO review is not a basis for refusing a stay, especially here where the patentee is a non-practicing entity. The Court and parties should not expend resources litigating ten (or more) patents the USPTO has found likely unpatentable.

## II.    ARGUMENT

**A.    Mandatory Stay:** ███████████████████████ **Patent Ownership—a Threshold Issue in This Litigation**

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████

AutoConnect asserts that ████████████████████████ transfer ownership of patents from AutoConnect to Flex. (D.I. 55, at 7–8.) That argument fails for two reasons. First, ████████████████████ ████████████████—no "equitable relief" is required. Second, ██████████ ████████████ AutoConnect refuses to dismiss this case, Ford will seek dismissal as a matter of law because AutoConnect does not own the Asserted Patents.[2]

Absent a stay, Ford may move to implead Flex under Fed. R. Civ. P. 14, and/or

---

[1] Exhibits A-X refer to D.I. 49–52. Exhibits Z-CC refer to the exhibits attached to the Declaration of Reza Roghani Esfahani filed contemporaneously with this brief.

[2] To the extent equitable relief is required ████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████

Flex, as supplier and indemnitor to Ford, may move to intervene to resolve the same ownership issue. There is no reason to complicate this litigation with a third-party to resolve the same patent ownership dispute currently before the ▮▮▮▮▮

AutoConnect asserts that "Flex does not provide any accused systems" to Ford. (D.I. 55, at 13.) Earlier in its brief, however, AutoConnect states the exact opposite, describing its infringement action against Ford as "expos[ing] Flex's largest customers to potential liability." (Id., at 3.) AutoConnect squarely asserts its patents against Ford's "SYNC" system, and both Ford and Flex have demonstrated that Flex has supplied SYNC to Ford since 2014. (Ex. Y  at ¶4 ("Ford has purchased SYNC modules from Flextronics since at least October 2014 and continuously through today …."); see also Ex. Z.)

AutoConnect also argues that ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ But as explained above, ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ A finding ▮▮▮▮▮▮ means AutoConnect does not own the Asserted Patents and cannot assert them against Ford in this case.

Finally, AutoConnect contends that Ford cannot "invoke FAA § 3 because they are nonsignatories ▮▮▮▮▮▮▮▮ and have no right to

██████████████████████████████████ (D.I. 55, at 10.) But under the cited case, *Kramer*, a nonsignatory can enforce the ████████████████ where "a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying contract." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (citation omitted). That is exactly the case here. AutoConnect alleges ownership of the Asserted Patents ████████████████ ████ and concedes that Article III standing turns on those ownership rights. (D.I. 55, at 11.) Thus, *Kramer* supports a stay.

### B. <u>Discretionary Stay</u>: Discretionary Factors Warrant a Stay in Light of ████████████ USPTO Proceedings

#### 1. Issue Simplification Decisively Favors a Stay

##### a. ████████████████ Will Simplify or Resolve Key Issues

AutoConnect does not dispute that this Court has the discretion to stay this case ████████████████████. Instead, it argues that a stay "would not simplify the issues" and the delay would cause "undue prejudice." (D.I. 55, at 13–14.)

With respect to simplification of issues, whether AutoConnect owns the Asserted Patents is a threshold Article III standing requirement for this case to progress. *Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421, 428 (D. Del. 2014) ("If a plaintiff lacks standing [] the Court lacks subject matter jurisdiction and the

case must be dismissed pursuant to Rule 12(b)(1).”). A finding that AutoConnect does not own the Asserted Patents would dramatically narrow—if not eliminate—the issues in this case. AutoConnect separately asserts ███████████████ ████ because Flex's claim is "time-barred." (D.I. 55, at 14.) That issue is ██████ ███████████████████████████████. (Ex. V, at 1 n.1.) Ford notes, however, that

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

(emphasis added).)

Recognizing that ██████████████████████████████████ ████ is a realistic possibility, AutoConnect asserts the transfer would have occurred last July and that AutoConnect had standing when it filed the Complaint. But the plaintiff must establish standing throughout all stages of litigation. *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 198 F. Supp. 3d 366, 373 (D. Del. 2016) (citation omitted).

Even under AutoConnect's theory, a transfer of patent ownership in July 2025 would materially affect this case including: (i) the scope of accused products, (ii) the scope of damages, and (iii) whether Flex is an indispensable party in this case whose absence compels dismissal. Determining who owns the Asserted Patents (and when) will significantly simplify the issues.

5

**b.**     **The USPTO Proceedings Independently Warrant a Stay and Are Highly Likely to Simplify the Case**

All Asserted Patents are currently the subject of a USPTO challenge, whether through IPRs or EPRs. Since the filing of Ford's motion to stay, the USPTO has granted an additional EPR petition, bringing the total to 10 of the 13 Asserted Patents. (Ex. AA (granting request for EPR on the '931 Patent).) In each case, the USPTO has already found either that there is a "reasonable likelihood that the petitioner [will] prevail" (35 U.S.C. § 314 for instituted IPRs) or that "a substantial new question of patentability" has been raised (35 U.S.C. § 303 for granted EPRs). The remaining three pending IPR petitions are likely to be instituted.

It is all but certain that the USPTO's decisions will significantly simplify this case. Even if fewer than all claims are ultimately found invalid or unpatentable, the USPTO's rulings will reduce the number of asserted claims and/or patents, limit the scope of accused products and resulting damages, and streamline claim construction and validity disputes to only the surviving claims, if any. Courts have consistently recognized that such outcomes strongly favor a stay. *Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS, 2019 WL 1276029, at *1–2 (D. Del. Mar. 20, 2019) (finding a substantial potential to simplify the issues when the PTAB had instituted IPRs against six of seven patents-in-suit); *see also Masimo Corp. v. Wireless*, No. 19-CV-01100, 2021 WL 321481, at *4 (S.D. Cal. Feb. 1, 2021) (finding that a stay will "substantially simplif[y]" the case "[g]iven the PTAB has

6

granted IPR of the vast majority of claims"); *Brit. Telecommunications PLC v. IAC/InterActiveCorp*, C.A. No. 18-366-WCB, 2019 WL 4740156, at *7 (D. Del. Sept. 27, 2019) (granting a motion to stay pending a granted IPR even though two of the asserted claims were not a part of the IPR).

AutoConnect attempts to downplay the impact of the PTAB proceedings through speculation, inapposite case law, and immaterial distinctions. None of these arguments has merit. First, AutoConnect argues that the instituted IPRs may be vacated under the "settled expectations" doctrine because Ford did not know of the Asserted Patents "until receiving AutoConnect's infringement letter in 2023." (D.I. 55, at 16–17.) But AutoConnect already lost that argument when the IPRs were instituted. (Ex. BB at 2 (denying AutoConnect's request for discretionary denial).) In addition, Ford's knowledge of the patents is irrelevant to whether it reasonably expected to be sued on its supplier's patents—the entity that developed and supplied the accused products to Ford. (Exs. Y, Z.) As the Director already determined, Ford's reasonable expectation arises from its supplier relationship with the patents' original owner, not from its knowledge of the patents themselves. (Ex. BB ("[Ford] had settled expectations that the challenged patents would not be asserted against it based upon several factors pertaining to its business relationship with … Flex[].").)

Second, the cases AutoConnect cites involve circumstances where "the PTAB ha[d] not yet decided whether to institute IPR proceedings" (*i.e.,* "uninstituted IPR

7

challenges") or "IPR was instituted for only one of the three patents." That is not this case, where 10 of 13 Asserted Patents are already subject to USPTO review.

Finally, AutoConnect argues that some of the challenges are EPRs rather than IPRs and that certain petitions were filed by entities other than Ford. Those distinctions are irrelevant. The question is whether the pending USPTO proceedings will simplify the issues, not who filed them or how. Courts in this District routinely find the simplification factor satisfied in cases involving pending EPRs. *Monitoring v. Get-Grin Inc.*, C.A. No. 22-647-WCB, 2024 WL 1603403, at *1, 10 (D. Del. Apr. 9, 2024) (granting a motion to stay where one patent was subject to an IPR initiated by a third party, two other patents were subject to EPR requested by the accused infringer, and the fourth patent had a pending EPR request from the accused infringer); *Enhanced Sec. Rsch., LLC v. Cisco Sys., Inc.*, C.A. No. 09-571-JJF, 2010 WL 2573925, at *2 (D. Del. June 25, 2010) (granting a stay over plaintiffs' arguments that the EPR would not have preclusive effect on the defendants' claims due to the likelihood that the EPR would result in simplification of defenses that were likely to be raised in the litigation).

### 2. The Early Stage of This Litigation Favors a Stay

Claim construction has not commenced, fact discovery remains in its early stages with no depositions taken or even noticed, and expert discovery and dispositive motions are still many months away. This factor thus favors a stay

8

because "most of the significant case events are well in the future in these actions." *Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*, C.A. No. 12-1461-LPS-CJB, 2014 WL 3819458, at *4 (D. Del. Jan. 15, 2014).

AutoConnect recently confirmed this. In the related Texas actions, AutoConnect informed GM and Toyota that it is no longer asserting three of the patents it continues to assert against Ford here.[3] Yet, when asked whether it would likewise drop those patents in this case, AutoConnect's counsel refused, expressly citing "the early stage of the Ford matter." (Ex. CC.)

AutoConnect contends that Ford "delayed" in filing its petitions because it did not do so immediately after receiving notice of alleged infringement or at the outset of litigation. (D.I. 55, at 18–19.) AutoConnect cites no authority requiring a party to seek USPTO review immediately upon receiving an infringement allegation or even upon service of a complaint. The statutory clock for filing an IPR petition does not begin upon mere notice of infringement; it begins upon service of the complaint. 35 U.S.C. § 315(b). Consistent with that framework, courts routinely refuse to penalize defendants for filing petitions within the statutory period—even at its outer limit. *See, e.g., e-ImageData Corp. v. Digital Check Corp.*, No. 16-CV-576, 2017 U.S.

---

[3] Two of the three patents AutoConnect elected to drop are among the remaining three patents awaiting the USPTO's initial validity determination. Thus, if AutoConnect dropped the same patents in its case against Ford, 10 of the 11 Asserted Patents would be subject to IPR/EPR review.

9

Dist. LEXIS 23050, at *9–10 (E.D. Wis. Feb. 17, 2017) (filing on the last permissible day did not weigh against a stay because Congress allowed parties up to one year); *Masimo*, 2021 WL 321481, at *2.

This case involves 13 patents and dozens of claims, each requiring extensive prior art investigation. Ford conducted those searches swiftly and prepared and filed its petitions accordingly. Ford exercised diligence, not delay.

The early stage of the proceedings strongly favors a stay of this case.

### 3.    The Lack of Undue Prejudice Weighs in Favor of a Stay

AutoConnect—a non-practicing entity with no products or market share—offers no evidence of harm. AutoConnect focuses on delay in resolution of the case. But courts have repeatedly rejected that argument. *See Neste Oil OYJ v. Dynamic Fuels, LLC*, C.A. No. 12-1744-GMS, 2013 WL 3353984, at *2 (D. Del. July 2, 2013) ("The mere potential for delay, however, is insufficient to establish undue prejudice." (emphasis omitted)); *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1029 (N.D. Cal. 2014) ("Courts have repeatedly found no undue prejudice [without] a specific showing of prejudice beyond the delay [] inherent in any stay.").

## III.    CONCLUSION

AutoConnect invites the Court to proceed with this litigation in parallel with the ███████████████ and USPTO proceedings that are plainly material and have

the potential to significantly reduce issues in this case. As explained above and in Ford's opening brief, that approach would impose unnecessary burdens on the Court and the parties, risk inconsistent outcomes, and undermine judicial efficiency. For these reasons, the Court should stay this litigation pending ████████████ ████████████ USPTO proceedings.

Dated: March 19, 2026

*Of Counsel:*

**BROOKS KUSHMAN P.C.**
John S. LeRoy
Christopher C. Smith
Reza Roghani Esfahani
150 W. Second St., Suite 400N
Royal Oak, MI 48067-3846
(248) 358-4400
jleroy@brookskushman.com
csmith@brookskushman.com
resfahani@brookskushman.com

**SMITH KATZENSTEIN & JENKINS LLP**

*/s/ Daniel A. Taylor*
Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Counsel for Defendant Ford Motor Company*

11

## WORD COUNT CERTIFICATION

The undersigned certifies that the foregoing document contains 2,471 words (exclusive of the cover page, table of contents, table of authorities, pictures, figures, illustrations, and signature block) in Times New Roman 14-point font, counted using Microsoft Word's word count feature.

*/s/ Daniel A. Taylor*
Daniel A. Taylor (No. 6934)